IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

WHITESELL CORPORATION,          *
                                *
          Plaintiff,            *
                                *
     v.                         *          CV 103-050
                                *
ELECTROLUX HOME PRODUCTS,       *
INC., HUSQVARNA, A.B., and      *
HUSQVARNA OUTDOOR PRODUCTS,     *
INC.,                           *
                                *
          Defendants.           *

O R D E R

Presently before the Court is Defendant Electrolux Home
Products, Inc.'s ("EHP") motion for partial summary judgment
concerning the duration term of the parties' contractual
obligations.  For the following reasons, EHP's motion is
**GRANTED IN PART** and **DENIED IN PART**.

### I.  BACKGROUND

On December 14, 2000, EHP entered into a Supply Agreement
with Whitesell Corporation ("Whitesell").  The Supply
Agreement is entitled "Strategic Partnership Agreement" by the
parties, and it will be referred to as either the Supply
Agreement or the SPA herein.  Additionally, while the Court's
Orders of March 12, 2008 and October 14, 2008, provide a more

complete factual and procedural history of the case, I will reiterate the pertinent information here.

At the time the SPA was executed, EHP manufactured appliances for kitchen, cleaning, and outdoor use such as refrigerators, cookers, washing machines, vacuum cleaners, chain saws, and lawn mowers.[1] (EHP Compl. ¶ 2.) Pursuant to the SPA, EHP agreed to buy all of its current and future requirements for certain goods from Whitesell during the pendency of the Agreement, and Whitesell agreed to supply all of EHP's requirements for such goods. (See generally Ex. 1 to EHP Compl., Doc. No. 1.)

The initial term of the SPA was January 1, 2001 through April 1, 2008. The SPA gave EHP approximately 2.5 years to transition the relevant parts to Whitesell by supplying a completion date of June 30, 2003. (See id. §§ 3.0-3.1.) The SPA provided that "[f]ailure to complete the transition [of parts by June 30, 2003] shall proportionally extend the initial term of this [Supply] Agreement." (Id. § 3.1.) Thus, the duration term of the SPA was April 1, 2008 for all parts transitioned before June 30, 2003. However, for parts

---

[1]    EHP manufactured its indoor and outdoor products through two separate divisions. On June 12, 2006, EHP's Outdoor Products Division was spun off into a Swedish Corporation - Defendant Husqvarna, A.B. (Doc. No. 126 at n.6.) Husqvarna, A.B. allegedly transferred the Outdoor Division to Defendant Husqvarna Outdoor Products, Inc., a Delaware Corporation, with Husqvarna, A.B. being the sole or primary stockholder of Husqvarna Outdoor Products, Inc. (Am. Compl. ¶¶ 4-5.) The two Husqvarna defendants will be collectively referred to as Husqvarna herein.

transitioned after June 30, 2003, the SPA provides no definition of how the Supply Agreement would be "proportionally extended."[2]

As discussed in this Court's Order of October 14, 2008, the parties contemplated that an Exhibit B would be created after the execution of the SPA which would reflect the "Goods to be Purchased by Electrolux from Whitesell." (*Id.* § 2.1.2.) This list was to be updated "no less than every six months." (*Id.*)

Even though Exhibit B was never created, Whitesell began supplying EHP with goods shortly after the SPA was executed. Eventually, a dispute arose between the parties regarding whether the SPA obligated EHP to purchase from Whitesell certain parts for lawn tractors, manufactured by EHP at its Orangeburg, South Carolina, Plant (the "Orangeburg Parts"). This dispute led to EHP's filing of this lawsuit on March 23, 2003. In its complaint, EHP sought, *inter alia*, a declaration that it was not obligated to purchase the Orangeburg Parts from Whitesell. (EHP Compl. ¶ 31, Doc. No. 1.)

---

[2] Whitesell has argued in the past that ths proportional extension would apply to every part covered by the SPA regardless of its transition date. In other words, failure to transition every single part by June 30, 2003, would extend the duration term of the SPA for all covered parts. The Court need not decide whether Whitesell's interpretation of the proportional extension provision is correct because the duration term provision of the SPA has been redefined by the parties' subsequent Settlement Memorandum, as discussed *infra*.

On May 23, 2003, after mediation, the parties executed a Settlement Memorandum. The Introductory Section of the Settlement Memorandum states that "EHP and Whitesell desire to resolve any and all disputes which they have with each other arising out of the [Supply] Agreement." (Settlement Memorandum, Doc. No. 127, Ex. 3.) Further, Paragraph 13 states that "[t]his Settlement Memorandum settles all disputes between Whitesell and EHP, except initial discount pricing, past due obsolescence and accounts receivable invoices and disputes relating to Whitesell's implementation of its managed inventory system at EHP's McRae Division (excluding the previously EHP claimed debit)." (Id. ¶ 13.)

Pursuant to the Settlement Memorandum, the parties agreed to prepare a "clarified Exhibit 'B'" that would include: (a) all parts Whitesell was supplying to EHP as of the date of the Settlement Memorandum; (b) all parts in the process of being transitioned by Whitesell; and (c) all Springfield Division parts currently being supplied by Bamal (another fastener supplier) as of January 1, 2003. (Id. ¶ 1.) The parties also agreed that certain "Brunner"[3] and wire form[4] parts would be supplied by Whitesell under the terms of the SPA, as modified

---

[3] "Brunner" parts are parts which were being supplied by Brunner Drilling and Manufacturing, Inc., at the time the Settlement Memorandum was executed.

[4] The scope of "wire form" parts subject to transition was disputed by the parties.

by the Settlement Memorandum. The Brunner and wire form parts were to be listed on an Exhibit B-1. (_Id._ ¶ 3.) To the extent the volume of Brunner and wire form parts transitioned under the Settlement Memorandum by January 1, 2004, was less than EHP's calendar year 2002 purchase volume of these parts, substitute parts were to be transitioned and included on Exhibit B-1 to make up the difference.[5] (_Id._)

According to the Settlement Memorandum, the initial term of the SPA for all Exhibit B and B-1 parts was modified to begin on December 31, 2003, and was set to expire on November 1, 2008. (_Id._ ¶ 3.) As to Exhibit B parts which were not transitioned by December 31, 2003, the initial duration term "for those parts not transitioned will be proportionately extended by the time it takes to fully transition those parts." (_Id._) Also, with respect to any Exhibit B-1 parts added to make up for any short fall relating to the 2002 purchase levels, the duration term for those substitute parts "will be proportionately extended by the time it takes to fully transition these parts." (_Id._)

---

[5]    The Settlement Memorandum also included certain financial incentives "[a]s an inducement [for EHP] to transition additional parts to Whitesell which are not within Exhibit 'B' and 'B-1.'" (Settlement Memorandum, Doc. No. 127, Ex. 3, ¶ 8.) Any such parts purchased by EHP were subject to a less restrictive "'meet the competition' requirement," as opposed to the more exclusive terms set forth in the SPA, and would be listed on an Exhibit B-2. (_Id._) The parties agree that EHP has never purchased any additional parts that would fall under this category and be listed on Exhibit B-2. Indeed, Exhibit B-2 was never created and is not at issue here.

Unfortunately, just as the parties never prepared an initial Exhibit B, they never prepared the "clarified" Exhibit B or the Exhibit B-1 referenced in the Settlement Memorandum.

On March 9, 2005, Whitesell filed a "Motion for Preliminary Relief and to Enforce Settlement Agreement." (Doc. No. 11.) On May 17, 2005, a Consent Order was entered "to preserve and govern the rights of the parties prior to this Court's final judgment on the parties' disputes regarding the interpretation, enforcement, validity and meaning of the parties' Settlement Memorandum and SPA." (Doc. No. 30, at 4.) The Consent Order set forth the parties' obligations regarding the purchase and supply of parts during the pendency of settlement negotiations or litigation regarding the parties' dispute. (See id.)

In October of 2005, Whitesell filed its third-party complaint against EHP and Husqvarna. It is this complaint that has governed the action thenceforth.

Eventually, Defendants filed a "Motion for Judgment on the Pleadings or, in the Alternative, Motion for Partial Summary Judgment." Defendants' motion pertained to the proper interpretation of the parties' SPA, Settlement Memorandum, and the Consent Order. On October 14, 2008, this Court granted in part Defendants' motion for partial summary judgment, concluding that the subject matter of the SPA was too

indefinite to be enforced. (Doc. No. 212.) The Court nevertheless determined that the Settlement Memorandum defined the parties' contractual obligations with respect to four categories of parts: (1) all parts Whitesell was supplying to EHP as of the date of the Settlement Memorandum; (2) all Springfield Division parts which were being supplied by Bamal as of January 1, 2003; (3) the "Brunner" parts; and (4) all parts supplied through the parties' course of performance. (Id. at 22-25.) At the conclusion of the Order of October 14, 2008, the Court invited the parties to present argument regarding the termination date of these contractual obligations. Through its present motion for partial summary judgment, EHP has done so.

In their papers, EHP and Whitesell agree that the "Brunner" parts are not at issue between them because Brunner parts have been used solely in the production of outdoor products, which have been manufactured exclusively by Husqvarna since June 12, 2006. Brunner parts have never been purchased by EHP for use in the manufacture of indoor products. (St. of Undisputed Mat. Facts, ¶ 1.) Accordingly, of the four enforceable part categories described in the Order of October 14, 2008, only three categories represent parts EHP was obligated to purchase from Whitesell. Through its motion, EHP seeks a declaration of when its obligation to purchase

specific parts has ended or will end. More specifically, EHP first seeks a determination as a matter of law that the Settlement Memorandum's duration term provision in Paragraph 3 is applicable to all four categories of parts listed in the Order of October 14, 2008. EHP also seeks the following:

    a.    A determination that EHP's obligation to purchase covered, active parts transitioned to Whitesell <u>prior to</u> December 31, 2003, as well as those parts which first came into use by EHP after that date and were immediately transitioned to Whitesell, was properly terminated on November 1, 2008;

    b.    A determination that EHP's obligation to purchase parts in use prior to December 31, 2003, which were transitioned to Whitesell after that date, is properly terminable four (4) years and ten (10) months after first being transitioned to Whitesell;

    c.    A determination that EHP's obligation to purchase the parts listed on "Exhibit 6" to the Affidavit of Donald J. Market which are not denominated as "Non Trans" (Non-Transition) parts was properly terminated on November 1, 2008; and

    d.    A determination that EHP's obligation to purchase the parts listed on "Exhibit 7" to the Affidavit of Donald J. Market is properly terminable upon the dates listed therein, which represent four (4) years and ten (10) months from each part's first transition to Whitesell.

This motion for partial summary judgment was filed on September 22, 2009. The Clerk gave Whitesell notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 228.) Therefore,

the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied.

On November 2, 2008, Whitesell not only filed a response to EHP's motion but also filed a motion under Federal Rule of Civil Procedure 56(f). EHP responded to the Rule 56(f) motion and filed a reply brief in support of its motion for partial summary judgment. The time for filing any additional materials has expired, and the motion for partial summary judgment and the Rule 56(f) motion are ripe for consideration.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the nonmoving party. <u>Hogan v. Allstate Ins. Co.</u>, 361 F.3d 621, 625 (11th Cir. 2004). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of

9

> substantive law dictate the materiality of a
> disputed fact. A genuine issue of material fact
> does not exist unless there is sufficient evidence
> favoring the nonmoving party for a reasonable jury
> to return a verdict in its favor.

Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoted source omitted) (emphasis supplied). The party opposing the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue to be tried." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Federal Rule of Civil Procedure 56(f) provides:

> If a party opposing [a motion for summary judgment]
> shows by affidavit that, for specified reasons, it
> cannot present facts essential to justify its
> opposition, the court may: (1) deny the motion; (2)
> order a continuance to enable affidavits to be
> obtained, depositions to be taken, or other
> discovery to be undertaken; or (3) issue any other
> just order.

"Subsection (f) allows a party who 'has no specific material contradicting his adversary's presentation to survive a summary judgment motion if he presents valid reasons justifying his failure of proof.'" Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525, 527 (11th Cir. 1983) (citation omitted). "Whether to grant or deny a Rule 56(f) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such

discovery will place on the opposing party." <u>Harbert Int'l,</u> <u>Inc. v. James</u>, 157 F.3d 1271, 1280 (11th Cir. 1998).

In this case, Whitesell argues that it requires additional discovery to address EHP's motion concerning the duration term of the parties' contractual obligations. In particular, Whitesell contends it needs to develop "facts surrounding EHP's failure to transition covered parts to Whitesell, the extent to which EHP has purchased covered parts from other suppliers, and the dates on which EHP fully transitioned covered parts to Whitesell." (Whitesell Rule 56(f) Mot. at 2.) The first two aspects of Whitesell's contention are immaterial to the issues raised by EHP's motion. Facts concerning EHP's alleged breach of the contract would only be relevant to Whitesell's estoppel argument. As more fully explained in the legal analysis, <u>infra</u>, Whitesell's estoppel argument is without merit. Accordingly, these facts are not necessary to the disposition of the legal matter at hand - the construction of the duration term of the contract.

With respect to Whitesell's argument that it needs to develop information concerning the dates on which EHP fully transitioned covered parts, the Court finds that this information is relevant to part of EHP's motion - specifically, the determination of EHP's obligation to purchase the parts listed on "Exhibit 7" to the affidavit of

Mr. Donald J. Market. As will be discussed, the termination date of these parts is dependent upon the date that the parts were "fully transitioned." Thus, information concerning those dates is relevant. Nevertheless, Whitesell's contention that the information is in the exclusive control of EHP is unavailing. Moreover, as will be discussed, Whitesell and EHP jointly determined the transition dates for most of the covered parts such that there is no need for additional discovery.

In short, this Court will not deny or defer the resolution of this matter based upon Rule 56(f) because Whitesell has simply not met its burden to demonstrate a specific need to conduct more discovery on the issues now before the Court. Accordingly, Whitesell's motion under Rule 56(f) as it pertains to the instant motion for partial summary judgment (doc. no. 238) is **DENIED**.

### III. LEGAL ANALYSIS

As discussed above, both the SPA and the Settlement Memorandum contain a duration term. Through its motion for partial summary judgment, EHP asks for a determination as a matter of law that the duration term expressed in the Settlement Memorandum governs the enforceable categories of parts between the parties.

12

Through a simple reading of the duration term set forth in the Settlement Memorandum, this Court readily agrees with EHP. Paragraph 2 of the Settlement Memorandum, which was intended to resolve the parties disputes arising out of the SPA, provides: "The Agreement['s][6] initial term is **redefined** in Section 3 of this Settlement Memorandum." (Settlement Memorandum, Doc. No. 127, Ex. 3 (emphasis added).) Paragraph 3 of the Settlement Memorandum provides: "The initial term under the [SPA] for all parts listed on Exhibit 'B' and Exhibit 'B-1' as of December 31, 2003, will expire on November 1, 2008." (Id. ¶ 3.) Thus, by its plain and unambiguous terms, the duration term expressed in the Settlement Memorandum governs the obligations between the parties for the objectively determinable categories of parts listed in the Order of October 14, 2008. In its response to the motion for partial summary judgment, Whitesell does not disagree with this conclusion.[7]

Importantly, the parties draw a distinction between parts transitioned before and parts transitioned after December 31, 2003 in their contentions regarding the application of the

---

[6] There is no dispute that the "Agreement" refers to the SPA or Supply Agreement of December 14, 2000.

[7] Whitesell states: "[T]he Settlement Memorandum's initial term provisions . . . apply to the parts covered by the Agreements and, generally, the Settlement Memorandum contemplates an initial term lasting at least four years and ten months." (Whitesell Opp'n to EHP's Mot. for Partial Summ. J., at 2.)

Settlement Memorandum's duration term provision. Accordingly, the Court will draw this same distinction herein in its further consideration of the parties' contentions at summary judgment.[8]

### A.  Parts Transitioned Prior to December 1, 2003

In its motion for partial summary judgment, EHP seeks a declaration that the termination date for covered, active parts transitioned to Whitesell prior to December 31, 2003, as well as those parts which first came into use by EHP after that date and were then immediately transitioned to Whitesell, is November 1, 2008.

On April 25, 2008, EHP's Vice President of Electrolux Major Appliances, NA, Mr. Donald J. Market, sent a letter to Mr. Neil Whitesell, President/CEO of Whitesell, entitled "Re: Written Notice of Supply Agreement Termination as to Certain Parts." (Market Aff. ¶ 4 & Ex. 1, Doc. No. 229.) Paragraph 1 of this letter reads as follows:

> As you are aware, the Settlement Memorandum executed by our respective companies on May 28, 2003 modified the term of our Supply Agreement by providing that the Agreement would end on November 1, 2008 for all parts transitioned by December 31, 2003. The November 1, 2008 termination date also

---

[8]  The Court does not attempt to define or elaborate on the concept of "part transition" herein.  Rather, the Court uses the phrase "transition" as the parties have used it in brief and understands the term to mean the process by which EHP initiated and completed its purchasing of product from Whitesell for 100% of its demand.

applies to any parts which first came into use after December 31, 2003 and were transitioned to Whitesell at that time. Please accept this letter as [EHP's] written notice . . . that it intends to terminate the Supply Agreement as to those parts referenced above on November 1, 2008.

As this language indicates, EHP intended to terminate on November 1, 2008, two groups of parts which EHP had been purchasing from Whitesell: (1) parts that EHP had transitioned to Whitesell on or before December 31, 2003, and (2) parts which first came into use by EHP after December 31, 2003 and were then immediately transitioned to Whitesell upon first use. Mr. Market attaches to his affidavit Exhibit 6, which is a joint list of parts that would be terminated on November 1, 2008 pursuant to the April 25, 2008 written notice of termination. A complete explanation of the development of this list is not necessary here. Suffice it to say that those parts listed on Exhibit 6 which are <u>not</u> marked as "Non-Trans" are subject to the November 1, 2008 termination date.[9] Accordingly, EHP also seeks a determination, as a matter of law, that the termination date for all parts listed on Exhibit 6 to Mr. Market's affidavit which are <u>not</u> denominated as "Non-Trans" was November 1, 2008.

In response to EHP's motion in this regard, Whitesell

---

[9] "Non-Trans" stands for "Non-Transition," which, if marked, signifies that the named part is <u>not</u> to be transitioned to another supplier on November 1, 2008. Thus, the term "non-transition" is synonymous with the term "non-terminating."

15

does not dispute *per se* the application of the November 1, 2008, termination date to these two categories of parts.[10] Rather, Whitesell offers several reasons why this Court cannot declare the termination date of any category of parts as November 1, 2008 or any other date. First, Whitesell argues that EHP is estopped from invoking the duration term provision of the Settlement Memorandum because EHP has breached its obligations to purchase parts from Whitesell. Second, Whitesell argues that it has the unilateral right to extend the agreement between the parties for an additional term at the end of the initial term. I will address each of these arguments in turn.

### 1. *Estoppel.*

Whitesell cites several Georgia cases for the proposition that a party who has breached a contract should be estopped from seeking to enforce other provisions of that same contract. (Whitesell Opp'n to EHP's Mot. for Partial Summ. J., at 10-14 (citing Bollea v. World Championship Wrestling, Inc., 271 Ga. App. 555 (2005); King Indus. Realty Inc. v.

---

[10] According to EHP, this is a radical departure from Whitesell's prior insistence that not only did the SPA's duration term provision apply to all parts but that it was proportionately extended for all parts because the June 30, 2003 complete transition date was not met. In any event, Whitesell now concedes in brief: "The parties agreed in the Settlement Memorandum to fix the initial term of parts transitioned by the extended deadline of December 31, 2003, and the initial term for parts transitioned by that deadline **would not be extended based on failure to transition the non-complying parts.**" (Whitesell Opp'n to EHP's Mot. for Partial Summ. J., at 6 (emphasis added).)

Rich, 224 Ga. App. 629 (1997); Burritt v. Media Marketing Servs., Inc., 204 Ga. App. 848 (1992))[11].) Relying on these cases, Whitesell contends that because there are genuine issues of material fact regarding whether EHP has breached its obligation to purchase certain parts from Whitesell,[12] EHP cannot seek to enforce the duration term provision of the Settlement Memorandum.

Here, Whitesell brought this breach of contract action. EHP presently moves for a legal interpretation of an essential term of the contract Whitesell seeks to enforce: the duration term. EHP's motion turns upon the construction of the contract, which construction is a question of law for the court. O.C.G.A. § 13-2-1. And, where, as here, the contract language is unambiguous, the terms of the contract are "given an interpretation of ordinary significance." Race, Inc. v. Wade Leasing, Inc., 201 Ga. App. 340, 341 (1991) (citations and quoted source omitted).

---

[11]  Whitesell also cites Forest Commodity Corp. v. Lone Star Indus., Inc., 255 Ga. App. 244 (2002), in which a party sought to enforce an ocean terminal agreement after it had already assigned its rights and obligations under the agreement to another company. The Georgia Court of Appeals found that the party had repudiated the contract and therefore upheld summary judgment against it. This case is not relevant to the instant case where neither party claims the other party repudiated the contract.

[12]  Generally, Whitesell contends that EHP "has systematically and continually breached the Agreements by delaying its transition of covered parts, purchasing parts from other suppliers that it is obligated to purchase exclusively from Whitesell, and unilaterally suspending its purchases of transitioned parts." (Whitesell Opp'n to EHP's Mot. for Partial Summ. J., at 13.)

The cases cited by Whitesell involve a party seeking to enforce a contract provision where the party had either breached a related provision of the contract itself or had, by its own conduct, caused the opposing party's non-performance. In the instant case, this Court has not been called upon at this juncture to determine whether one party breached its obligations of supply and demand under the contract or whether one party caused the nonperformance of the other party. The duration term of the Settlement Memorandum has little to do with the parties' conduct in supplying or purchasing parts from each other. In particular, the parts at issue here, those undisputably transitioned prior to December 1, 2003 or immediately transitioned upon first being used by EHP after that date, have an unambiguous starting and ending date to the parties' obligations. If EHP has breached, as alleged, its obligation to purchase these parts prior to November 1, 2008, Whitesell's remedy lies in a breach of contract claim for the damages arising from EHP's non-performance, not in a declaration that the termination date is somehow no longer valid or enforceable. Indeed, without an applicable termination date, damages for any alleged breach of EHP could not be calculated.

2. *Unilateral Right to Extend.*

In opposition to the application of the Settlement

Memorandum's duration term provision, Whitesell contends that it has the unilateral right to extend the agreement between the parties for an additional term. The relevant disputed facts related to this contention are as follows.

In a letter dated May 28, 2003 (the same date the Settlement Memorandum was executed), Mr. Neil Whitesell sent a letter to Mr. Roger Leon, EHP's Executive Vice President, which stated:

> I wanted to make it very clear that as we discussed we are only agreeing to the terms and conditions of this settlement because of your acknowledgment and assurance to me that at the end of the initial term that Whitesell will have the undisputed and exclusive right to renew the agreement for a minimum of one additional term under the same terms and conditions as the current agreement as long as we "meet competition" (under the terms of the current agreement and the conditions previously agreed to) and match your best pricing from any other equally qualified suppliers.
>
> I just wanted to be very clear that while we believe that our current agreement spells this intent out, we are only agreeing to the Settlement Agreement based on this understanding. Please do not sign and return the Settlement Agreement and advise me right away in writing if this is not your complete understanding of our discussions.

(Doc. No. 162, Ex. 18.) Whitesell contends that there is a factual dispute as to whether Mr. Leon signed the Settlement Memorandum on behalf of EHP after he reviewed this letter. If he did, so Whitesell's argument goes, then Whitesell has a unilateral right to extend the initial term of the parties' agreement.

19

EHP agrees that there is a factual dispute regarding Mr. Leon's receipt of the letter prior to signing the Settlement Memorandum[13] but argues that this dispute is not material. The Court agrees.

The SPA provided that it may be renewed "only after both parties review and mutually consent in writing to continue" and that "each continuing term must be mutually agreed." (SPA § 3.0, Ex. 1 to EHP's Compl., Doc. No. 1.) The SPA further provided that it could "not be changed or amended except by a written document, **signed and dated by both Electrolux and Whitesell**." (<u>Id.</u> at 21 (emphasis added).) Accordingly, by its terms, the SPA could not be modified by the letter of May 28, 2003 because it was not signed by EHP. Moreover, it is significant that, contrary to the letter's statement that the unilateral renewal provision is "spelled out", there is no reference whatsoever to Whitesell's right to extend in the Settlement Memorandum.

O.C.G.A. § 11-2-209(2) provides: "A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded . . . ." Additionally, any parol evidence that Whitesell wishes to introduce to include a unilateral right to extend in the

---

[13] Mr. Leon avers that he does not recall receiving the May 28, 2003 letter and that he is "confident" that he did not review the letter prior to signing the Settlement Memorandum. (Leon Aff. ¶¶ 4-5, Doc. No. 175, Ex. 5.)

Settlement Memorandum is inadmissible. <u>See</u> O.C.G.A. § 11-2-202. Had the parties intended to include a provision in the Settlement Memorandum that allows one party a unilateral right to extend the agreement, they might have done so. Certainly, Mr. Whitesell's letter indicates that he believed they had. Yet, because they did not, any evidence that would contradict the parties' expression of their intent in this regard is precluded by the parol evidence rule. Accordingly, Whitesell's attempt to unilaterally modify the SPA and the Settlement Memorandum with a letter unsigned by EHP must fail as a matter of law.

Upon the foregoing, EHP's motion for partial summary judgment is **GRANTED IN PART** in that this Court has determined that the termination date for the following parts was and is November 1, 2008:

> (a) All covered, active parts transitioned to Whitesell <u>prior to</u> December 31, 2003, as well as those parts which first came into use by EHP after that date and were immediately transitioned to Whitesell; and
>
> (b) All parts listed on Exhibit 6 to the Affidavit of Donald J. Market which are <u>not</u> denominated as "Non-Trans" parts.

### B. Parts Transitioned After December 1, 2003

With respect to parts that were in use by EHP prior to December 1, 2003 but were not transitioned to Whitesell until after that date, EHP contends that its obligation to purchase

21

these parts from Whitesell lasts only four (4) years and ten (10) months from the date each individual part was transitioned to Whitesell. In other words, each active part will have its own initial term of four years and ten months beginning on the date of its transition to Whitesell. EHP derives this contention from the following language in the Settlement Memorandum:

> To the extent that all Exhibit B parts are not transitioned by December 31, 2003, the initial term for those parts not transitioned will be proportionately extended by the time it takes to fully transition those parts.

(Settlement Memorandum ¶ 3, Doc. No. 127, Ex. 3.)

Whitesell reads this same language to mean that the initial term for <u>all parts</u> not transitioned by December 31, 2003 would be extended by "the time it takes to fully transition those parts." Thus, the four year and ten month term would not begin to run on non-transitioned parts[14] until <u>all</u> such parts are fully transitioned to Whitesell. Then, a four year and ten month term would attach to all of the non-transitioned parts, yielding the same termination date.

Under Georgia law, a basic rule of contract construction is that an interpretation giving every part meaning is preferred. O.C.G.A. § 13-2-2(4); <u>see also</u> <u>Bd. of Regents of</u>

---

[14] Here, the Court refers to "non-transitioned parts" to mean those parts that were in use by EHP prior to December 1, 2003 but were not transitioned to Whitesell until after that date.

Univ. System of Ga. v. A.B. & E., Inc., 182 Ga. App. 671, 674 (1987) ("[A] court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless."). Moreover, words should be given their ordinary meaning. O.C.G.A. § 13-2-2(2) ("Words generally bear their usual and common signification . . . ."). To that end, a dictionary may be used to supply the plain and ordinary sense of a word. Market Place Shopping Ctr. v. Basic Bus. Alternatives, Inc., 213 Ga. App. 722 (1994).

The problem with Whitesell's interpretation of the duration term provision in the Settlement Memorandum is that it ignores the word "proportionately." "Proportionately" is the adverbial form of "proportion" which is defined as follows: (1) "A relationship between things or parts of things with respect to comparative magnitude, quantity, or degree;" (2) "[a] relationship between quantities such that if one varies then another varies in a manner dependent on the first;" or (3) "[t]o adjust so that proper relations between parts are attained." The American Heritage College Dictionary 1097 (3d ed. 2000). Pursuant to this definition, the inclusion of the word "proportionately" to modify "extended" signifies an intent that any extension of the initial term would be limited by some comparative relationship. Yet, if Whitesell's interpretation is accepted, that is if all non-transitioned parts had the same termination date, there would

be no "proportional" extension. Moreover, Whitesell's interpretation reads into the duration term provision a word that is not there-the word "all." Had the parties intended for all parts not transitioned by December 1, 2003 to be extended by the same time period, they might have easily included the term "all."[15]

Finally, Whitesell's interpretation is unreasonable given the clear intent of the parties' that each part would have an "initial term." The "term" of the parties' supply agreement initially ran from January 1, 2001 to April 1, 2008. (SPA § 3.0, Ex. 1 to EHP's Compl., Doc. No. 1.) The Settlement Memorandum redefines the "initial term" for "all parts" listed on Exhibits B and B-1 to run from December 31, 2003 to November 1, 2008 - a four year and ten month period. (Settlement Memorandum, Doc. No. 127, Ex. 3, ¶ 3.) Thus, all parts covered by the Settlement Memorandum were to have a four year and ten month term. Yet, the parties anticipated that not all parts could be transitioned by December 31, 2003; thus, a proportional extension period is supplied in the Settlement Memorandum. Under Whitesell's interpretation, because EHP has yet to fully transition all relevant parts,

_____

[15] Of note, the Settlement Memorandum actually has two separate duration term provisions: one related to the Exhibit B parts and one related to the Exhibit B-1 parts. Both provisions include the same language, that is, that the initial term for non-transitioned parts will be "proportionately extended by the time it takes to fully transition those parts." The existence of two separate provisions undercuts Whitesell's argument that the parties intended to treat all non-transitioned parts as a whole for purposes of contract extension.

the initial term for all non-transitioned parts has not begun to run. Parts fully transitioned in 2004 will have the same ending date as parts yet to be transitioned as of 2010; consequently, a 2004 part will have an initial term of more than ten years. This is completely contrary to the stated intention that all parts would have a four year and ten month term.

In short, Whitesell's interpretation of the extension provision as it pertains to all parts in use prior to December 31, 2003 but not fully transitioned until after that date is an unreasonable construction of the contract. Accordingly, the Court accepts as a matter of law EHP's interpretation that each of these parts are to have an initial term of four years and ten months from the date the part was fully transitioned.

This accepted interpretation prompts the question of when a part is "fully transitioned." In support of its motion for partial summary judgment, EHP shows that there is a spreadsheet of 190 parts which did not terminate on November 1, 2008. These parts are covered parts that were in use prior to December 31, 2003 but were not transitioned to Whitesell until after that date. The spreadsheet is attached to the affidavit of Donald J. Market as Exhibit 7. It is EHP's intention through its motion for partial summary judgment to have this Court determine that EHP's obligation to purchase

the parts listed on the spreadsheet is terminable upon the dates listed therein, which represents a four year and ten month term from each part's first transition to Whitesell.

EHP contends that Whitesell was "heavily involved" in the review and compilation of the information contained on the spreadsheet. More particularly, EHP has presented the declaration of Mr. Sean Scarboro, the Commodity Manager for Electrolux Major Appliances, N.A. (Scarboro Decl., Doc. No. 245.) Mr. Scarboro avers that he worked with Mr. John Duffner, Whitesell's Director of Sales, in the review of their respective companies' purchase and shipment records to determine the dates that each part was first shipped by Whitesell to EHP. (Id. ¶ 3.) Indeed, if the companies' records reflected a start date within thirty days of each other, they used Whitesell's date. If the records indicated dates more than thirty days apart, Mr. Duffner and Mr. Scarboro agreed upon a start date. (Id. ¶ 4.) The parties then calculated the "End Date" or termination date for each part by adding four years and ten months to each part's respective start date.[16] (Id. ¶ 5.) Thereafter, on July 28, 2009, Mr. Market sent a letter to Mr. Neil Whitesell providing

---

[16] Mr. Market further avers that it did not have the records or presumably the cooperation of Whitesell in the compilation of the transition dates for parts used at EHP's factory located in L'Assomption, Quebec City, Canada. (Market Aff. ¶ 12.) Accordingly, Mr. Market used only EHP's records to show the transition date and calculated the end date from there. These parts will be referred to as the "L'Assomption parts."

written notice of EHP's intent to terminate its purchase of the parts listed on Exhibit 7 on the end dates noted therein.

In response, Whitesell provides reasons that the end dates on the spreadsheet are inaccurate. First, Whitesell claims that while the dates listed as start dates may be the first date that a part was sold to EHP by Whitesell, the part may not have been "fully transitioned" in the sense that EHP was not purchasing its 100% requirements for the part from Whitesell. Here, Whitesell contends that it needs more discovery to ascertain the date of "full transition." Yet, Whitesell does not dispute that the parties collaborated on the start dates. Indeed, Mr. Duffner avers that Whitesell "assisted EHP in determining the first ship dates **for purposes of calculating the dates on which EHP intended to stop purchasing parts from Whitesell**." (Decl. of John Duffner, ¶ 15 (emphasis added), Doc. No. 236.) Accordingly, Whitesell cannot be heard now to complain that these are not the proper start dates. Notably, Whitesell has come forward with no evidence to demonstrate what it contends to be a more accurate date of full transition. Rather, Whitesell conclusively states that such information is in the exclusive control of EHP. This contention ignores the fact that Whitesell has its own records of supply and shipment, and Whitesell has had full access to EHP's supplier website known as the "Demand Flow Center" which tracks EHP's requirements for these parts.

(Scarboro Decl. ¶ 6.) In short, there is no genuine issue of material fact with respect to the jointly determined end dates presented in Exhibit 7.

Second, in attacking the end dates of the Exhibit 7 parts, Whitesell contends that EHP suspended all of its purchases from Whitesell on November 1, 2008, and has not transitioned back to Whitesell its purchases of many of these parts. Consequently, there is a lapse of supply which, in Whitesell's estimation, should be counted against the four year and ten month period. Whitesell again imputes its allegations of breach upon issues involving straight contract interpretation. If EHP has breached its agreement to purchase parts, the issue is one of damages not of contract duration.

Finally, Whitesell contends that there are covered parts that have never been transitioned to it. In support thereof, Whitesell presents a letter dated December 12, 2005 from Mr. Alberto Perez Padilla, an EHP Commodity Director, in which he lists numerous parts that EHP intended to transition to Whitesell. Whitesell now contends that not all of those listed parts have been transitioned. EHP does not necessarily disagree with this point; rather, Mr. Scarboro states that some of the non-transitioned parts are now obsolete and some were not transitioned because of Whitesell's refusal to supply required samples. (Scarboro Decl. ¶¶ 7-8.) In any event, the start, and therefore end dates, of parts listed in the letter

28

of December 12, 2005 that have not been fully transitioned appear to be in dispute.

Upon the foregoing, the Court has determined that a four year and ten month duration term shall apply to all parts that were in use prior to December 31, 2003 but were not fully transitioned to Whitesell until after that date. The Court further concludes that the parties have jointly determined that the termination dates listed on the Exhibit 7 spreadsheet, with the exception of the L'Assomption parts. Accordingly, EHP's contractual obligation to purchase the parts listed on Exhibit 7, excepting the L'Assomption parts, is properly terminable on the date listed in last column of the spreadsheet entitled "End Date."

With respect to the L'Assomption parts and any parts listed in the Padilla letter of December 12, 2005, the start or "fully transitioned" dates have yet to be determined. This aspect is therefore referred to the Special Master. The Special Master shall first determine the date upon which the L'Assomption parts have been fully transitioned if it differs from the date already listed by EHP on Exhibit 7. The Special Master shall then determine whether there remain parts listed in the Padilla letter of December 12, 2005 that have not been fully transitioned to Whitesell. If so, the parties shall work to determine whether the transition of those parts is something that should be done or whether this is a matter best

left to a determination of damages. In any event, the Special Master shall permit any *necessary* and *specific* discovery on these issues. Further, the Special Master shall conduct hearings and/or meetings as he deems fit and at times he may schedule. The Special Master will thereafter submit a Report and Recommendation addressing these limited issues to the Court.

### IV. CONCLUSION

Upon the foregoing, Whitesell's motion under Rule 56(f) to deny or defer the consideration of EHP's motion for partial summary judgment (doc. no. 238) is **DENIED**. EHP's motion for partial summary judgment concerning the duration term of the parties' contractual obligations (doc. no. 225) is **GRANTED IN PART and DENIED IN PART** as delineated in this Order. Further, the remaining issues as they pertain to the duration term of L'Assomption parts and the covered non-transitioned parts listed in the Padilla letter of December 12, 2005 are referred to the Special Master.

**ORDER ENTERED** at Augusta, Georgia, this _____25th_____ day of March, 2010.

_____
UNITED STATES DISTRICT JUDGE

30