WHITESELL CORPORATION,           *
                                 *
        Plaintiff,               *
                                 *
    v.                           *        CV 103-050
                                 *
ELECTROLUX HOME PRODUCTS,        *
INC., HUSQVARNA, A.B., and       *
HUSQVARNA OUTDOOR PRODUCTS,      *
INC.,                            *
                                 *
        Defendants.              *

---

# O R D E R

---

Presently before the Court is Defendant Husqvarna Outdoor Products, Inc.'s ("Husqvarna") motion for partial summary judgment concerning the duration term of the parties' contractual obligations. For the following reasons, Husqvarna's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

On December 14, 2000, Defendant Electrolux Home Products, Inc. ("EHP") entered into a Supply Agreement[1] with Whitesell Corporation ("Whitesell"), wherein EHP agreed to buy all of its current and future requirements for certain goods from

---

[1] The Supply Agreement is entitled "Strategic Partnership Agreement: by the parties. The Court will refer to the document as the SPA and the Supply Agreement.

Whitesell during the pendency of the Agreement. (See generally Ex. 1 to EHP's Compl., Doc No. 1.) On June 12, 2006, EHP's Outdoor Products Division was spun off into a Swedish Corporation - Defendant Husqvarna, A.B. (Doc. No. 126 at n.6.) Husqvarna, A.B. allegedly transferred the Outdoor Division to Defendant Husqvarna Outdoor Products, Inc., a Delaware Corporation, with Husqvarna, A.B. being the sole or primary stockholder of Husqvarna Outdoor Products, Inc. (Am. Compl. ¶¶ 4-5.) The two Husqvarna defendants will be collectively referred to as Husqvarna herein.

By Order of October 14, 2008, this Court determined that there are only four categories of parts that are subject to the supply agreement between the parties. (Doc. No. 212.) The four categories of parts are as follows: (1) all parts Whitesell was supplying to EHP as of the date of the Settlement Memorandum; (2) all Springfield Division parts which were being supplied by Bamal as of January 1, 2003; (3) the "Brunner" parts; and (4) all parts supplied through the parties' course of performance. (Id. at 22-25.) At the conclusion of the Order of October 14, 2008, the Court invited the parties to present argument regarding the termination date of these contractual obligations.

On September 22, 2009, EHP filed a motion for partial summary judgment concerning the duration term of the parties'

2

contractual obligations with respect to three of the four definable categories of parts. A comprehensive Order addressing this motion is entered on this same date, and the determinations and conclusions of law set forth therein are expressly incorporated herein. I will refer to the more comprehensive Order as the "EHP Order." In the EHP Order, the Court addressed the duration term of the contractual obligations between Whitesell and EHP. The EHP Order did not address, however, the duration term of the contractual obligations between Husqvarna and Whitesell. More specifically, the parties have agreed that the "Brunner" parts were not at issue between EHP and Whitesell. Instead, the Brunner parts were used solely in the production of outdoor products, which have been manufactured exclusively by Husqvarna since June 12, 2006.

The instant Order essentially picks up where the EHP Order left off. Husqvarna seeks to have the same legal determinations accorded to its contractual obligations with Whitesell as EHP has in its relationship with Whitesell. That is, through the present motion, Husqvarna seeks a declaration of when its obligation to purchase specific parts has ended or will end.

The present motion for partial summary judgment was filed on January 7, 2010. The Clerk gave Whitesell notice of the

summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 262.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied.

On February 1, 2010, Whitesell not only filed a response to Husqvarna's motion but also filed a motion under Federal Rule of Civil Procedure 56(f). Husqvarna responded to the Rule 56(f) motion and filed a reply brief in support of its motion for partial summary judgment. The time for filing any additional materials has expired, and the motion for partial summary judgment and the Rule 56(f) motion are ripe for consideration.

## II.  SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the

nonmoving party. <u>Hogan v. Allstate Ins. Co.</u>, 361 F.3d 621, 625 (11th Cir. 2004). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

<u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoted source omitted) (emphasis supplied). The party opposing the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue to be tried." <u>Walker v. Darby</u>, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Federal Rule of Civil Procedure 56(f) provides:

> If a party opposing [a motion for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

"Subsection (f) allows a party who 'has no specific material contradicting his adversary's presentation to survive a summary judgment motion if he presents valid reasons justifying his failure of proof.'" <u>Wallace v. Brownell Pontiac-GMC Co.</u>, 703 F.2d 525, 527 (11th Cir. 1983) (citation

omitted). "Whether to grant or deny a Rule 56(f) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." _Harbert Int'l, Inc. v. James_, 157 F.3d 1271, 1280 (11th Cir. 1998).

In this case, Whitesell argues that it requires additional discovery to address Husqvarna's motion concerning the duration term of the parties' contractual obligations. In particular, Whitesell contends it needs to develop facts to determine termination dates of the covered parts. Moreover, Whitesell contends that it needs to develop "facts surrounding Husqvarna's failure to transition covered parts to Whitesell, and the extent to which Husqvarna has purchased covered parts from other suppliers." (Whitesell Rule 56(f) Mot. at 2.) As will be more fully explained in the legal analysis, _infra_, for the most part, further development of the record is not necessary to the disposition of the legal matter at hand - the construction of the duration term of the contract.

While information concerning the dates on which Husqvarna fully transitioned covered parts is relevant to a determination of the parts' termination dates, the Court finds that this is a matter best handled by the Special Master when the parties have a genuine dispute. A delay of the consideration of this motion for open-ended and unguided

discovery will work a greater prejudice to both parties than is necessary. Moreover, Whitesell's contention that the information is in the exclusive control of Husqvarna is unavailing.

In short, this Court will not deny or defer the resolution of this motion based upon Rule 56(f) because Whitesell has simply not met its burden to demonstrate a specific need to conduct more discovery on the issues now before the Court. In fact, the matters that cannot be disposed of or reached through consideration of the instant motion for partial summary judgment are better addressed to the Special Master after refining the issues. Accordingly, Whitesell's motion under Rule 56(f) as it pertains to the instant motion for partial summary judgment (doc. no. 279) is **DENIED**.

### III. LEGAL ANALYSIS

The first matter that Husqvarna wishes the Court to address is a determination as a matter of law that the duration term expressed in the parties' Settlement Memorandum of May 23, 2003, governs the enforceable categories of parts between the parties. As discussed in the EHP Order entered on this same date, it does. This means that for certain covered parts, the termination date of the parties' contractual

obligations was November 1, 2008. For the parts not subject to the November 1, 2008 end date, the termination date shall be four (4) years and ten (10) months from the date the part was fully transitioned to Whitesell.

The full implications of this holding, however, can only be determined by examining the relationship between Whitesell and Husqvarna. Importantly, as have EHP and Whitesell, Husqvarna and Whitesell draw a distinction between parts transitioned before and parts transitioned after December 31, 2003 in their contentions regarding the application of the Settlement Memorandum's duration term provision. Accordingly, the Court will draw this same distinction herein in its further consideration of the parties' contentions at summary judgment.[2]

### A. Parts Transitioned Prior to December 1, 2003

In its motion for partial summary judgment, Husqvarna seeks a declaration that the termination date for covered, active parts transitioned to Whitesell prior to December 31, 2003, as well as those parts which first came into use by Husqvarna after that date and were then immediately

---

[2] The Court does not attempt to define or elaborate on the concept of "part transition" herein. Rather, the Court uses the phrase "transition" as the parties have used it in brief and understands the term to mean the process by which EHP initiated and completed its purchasing of product from Whitesell for 100% of its demand.

transitioned to Whitesell, is November 1, 2008.  As stated, the Court agrees  that as a matter of law, November 1, 2008 is the termination date for these parts.

On April 24, 2008, Mr. Roger Leon of Husqvarna sent a letter to Mr. Neil Whitesell, President/CEO of Whitesell, entitled "Re:  Written Notice of Supply Agreement Termination as to Certain Parts."   (Sadler Aff. ¶ 2 & Ex. 1, Doc. No. 261.)  Paragraph 1 of this letter reads as follows:

> As you are aware, the Settlement Memorandum executed by our respective companies on May 28, 2003 modified the term of our Supply Agreement by providing that the Agreement would end on November 1, 2008 for all parts transitioned by December 31, 2003.  The November 1, 2008 termination date also applies to any parts which first came into use after December 31, 2003 and were transitioned to Whitesell at that time.  Please accept this letter as [Husqvarna's] written notice . . . that it intends to terminate the Supply Agreement as to those parts referenced above on November 1, 2008.

As this language indicates, Husqvarna intended to terminate on November 1, 2008, two groups of parts which Husqvarna had been purchasing from Whitesell:   (1) parts that Husqvarna had transitioned to Whitesell on or before December 31, 2003, and (2) parts which first came into use by Husqvarna after December 31, 2003 and were then immediately transitioned to Whitesell upon first use.  Mr. Ryan T. Sadler, a Commodities Manager for Husqvarna, attaches to his affidavit Exhibit 2, which is a list of parts that would be terminated on November 1, 2008 pursuant to the April 24, 2008 written notice of

9

termination.

Exhibit 2 was originally provided to Whitesell on July 1, 2008. Exhibit 2 is sixteen pages long and contains approximately 800 parts. Mr. Sadler avers that Exhibit 2 is incomplete, however, in that there existed additional parts that would be subject to the November 1, 2008 termination date. These additional parts are included on Exhibit 3 to Mr. Sadler's affidavit. Exhibit 3 was provided to Whitesell on January 7, 2010.

Exhibit 3 is four pages long and contains 153 parts. Mr. Sadler states that only three of these listed parts (Part Nos. 131491, 175556, and 175652) are parts that are not subject to the November 1, 2008 termination date because they were not fully transitioned to Whitesell until after December 31, 2003.[3] Of the other 150 parts listed on Exhibit 3, well over half are no longer being purchased from Whitesell. The remaining parts, however, which are denoted by a "Y" in the column marked "Parts Currently Purchased from Whitesell," continue to be purchased from Whitesell. Mr. Sadler shows that with respect to the "Y" listed parts, Mr. David Agee of

---

[3] With respect to these three "extra" parts, Exhibit 3 shows how many days after November 1, 2008 Husqvarna would have been required to purchase the part from Whitesell to satisfy an initial term of four years and ten months. In each of the three cases, the days necessary to complete a four year and ten month term have lapsed. Accordingly, the end date on the three "extra" parts, while it is not November 1, 2008, has passed, and Husqvarna's contractual obligation to purchase these parts has ended.

10

Husqvarna sent a letter to Mr. Whitesell on January 7, 2010, in which Husqvarna purports to give Whitesell six-months written notice of its intent to cease purchasing the "Y" listed parts, effective June 7, 2010.

In light of Exhibits 2 and 3 and their attendant explanation, Husqvarna seeks the following determinations with respect to contract duration:

1.    That Husqvarna's contractual obligation to purchase the parts listed on Exhibit 2 to the Declaration of Ryan Sadler properly terminated on November 1, 2008, as these parts either transitioned to Whitesell before December 31, 2003 or came into first use by Husqvarna after that date and were transitioned to Whitesell at that time;

2.    That Husqvarna's contractual obligations to purchase the parts listed on Exhibit 3 to the Declaration of Ryan Sadler are properly terminable because they fit into one of the following three categories: (a) parts which were transitioned to Whitesell on or before December 31, 2003; (b) parts which Husqvarna first began to use after December 31, 2003 and which were purchased from Whitesell upon their first use;[4] and (c) parts which were transitioned to Whitesell after December 31, 2003 (those being Part Nos. 131491, 175556, and 175652), but which have now satisfied more than four years and ten months of continuous purchases from Whitesell;

--------------------------------------------------

     [4]   The Court notes that Exhibit 3 contains a column under the heading:

1st Continuous
Supply Date from
Whitesell

Many of the parts list a date after December 31, 2003 in this column.  The Court assumes, and Whitesell does not dispute, that these parts are the parts which came into use after December 31, 2003 and were immediately transitioned to Whitesell.

3.  That the parts on Exhibit 3 which are currently
    being purchased by Husqvarna from Whitesell, as
    indicated by the presence of a "Y" under the column
    titled "Currently Purchased from Whitesell," have
    an effective termination date of June 7, 2010; and

4.  That Husqvarna has no further contractual
    obligation to purchase parts on Exhibit 3 which are
    not currently being purchased from Whitesell (i.e.,
    those with an "N" under the column titled
    "Currently Purchased from Whitesell") other than
    potential issues surrounding utilization of
    Whitesell's remaining inventory of these parts.

In response to Husqvarna's motion in this regard,
Whitesell does not dispute *per se* the application of the
November 1, 2008, termination date to Exhibits 2 and 3, of
course excepting the three parts not transitioned by December
31, 2003. Stated another way, Whitesell does not dispute that
the nearly 1000 listed parts over the two exhibits are parts
that were either transitioned to Whitesell prior to December
31, 2003 or were parts first used by Husqvarna after that date
but then immediately transitioned to Whitesell.

Rather, Whitesell first argues that the six-month notice
of termination provided on April 24, 2008 is inadequate
because the lists of parts were not included with the notice.
Section 23.0 of the Supply Agreement provides:

> Electrolux or Whitesell may terminate this
> Agreement at any time by mutual written agreement.
> Alternatively, either party may terminate this
> Agreement in its sole discretion, after completion
> of the initial term, or upon expiration of any
> subsequent term after the initial term, by
> providing written notice of such termination to the
> other party not less than six (6) months prior to

12

the end of such term.

(SPA ¶ 23.0, Ex. 1 to EHP's Compl.)  It is undisputed that the April 24, 2008 notice from Husqvarna provided the requisite six-month notice that Husqvarna intended to terminate the Supply Agreement for all parts subject to the November 1, 2008 end date.   Section 23.0 does not provide that Husqvarna identify the specific parts that would fall subject to the November 1, 2008 end date for the notice to be effective. Indeed, Whitesell should have known what parts it was supplying to Husqvarna prior to December 31, 2003, and thus, should have known that the termination date for those parts was November 1, 2008.  Whitesell has had full access to EHP's supplier website known as the "Demand Flow Center" which tracks EHP's requirements for these parts.   Moreover, as already mentioned, Whitesell has come forward with no evidence to demonstrate that the parts listed in Exhibits 2 and 3 are not parts that were transitioned to Whitesell prior to December 31, 2003 or parts that came into use after that date but were then immediately transitioned to Whitesell. Accordingly, the April 24, 2008 notice was effective with respect to these parts, and the parts have a termination date of November 1, 2008.

Whitesell also contends that the November 1, 2008 termination date may not apply to all the parts listed in

Exhibits 2 and 3 because there may have been a lapse of supply. That is, Whitesell believes that there could be parts on the list that were not continuously supplied by Whitesell to Husqvarna during the initial supply term, and thus, such lapse in supply should be added onto the November 1, 2008 end date. Again, Whitesell presents no specific evidence of such a lapse on any particular part. Its argument is nothing more than conjecture. More importantly, with a definitive termination date of November 1, 2008, Whitesell's allegations of breach are not necessarily determinative of the termination date. If EHP breached its agreement to purchase parts listed on Exhibits 2 and 3, the issue is one of damages not of contract duration.

Further, the Court finds as a matter of law that the six-month termination notice with respect to the "Y" listed parts on Exhibit 3 is June 7, 2010. Here, Husqvarna continued its purchase of these parts past the initial termination date of November 1, 2008. According to Section 23.0 of the SPA, a party may terminate any subsequent term of supply at its sole discretion with six-month written notice. It is undisputed that Husqvarna gave six-month written notice through its letter of January 7, 2010, which attached Exhibit 3 to it.

Finally, Whitesell contends that Husqvarna has provided certain lists that contain discrepancies and thus the

14

termination date for parts remains a genuine issue of material fact. For instance, Whitesell points out that when Exhibit 2 was sent to it, Husqvarna also included a list of parts that would not be terminated. Whitesell complains that there were parts omitted from both of these lists that were being supplied to Husqvarna from Whitesell as of July 1, 2008. (Decl. of John Duffner ¶ 5, Doc. No. 277.) Whitesell further complains that Husqvarna provided two additional lists in November of 2008 which listed parts that Husqvarna wished to continue to receive from Whitesell. These lists contained a few parts that had been previously listed as terminable on November 1, 2008. (Id. ¶ 10.) Whitesell also avers that the January 2010 lists provided by Husqvarna are "inconsistent with previous lists, inaccurately reflect the universe of parts that Whitesell is presently supplying to Husqvarna, and still fail to account for all of the parts that Whitesell is supplying under the [Supply] Agreement." (Id. ¶ 14.)

The Court recognizes that in the thousands of parts being supplied between the parties, there may be a few discrepancies. What is of paramount importance in this motion for partial summary judgment is the universe of parts that have determinable undisputed termination dates and whether Husqvarna has supplied the appropriate notice of termination with respect to those parts. In this case, the Court finds

15

that there is no genuine issue of material fact with respect to the termination date of the parts listed on Exhibits 2 and 3. The determinable undisputed termination dates of those parts was November 1, 2008, excepting Part Nos. 131491, 175556, and 175652 and the "Y" listed parts of Exhibit 3. Moreover, it is undisputed that Husqvarna sent adequate six-month notice that the termination date for all parts transitioned prior to December 1, 2003 or first coming into use after that date but immediately transitioned would be November 1, 2008. Husqvarna, however, continued its demand of certain of these categories of parts-those being the "Y" listed parts of Exhibit 3. With respect to the "Y" listed parts, it is undisputed that Husqvarna sent adequate six-month notice that the termination date will be June 7, 2010.

Upon the foregoing, Husqvarna's motion for partial summary judgment is **GRANTED IN PART** in that this Court has determined that the termination date for the following parts is as follows:

    (a)    All parts listed on Exhibit 2 to the Affidavit of Ryan Sadler had a termination date of November 1, 2008;

    (b)    Part No. 131491 listed on Exhibit 3 to the Affidavit of Ryan Sadler had a termination date of twelve (12) days after November 1, 2008;

    (c)    Part No. 175556 listed on Exhibit 3 had a termination date of forty-five (45) days after November 1, 2008;

(d) Part No. 175652 listed on Exhibit 3 had a termination date of 223 days after November 1, 2008;

(e) All parts on Exhibit 3 denoted by an "N" in the column "Parts Currently Purchased from Whitesell" had a termination date of November 1, 2008; and

(f) All parts on Exhibit 3 denoted by a "Y" in the column "Parts Currently Purchased from Whitesell" (excepting Part Nos. 131491, 175556, and 175652) have a termination date of June 7, 2010.

**B.    Parts Transitioned After December 1, 2003**

Turning to the parts in use prior to December 1, 2003 but transitioned to Whitesell after that date, Husqvarna contends that its obligation to purchase these parts from Whitesell lasts only four (4) years and ten (10) months from the date each individual part was transitioned to Whitesell. In other words, each active part will have its own initial term of four years and ten months beginning on the date of its transition to Whitesell.

As determined in the EHP Order, the reasons for which will not be reiterated here, Husqvarna is correct that each covered part shall have an initial term of four years and ten months from the date of its full transition to Whitesell. This conclusion, however, prompts the question of when a part is "fully transitioned." In support of its motion for partial summary judgment, Husqvarna has attached as Exhibit 5 to the Affidavit of Ryan Sadler a list of parts that were in use by

Husqvarna prior to December 1, 2003 but were not transitioned to Whitesell until after that date.

Exhibit 5 contains a column under the heading:

1st
Continuous
Supply Date
from
Whitesell

which is supposed to reflect the date of full transition of each part. Mr. Sadler avers, however, that in spite of a termination date after November 1, 2008, Husqvarna ceased its demand of many of these parts on November 1, 2008. Husqvarna claims that it was forced to temporarily transition the parts to third party suppliers because of Whitesell's threats to terminate supply. (Sadler Decl. ¶¶ 5-6.) Some but not all of the parts that were transitioned away from Whitesell have been transitioned back. Due to this lapse in supply, Husqvarna took it upon itself to count the lapse in supply against the four year and ten month duration term. Accordingly, Exhibit 5 is broken down into three categories:

(1) those parts that were never transitioned away from Whitesell and have termination dates of four years and ten months after the date listed as the transition date;[5] (2) those parts that were transitioned back to Whitesell after a

_____

[5] These parts have the date of November 1, 2008 under the column titled "1st Date of Continuous Supply After Nov. 1, 08," signifying that the parts were not transitioned away from Whitesell on November 1, 2008.

18

lapse in supply;[6] and (3) those parts that have yet to be transitioned back to Whitesell.[7]  With respect to the parts that were never transitioned away from Whitesell and those that have been transitioned back to Whitesell since November 1, 2008, Husqvarna has provided a termination date for each part which includes four years and ten months plus any time of temporary lapse in supply.  This termination date is listed in the column under the heading:

Calculated<br>
Termination<br>
Date for Parts<br>
Already<br>
Retransitioned

With respect to the parts that have yet to be transitioned back to Whitesell, Husqvarna has provided a number of days necessary to complete a four year and ten month term once the part is transitioned back to Whitesell.  The number of days necessary to complete the initial term of supply is listed in the column under the heading:

Total Days to<br>
Complete 1764<br>
Following<br>
Retransition to<br>
Whitesell

(Id. ¶ 7.)

---

[6]  These parts have a date other than November 1, 2008 under the column titled "1st Date of Continuous Supply After Nov. 1, 08," signifying that the parts were transitioned back to Whitesell on the date indicated.

[7]  These parts have the word "no" in the column titled "1st Date of Continuous Supply After Nov. 1, 08," signifying that the parts have not been transitioned back to Whitesell since November 1, 2008.

Through a letter dated January 7, 2010, Mr. Agee of Husqvarna provided written notice of Husqvarna's intent to terminate the purchase of the parts listed on Exhibit 5 either on the calculated termination date or on the date that the four year and ten month term will be satisfied once the part is transitioned back to Whitesell.

In light of Exhibit 5 and its attendant explanation, Husqvarna seeks the following determinations with respect to contract duration:

1. That Husqvarna's contractual obligation to purchase the parts listed on Exhibit 5 to the Declaration of Ryan Sadler which are currently being purchased from Whitesell properly terminates on the dates listed under the column titled "Calculated Termination Dates of Parts Already Retransitioned;" and

2. That the parts listed on Exhibit 5 to the Declaration of Ryan Sadler that are not currently being purchased from Whitesell will properly terminate after the retransition to Whitesell and resumption of purchases for the number of days noted under the column titled "Total Days Left to Complete 1764 Following Transition to Whitesell."

In response, Whitesell contends that it had no input or involvement in the determination of the first date of full transition. Consequently, if there are genuine issues of fact respecting the start date, there are genuine issues of fact respecting the proper termination date for each part. In this respect, Exhibit 5 differs greatly from the Exhibit of like parts in the EHP Order. (I am referring here to Exhibit 7

attached to the Affidavit of Donald J. Market.) In the EHP Order, Whitesell was "heavily involved" in the review and compilation of the supplied parts' transition dates. That is not the case here. Rather, Exhibit 5 seems to be a unilateral undertaking of Husqvarna.

The Court also finds it rather curious that for purposes of any lapse in supply between EHP and Whitesell, EHP expressly rejected the concept of counting the lapse against the four year and ten month period; yet, here, Husqvarna voluntarily counted its lapse in supply against the four year and ten month period for purposes of calculating the termination dates of the parts transitioned away from Whitesell. In the EHP Order, I essentially agreed with EHP on the matter, concluding that any breach in the supply agreement between the parties was a matter of damages not of contract duration. Here, it would seem that Husqvarna is attempting to mitigate its potential damages by simply extending the initial term by the number of days it was arguably in breach. I remain resolved that the matter of transitioning parts away from Whitesell during a time of contractual obligation is a matter for a breach of contract claim which should not affect the duration term of the contractual obligation. Accordingly, I will not countenance Husqvarna's calculation of dates as set forth in Exhibit 5 since the dates are based on a faulty

premise that it can mitigate its own breach without consequence. That is not to say that I have determined there is an unjustifiable breach on Husqvarna's part. Indeed, Husqvarna spins a tale of Whitesell threats to cease supply and cripple Husqvarna's production efforts. In short, there remain genuine issues of material fact with respect to the parts that were transitioned away from Whitesell on November 1, 2008, not the least of which is why the parts were transitioned away and what effect such transition should have on the termination date of each part.

Upon the foregoing, Husqvarna's motion for partial summary judgment is **DENIED** in its entirety with respect to Exhibit 5. What therefore remains is a determination of an accurate transition date for each part listed on Exhibit 5 and a resolution of the lapse in supply issue. These matters are distinctly suited for referral to the Special Master. The Special Master shall first determine the date upon which the parts listed on Exhibit 5 that were not transitioned away from Whitesell on November 1, 2008 were fully transitioned to Whitesell in the first instance, if such date differs from the date already listed by Husqvarna on Exhibit 5. The Special Master shall then determine a fair and equitable resolution to the contract duration term for those parts that were transitioned away, whether or not such parts have been

22

transitioned back to Whitesell. In any event, the Special
Master shall permit any *necessary* and *specific* discovery on
these issues. Further, the Special Master shall conduct
hearings and/or meetings as he deems fit and at times he may
schedule. The Special Master will thereafter submit a Report
and Recommendation addressing these limited issues to the
Court.

## IV. CONCLUSION

Upon the foregoing, Whitesell's motion under Rule 56(f)
to deny or defer the consideration of Husqvarna's motion for
partial summary judgment (doc. no. 279) is **DENIED**.
Husqvarna's motion for partial summary judgment concerning the
duration term of the parties' contractual obligations (doc.
no. 260) is **GRANTED IN PART and DENIED IN PART** as delineated
in this Order. Further, the remaining issues as they pertain
to the duration term of parts listed in Exhibit 5 to the
Affidavit of Ryan T. Sadler are referred to the Special
Master.

**ORDER ENTERED** at Augusta, Georgia, this _____ day
of March, 2010.

_____
UNITED STATES DISTRICT JUDGE