IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT

2010 NOV -4 AM II: 31

CLERK_____
SO. DIST. OF GA.

WHITESELL CORPORATION,          *
                                *
        Plaintiff,              *
                                *
    v.                          *        CV 103-050
                                *
ELECTROLUX HOME PRODUCTS,       *
INC., HUSQVARNA, A.B., and      *
HUSQVARNA OUTDOOR PRODUCTS,     *
INC.,                           *
                                *
        Defendants.             *

---

O R D E R

---

Presently before the Court is a motion for partial
summary judgment by Plaintiff Whitesell Corporation
("Whitesell") on its claim for price increases.[1] Defendants
Electrolux Home Products, Inc. ("EHP") and Husqvarna Outdoor
Products, Inc. and Husqvarna, A.B. (the latter two
collectively referred to as "Husqvarna") have filed a cross-
motion for partial summary judgment respecting the same claim.
The Clerk has given the non-moving parties notice of the
summary judgment motions and the summary judgment rules, of
the right to file affidavits or other materials in opposition,

---

[1] This claim is set forth in Count II of Whitesell's First Amended
Complaint entitled "Breach of Supply Agreement." (Doc. No. 68, ¶ 78(iii)
("EHP breached the terms of the Supply Agreement . . . by, among other
things . . . failing to pay Whitesell for cost justified price increases
permitted under the Supply Agreement.").)

and of the consequences of default.  (Doc. Nos. 268 & 292.)
Therefore, the notice requirements of <u>Griffith v. Wainwright</u>,
772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been
satisfied.  The motions have been fully briefed and are ripe
for consideration.

## I.  BACKGROUND

### A.  Claim Overview

On December 14, 2000, almost ten years ago, EHP entered
into a Supply Agreement with Whitesell.  The Supply Agreement
is entitled "Strategic Partnership Agreement" by the parties,
and it will be referred to as either the Supply Agreement or
the SPA herein.  At the time the SPA was executed, EHP
manufactured appliances for kitchen, cleaning, and outdoor use
such as refrigerators, cookers, washing machines, vacuum
cleaners, chain saws, and lawn mowers.[2]  (EHP Compl. ¶ 2.)
Pursuant to the SPA, EHP agreed to buy all of its current and
future requirements for certain goods from Whitesell during
the pendency of the Agreement, and Whitesell agreed to supply

---

[2]  EHP manufactured its indoor and outdoor products through two
separate divisions.  On June 12, 2006, EHP's Outdoor Products Division was
spun off into a Swedish Corporation - Defendant Husqvarna, A.B.  (Doc. No.
126 at n.6.)  Husqvarna, A.B. allegedly transferred the Outdoor Division
to Defendant Husqvarna Outdoor Products, Inc., a Delaware Corporation,
with Husqvarna, A.B. being the sole or primary stockholder of Husqvarna
Outdoor Products, Inc.  (Am. Compl. ¶¶ 4-5.)

2

all of EHP's requirements for such goods. (<u>See generally</u> Ex. 1 to EHP Compl., Doc. No. 1.)

The Supply Agreement began a multi-million dollar relationship between the parties that involves thousands of different parts. Litigation between the parties started in the third year of their relationship when EHP filed suit against Whitesell on March 24, 2003. The parties entered into a settlement agreement within a few months, only to return to this Court nearly two years later in March 2005. The parties again entered into an agreement to maintain the status quo in the form of a Consent Order, dated May 17, 2005. Despite the best efforts of the Court and two mediators, the life of this litigation is approaching a decade. The Court need not delve into the tortuous history of the case here, though it would provide a helpful insight into the relationship of the parties. Instead, the factual and procedural backgrounds detailed in prior Orders are incorporated herein.

Of paramount importance to the pending motions for summary judgment, the SPA contains a "Cost Justification" provision, which reads as follows:

> It is Whitesell's intent <u>to maintain and hold firm all pricing for the duration of the Agreement</u>. Only if in an adverse market situation that drastically affects Whitesell's costs would Whitesell request a price increase from Electrolux.
>
> In the event Whitesell requests a price increase for any Good(s) Whitesell provides, <u>then</u>

> upon the request of Electrolux, Whitesell shall
> provide such cost increase evidence to Electrolux
> for any requested changes in any specific unit
> prices. After supplying reasonable documentation
> of such cost increase, Electrolux shall make the
> determination on the price change request.
>
> After such validation of increased costs, both
> parties shall have a face to face meeting and
> within 30 days mutually agree on any price changes
> to be implemented. Electrolux shall have the sole
> option to either accept the substantiated price
> change request on any specific Good(s) that a price
> change was requested or quote those specific
> Good(s) with Qualified Suppliers. Whitesell shall
> be given thirty days to evaluate any bonafide
> written offer after receiving copies of such third
> party offer. However, Whitesell shall have the
> right of refusal to match all bonafide written
> offers received by Electrolux on all such Good(s).

(Id. § 5.5 (emphasis added).) The instant motions for summary

judgment call upon the Court to interpret and apply this

contract provision to the evidence related to Whitesell's

price increase claim and determine whether there is a triable

issue of fact.

At this juncture, I am constrained to note that I have

already concluded *sua sponte* that the subject matter of the

SPA - that is, the "Goods" - was too indefinite to be

enforced. (See generally Order of Oct. 14, 2008.)

Ultimately, the scope of the parties' contractual obligations

was redefined to include only four categories of parts, three

of which were specified in the parties' Settlement Memorandum

of May 28, 2003. The fourth category has been referred to as

the "course of performance" category. The significant Cost

4

Justification provision is included in the SPA - the original contract between the parties - and has never been amended through the Settlement Memorandum, the Consent Order of May 17, 2005, or otherwise. While the Court may question the validity of the entirety of the SPA as an enforceable contract, the parties do not. Accordingly, the Court will press on accepting at face value that certain of the SPA's provisions, to include the Cost Justification provision, are enforceable and govern the relationship between the parties.

According to the cumbersome but plain terms of the Cost Justification provision, Whitesell committed to maintain the pricing of supplied goods for the duration of the Supply Agreement unless "an adverse market situation . . . drastically affects Whitesell's costs . . . ." (SPA § 5.5) In that event, the SPA employs a certain procedure by which Whitesell may seek price increases. An outline of the procedure follows:

- Whitesell first requests the price increase.

- Defendants may request cost justification evidence for the price increase.

- If Defendants make such request, Whitesell is obligated to provide "reasonable documentation" justifying the requested increase in "specific unit prices."

- Once the increased price has been validated by evidence, the parties must have "a face to face

meeting and within 30 days **mutually agree**[3] on any
price changes to be implemented."

- Absent an agreement, Defendants have the sole
  discretion to decide whether to accept the
  substantiated price change on a specific part or to
  quote a different price for that part from a
  "Qualified Supplier."

- Whitesell then has 30 days to evaluate any bonafide
  third party offer and has the right of first
  refusal to match said offer.

(Id.)

The procedure requires Whitesell to provide cost
justification evidence upon request; additionally, in granting
Defendants the sole discretion to reject a price increase in
favor of an unmatched bona fide offer from a third party
supplier, there is no doubt that the Cost Justification
provision favors Defendants. Yet, when a contract is designed
to maintain and hold firm the pricing of parts, the onus is
appropriately upon the party seeking to change the price to
justify any change.

According to Whitesell, during the relationship the price
for steel dramatically increased worldwide, driving up its
costs to produce and supply many of the parts it provided to
Defendants. Consequently, Whitesell notified Defendants that
it would increase the costs of certain parts in 2004, 2005,
2006 and 2007. Whether Defendants are liable to Whitesell for

___

[3] This aspect of the Cost Justification provision appears to be
another agreement to agree, which is similar to the arrangement that led
to this Court's invalidation of the "Goods" provision in the SPA.

the price increases subject to these notices is the issue brought to bear through the motions for partial summary judgment. In particular, on January 22, 2010, Whitesell sought summary judgment based upon its 2005 price increases. In Whitesell's estimation, these claims amount to more than $30 million. (See Pl.'s Memo. in Supp. of Mot. for Partial Summ. J., at 2.) In response, Defendants filed a cross motion for summary judgment on the 2005 price increases; Defendants additionally sought summary judgment on Whitesell's 2007 price increases.[4]

The parties' briefs related to the instant motions for summary judgment on Whitesell's price increase claim reveal an initial dispute as to whether Whitesell was obligated to provide cost increase evidence to Defendants; more specifically, Whitesell contends that Defendants did not request cost increase evidence with respect to the 2005 increases. Assuming Whitesell was required to provide cost increase evidence, the parties dispute whether the evidence provided was sufficient. Upon consideration of the evidence of record, as more fully discussed below, this Court first concludes that there is no genuine issue of material fact regarding Defendants' request for cost justification evidence relating to the 2005 price increases. The Court next

---

[4] The price increases of 2004 and 2006 are not at issue in the current motions for summary judgment.

concludes that there is no genuine issue of material fact that the cost increase evidence provided by Whitesell was insufficient under the SPA. Therefore, because Whitesell did not implement its price increases using the procedure set forth in the Cost Justification provision of the SPA, Defendants did not breach the contract for failing to pay the price increases as a matter of law. Thus, Defendants are entitled to summary judgment on Whitesell's price increase claim for 2005 and 2007.[5]

## B.   Factual Background

On April 13, 2004, Whitesell notified EHP that it would be increasing prices as a result of mounting steel costs. (Whitesell Decl. ¶ 4 & Ex. A.) On May 7, 2004, Whitesell sent EHP an email attaching industry news articles concerning the "record high" steel prices. (Whitesell SOMF[6], Ex. W.) In response to this email, EHP responded by email as follows: "[EHP] appreciate[s] all of the newspaper reading materials [Whitesell] sent over the last few weeks. **While interesting, this is not the process set forth to present a proposed material based price increase to EHP.**" (Leon Decl., Ex. A

---

[5] The Court need not address whether the price quotes supplied by Defendants were "bonafide" as contemplated by the Cost Justification provision of the SPA.

[6] "SOMF" stands for "Statement of Material Facts." Whitesell's SOMF with exhibits appears in the record at document number 266.

(emphasis added).) Subsequently, on November 16, 2004, Whitesell emailed a one-page document containing a chart titled "Taiwan Wire Analysis," which is dated May 20, 2004. The chart lists only two "materials" and purports to show cost increases in this material for the period of November 2003 to May 2004. (Whitesell SOMF, Ex. A.) Attached to the chart are six invoices containing information apparently written in Chinese with no translation provided. (Id.)

Nevertheless, it is undisputed that EHP and Whitesell reached an agreement to pay increased pricing in 2004; further, the agreed-upon increases were less than the full amount of Whitesell's 2004 price increase requests. (Leon Decl. ¶ 6; Whitesell Decl. ¶ 6.) Thereafter, in February and March of 2005, Whitesell sent additional notices of price increases to EHP. (See generally Whitesell Decl., Ex. B.) In each of the notices, Whitesell cites to the increased cost of steel. For example, in an email dated February 24, 2005, Whitesell indicates that it had no alternative but to "pass along" the "excessive cost increases" that Whitesell had suffered in the marketplace. Whitesell continues: "To compound matters, exchange rates have moved in a significant negative direction as well as we have just received additional steel price increases in January as well driving our overall cost increases up to a[n] unbearable and unsustainable level.

We have attempted to only increase items with low or negative margins in an effort to support EHP the best we can during these difficult and trying times . . . ." (Id.) In a letter dated February 18, 2005, Mr. Neil Whitesell, the Chief Executive Officer, indicates that Whitesell had experienced "well over a 30% total cost increase on the vast majority of the products" supplied to EHP. (Id.)

One of EHP's executive officers, Mr. Roger J. Leon, testified that during 2004 and 2005, he spoke to Mr. Whitesell on numerous occasions to notify him that EHP did not consider the materials provided (i.e., the news articles and the "Taiwan Wire Analysis" chart) to be sufficient cost justification evidence under the Cost Justification provision of the SPA. (Leon Decl. ¶¶ 5-7.) In response to requests for cost justification, Mr. Leon claims Whitesell consistently referred EHP employees to the materials provided in 2004. (Id. ¶ 7.)

On March 10, 2005, another of EHP's executive officers, Mr. Donald J. Market, sent an email to Mr. Whitesell objecting to the price increases: "Our agreement specifically states that [EHP] may not 'cherry pick' parts for selective cost reductions in the initial term, yet [Whitesell is] doing just that in [the] price increases. I take great exception to your selectively asking for price increases that obviously benefit

10

your company while imposing higher costs on mine." (Market Decl., Ex. A.) Mr. Whitesell responded: "We have had well over a 100% cost increase in steel pricing **of which we provided proof of last year**." (Id. (emphasis added).)

In making the 2005 price increase requests, Whitesell sent at least twenty separate price increase notices to the various Indoor and Outdoor Products Divisions of EHP dated February 2, 14, 18, 23, and 28 and March 25 and 28.[7] (See Market Decl. ¶ 10; Leon Decl. ¶ 15; Whitesell Decl., Ex. B.) On March 9, 2005, in the midst of its price increases, Whitesell filed a "Motion for Preliminary Relief and to Enforce Settlement Agreement," within which Whitesell sought, inter alia, to have this Court compel EHP to pay the 2005 price increases which Whitesell was in the process of communicating to EHP. (Doc. No. 11, at 4.) In its opposition brief filed on March 24, 2005, EHP stated, in pertinent part, the following:

> After receiving Whitesell's proposed price increases, **EHP has repeatedly requested that Whitesell provide the cost increase evidence required by Paragraph 2 of § 5.5.** To date, Whitesell's only response has been to send EHP newspaper articles which discuss increases in the price of steel but has to date consistently refused to provide any specific cost justification documentation concerning how much Whitesell's price

---

[7] These price increase notices were sent prior to the time that EHP's Outdoor Products Division was spun off into Husqvarna, which occurred on June 12, 2006.

> for this steel it has purchased to produce the
> fastener and wireform parts supplied to EHP has
> actually increased.

(Doc. No. 13, at 8 (emphasis added).)  Whitesell then filed a
reply brief, wherein it acknowledged EHP's position that
Whitesell had refused to provide sufficient cost justification
evidence.  Rather than argue that EHP had not requested such
evidence, Whitesell referred the Court to the cost
justification evidence it had sent in 2004.[8]  (Doc. No. 17, at
5.)  Moreover, when Defendants answered Whitesell's First
Amended Complaint containing the subject price increase claim
on November 16, 2005, they denied that they were liable for
any price increases because the requests did not "follow[] the
cost justification procedures required by Section 5.5 of the
Supply Agreement in that Whitesell refused to supply cost
increase evidence justifying the requested changes to the
effected [sic] part's specific unit prices."  (Doc. No. 70, at
10, ¶ 29.)

With respect to the 2005 price increases, Defendants have
pointed out the following noteworthy aspects of Whitesell's
price increase requests.  As mentioned previously, Whitesell
offered the rising cost of steel as justification for the

---

[8]  EHP would again challenge the sufficiency of Whitesell's cost
justification evidence in its brief opposing Whitesell's motion to enforce
the Consent Order of May 17, 2005.  (Doc. No. 45, at 6 ("Whitesell has
produced absolutely no evidence of how these purported cost increases have
impacted its unit costs for manufacturing the specific parts for which it
has sought price increases as required by . . . . § 5.5.").)

price increases. Yet, 20 of the 116 Indoor Products Division parts that were subject to a price increase contain no steel. (Market Decl. ¶ 8 & Ex. Q.) In Mr. Neil Whitesell's letter of February 18, 2005, he indicates that Whitesell had experienced "well over a 30% total cost increase on the vast majority of the products." (Whitesell Decl., Ex. B.) Yet, the increases Whitesell sought in specific unit parts ranged from 3.01% to 95.64% without any explanation as to how the increases were calculated. (Leon Decl. ¶ 10.) Finally, while Whitesell complained of negative exchange rates and additional steel price increases in January 2005, it provided no evidence to support these purported factors in increasing EHP's costs in 2005.[9]

On May 17, 2005, the parties entered into a Consent Order whereby EHP would not be obligated to pay the 2005 price increase requests until the price increase dispute could be judicially resolved. (Doc. No. 30, at 3.)

In March 2007, Whitesell sent additional price increase notices to Defendants. In response to EHP's request for cost increase justification, Whitesell sent an email dated March 12, 2007 to EHP, which stated in pertinent part:

> The price adjustment [of 2007] was due to oversight in that the prices should have been adjusted in

---

[9] As previously noted, the "Taiwan Wire Analysis" chart purported to show cost increases in two materials only for a period of November 2003 to May 2004.

2004 when steel prices and other cost factors went
up drastically and was not caught due to a[n] error
in our system. The price increase justification
(Whitesell steel cost increases/invoices, etc)
where [sic] given to [EHP] during that period . . .
."

(Market Decl., Ex. B.) On that same day, Mr. Donald J. Market

of EHP sent a letter to Whitesell in which he states that the

explanation in the above email does not satisfy the Cost

Justification provision of the SPA, and he expressly demanded

cost increase evidence of the 2007 cost increase requests.[10]

(Id., Ex. C.) Whitesell stood firm on its position that the

2004 information was sufficient. In an email to Husqvarna on

April 19, 2007, Whitesell stated: "As stated in my previous e-

mail, 'cost justification has been previously been [sic]

presented and accepted by [Defendants] in the form of actual

Whitesell steel invoices.'" (Sadler Decl., Ex. D.)

In the initial brief supporting its motion for partial

summary judgment, Whitesell indicates that it provided

invoices for its steel costs to support its price increases.

(Doc. No. 265, at 4.) Whitesell then goes on to attack the

sufficiency of the third party quotes that EHP provided in

response to the price increase notices. (Id. at 5-18.) There

is absolutely no mention of Whitesell's contention that

Defendants did not request cost justification materials.

---

[10] Mr. Market lodged the same objection to Whitesell by email
dated April 27, 2007. (Market Decl., Ex. D.)

14

Whitesell first mentions this contention in its reply brief filed on March 26, 2010. In the reply brief, Whitesell concedes that EHP asked for cost justification evidence in response to the 2004 and 2007 notices (doc. no. 308, at 4); however, it states that with respect to the 2005 price increase notices, "Defendants offer no evidence of any request they made for cost justification . . . apart from their own unsubstantiated declarations" (id. at 2). Thus, whether EHP requested cost justification evidence in 2005 has been placed at issue. Thereafter, the Court must determine whether the evidence Whitesell produced in 2004 (i.e., news articles and the "Taiwan Wire Analysis" chart) is sufficient to satisfy the requirements of the Cost Justification provision.

## II.  SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the

nonmoving party. Hogan v. Allstate Ins. Co., 361 F.3d 621,
625 (11th Cir. 2004). Moreover,

> [t]he mere existence of some factual dispute will
> not defeat summary judgment unless the factual
> dispute is *material* to an issue affecting the
> outcome of the case. The relevant rules of
> substantive law dictate the materiality of a
> disputed fact. A genuine issue of material fact
> does not exist unless there is sufficient evidence
> favoring the nonmoving party for a reasonable jury
> to return a verdict in its favor.

Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (*en
banc*) (quoted source omitted) (emphasis supplied). The party
opposing the summary judgment motion, however, "may not rest
upon the mere allegations or denials in its pleadings.
Rather, its responses . . . must set forth specific facts
showing that there is a genuine issue to be tried." Walker v.
Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Where contract language is unambiguous, construction is
unnecessary and the court simply enforces the contract
according to its clear terms. Caswell v. Anderson, 241 Ga.
App. 703 (2000). In this case, the parties do not dispute and
the Court concludes that the Cost Justification provision is
unambiguous. Thus, this Court must only determine whether any
material issues of fact remain for jury determination with
respect to the parties' respective duties and performance
under this provision.

16

### III. LEGAL ANALYSIS

#### A. Request for Cost Justification Evidence

In its reply brief of March 26, 2010, Whitesell contends that EHP did not request cost justification evidence with respect to its 2005 price increase requests pursuant to Section 5.5 of the SPA. Upon review of the record, however, the Court concludes that no reasonable jury would determine that EHP did not request cost justification evidence of the 2005 price increases.

Both Mr. Roger J. Leon and Mr. Donald J. Market of EHP testified by declaration that they consistently objected to Whitesell's continued reliance on the materials provided in 2004 (i.e., the news articles and the "Taiwan Wire Analysis" chart) as sufficient cost justification evidence for the 2005 increases. (<u>See</u> Leon Decl. ¶¶ 2, 5-7; Market Decl. ¶ 2-3.) Whitesell presents no evidence to contradict this testimony; instead, it takes issue with the credibility of the declarations, stating that they are "unsubstantiated." In the midst of the 2005 price increase exchange, Whitesell filed a motion asking this Court to compel EHP to pay the 2005 price increases. At that time, EHP represented in court filings and in its Answer to the claim that it had requested cost justification evidence from Whitesell but that the evidence provided was unspecific and thus insufficient under Section

5.5 of the SPA. Rather than then contest EHP's representation that it had requested additional cost justification for the 2005 price increase requests, Whitesell simply maintained in its contemporary court filings that the information it provided in 2004 was sufficient. Further, Mr. Neil Whitesell responded to EHP's objection to the 2005 price increase with a statement that Whitesell "had well over a 100% cost increase in steel pricing **of which [Whitesell] provided proof of last year.**" (Market Decl., Ex. A.) Logic dictates there would be little need for Mr. Whitesell to make such representation if he had not been asked to provide cost justification. Finally, while Whitesell attacks the validity of the declarations, it is noteworthy that the declarations were filed *prior to* the filing of Whitesell's reply brief of March 26, 2010, in which Whitesell contends for the first time that EHP never requested cost justification evidence for the 2005 price increases. I cannot rationally accept that EHP contrived the relevant testimony of its officers before it knew that Whitesell claimed EHP had not requested cost justification evidence in 2005.

Upon the foregoing, particularly in consideration of the context of Defendants' *in judicio* statements to which there were no contemporaneous objections or disputes, the Court concludes that the declarations of Messrs. Leon and Market are

18

sufficient, undisputed evidence that EHP requested evidence justifying the 2005 price increases.

**B.  The Sufficiency of the Cost Justification Evidence**

According to the SPA, once Defendants request cost justification evidence, Whitesell is obligated to provide "reasonable documentation" "for any requested changes in any specific unit prices."  In this case, Whitesell presented newspaper articles  that generally discuss the rise in steel prices and a one-page chart entitled "Taiwan Wire Analysis" which shows that Whitesell's costs of obtaining two types of material from Taiwan had increased over 60% in an eighteen-month period.  This chart is presumably supported by the attached invoices that are written in Chinese with no translation.  Despite the fact that the aggregate value of these price increases is over $30 million (according to Whitesell), it relies solely on this meager documentation to justify the costs increases in 2005 and 2007.  Indeed, Whitesell does not dispute Defendants' statement that this documentation "is the sum total of all cost justification evidence which Whitesell provided in support of all price increase requests at issue in this litigation."  (See Defs.' Memo. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 12 (doc. no. 293).)

19

Assuming *arguendo* that this documentation is accurate, the Court must now determine whether there is a genuine issue of material fact with respect to whether it satisfies the requirements of the Cost Justification provision. Upon consideration of the clear language of the Cost Justification provision and the stated intent of the parties therein, the Court concludes that no dispute of fact remains for jury determination on this issue. Whitesell's purported cost justification evidence provides no information about the specific unit prices for which it sought an increase. Rather, it only demonstrates an increase in the cost of steel and steel wire in a generalized way. It is of little moment that the rise in steel costs may be characterized as drastic and undeniable. Whitesell had an obligation to show how the increased steel prices correlate *specifically* to the unit price increases that it sought to impose.[11]

Particularly telling on this point is Whitesell's failure to counter or mitigate the pricing discrepancies Defendants noted in their court papers related to the instant motions for summary judgment. For instance, Defendants point out that various parts subject to Whitesell's price increase contained

---

[11] Defendants have never disputed the fact that the price of steel drastically increased in 2004; rather, they dispute whether Whitesell has satisfactorily shown that the specific price increase requests correlate to the increased price of steel as mandated by the Cost Justification provision.

no steel. Also, the increases sought in specific unit parts ranged from 3.01% to 95.64% without any explanation as to how these varying percentage increases were calculated. There was also no evidentiary support offered for Whitesell's complaints about negative exchange rates and additional increases in steel costs occurring in January of 2005, let alone evidence that these factors relate to the specific price increase requests.

Rather than explain these discrepancies, Whitesell explains that the price increases were more arbitrary. For instance, in an email to EHP in February 2005, Whitesell states: "[Whitesell] ha[s] no alternative but to pass along a portion of these increased costs to you in the form of a selective price increase. Our aim is to only increase those items with very low or negative margins." (Whitesell Decl., Ex. B.) The import of this statement is that it appears that Whitesell's price increase requests were designed to correct its low or negative price margins as opposed to being a direct correlation to the adverse market situation of rising steel prices. Accordingly, Whitesell did not uniformly raise prices on all parts containing steel but rather sought random and varying percentage increases. Whitesell contends that it is not required to show a direct correlation between the adverse market situation and the specific price increases; however,

this contention ignores the plain contractual language that requires evidence that justifies "specific unit prices." Simply put, selective price increases is inconsistent with the general intent of the SPA that Whitesell maintain and hold firm all pricing for the duration of the agreement unless "an adverse market situation . . . drastically affects Whitesell's costs . . . ."

Moreover, it is unreasonable for Whitesell to maintain, as it has throughout the parties' relationship, that evidence related to 2004 price increases justifies the price increases of 2007. Were the Court to accept this contention, the very heart of the procedure for price increases - i.e., Defendants' contractual right to demand evidence justifying specific unit price increases - would be rendered superfluous. In short, Whitesell failed to demonstrate, as requested by Defendants, how the overall increase in steel prices affected its cost of producing the parts in question and therefore correlated to its price increase requests.

Upon the foregoing, the Court concludes that Whitesell did not comply with the requisite procedure of the SPA to implement price increases as a matter of law. No reasonable jury would determine that the cost justification evidence Whitesell provided in 2004 is "reasonable documentation" of its "requested changes in any specific unit prices."

Accordingly, Defendants are not liable for the subject price increases and are entitled to summary judgment on Whitesell's price increase claim.

## IV. CONCLUSION

Upon the foregoing, Whitesell's motion for partial summary judgment on its price increase claim (doc. no. 264) is hereby **DENIED**. Defendants' cross motion for partial summary judgment on Whitesell's price increase claim (doc. no. 292) is **GRANTED**. More specifically, Defendants are entitled to summary judgment on Whitesell's claim that Defendants are liable to Whitesell for the price increases Whitesell sought to implement in 2005 and 2007. Moreover, Whitesell's motion under Rule 56(f), Federal Rules of Civil Procedure, is **DENIED AS MOOT**.[12]   (Doc. No. 311).

**ORDER ENTERED** at Augusta, Georgia, this 4th day of November, 2010.

UNITED STATES DISTRICT JUDGE

---

[12] Whitesell's Rule 56(f) motion predominantly pertains to evidence relating to the issues involving the third party quotes, which the Court found unnecessary to address.  To the extent that Whitesell argues it needs additional discovery to determine whether "cost justification was timely requested and adequately provided" in 2007, the motion does not explain or establish what additional discovery is needed that would impact the issues decided by this Order.  In short, Whitesell has not provided sufficient reason to warrant a delay in the resolution of these motions.