## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

WHITESELL CORPORATION,          *
                                *
          Plaintiff,            *
                                *
     v.                         *          CV 103-050
                                *
ELECTROLUX HOME PRODUCTS,        *
INC., HUSQVARNA, A.B., and       *
HUSQVARNA OUTDOOR PRODUCTS,       *
INC.,                           *
                                *
          Defendants.           *

## O R D E R

Discovery in this case is presently governed by the Third Revised Joint Discovery Plan ("JDP") entered on February 5, 2015. The parties are currently in the Third Stage of Discovery, in which depositions of fact witnesses will be taken. This stage is scheduled to close on October 15, 2015. Presently pending before the Court are two motions relating to depositions: (1) Plaintiff Whitesell Corporation's ("Whitesell") "Motion for Leave to Take Additional Depositions Pursuant to Fed. R. Civ. P. 30(b)(6)," and (2) Whitesell's Motion for Discovery Sanctions Against Electrolux Home Products, Inc. ("EHP").

## I.  BACKGROUND

In its Third Set of Interrogatories to Defendants, Whitesell asks in Interrogatory 58:  "Identify every person who has knowledge regarding your document retention policies and procedures and your efforts to preserve and produce documents and information relevant to this litigation, and describe the subject matter of his or her knowledge."  (See Doc. Nos. 624-2, ¶ 58 and 625-11, ¶ 58.)

Defendant EHP responded as follows:[1]

> [T]he following individuals have knowledge regarding EHP's document retention policies:
>
> - **Don Market:** Mr. Market has general information regarding EHP's document retention policies and EHP's efforts to produce documents and information relevant to this litigation.
>
> - **Sean Scarboro:** Mr. Scarboro has general information regarding EHP's efforts to produce documents and information relevant to this litigation.
>
> - **Jason Edwards:** Mr. Edwards has general information regarding EHP's efforts to produce documents and information relevant to this litigation.

(Doc. No. 625-11, at 74-75, ¶ 58.)

---

[1]  Defendant Husqvarna Outdoor Products, Inc. ("Husqvarna") interposed an objection to Interrogatory 58 on the grounds that the question was overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  (Doc. No. 624-2, at 41-42, ¶ 58.)  At the hearing of August 14, 2015, Husqvarna represented that it would respond to Interrogatory 58 (Hrg. Tr. of Aug. 14, 2015, Doc. No. 683, at 127).

Through its motion for leave to take additional depositions, Whitesell wishes to depose the corporate representatives identified in response to Interrogatory 58 twice. The first deposition would be limited to issues regarding the corporation's document retention policies and procedures and its efforts to preserve, collect and produce documents and information relevant to the litigation. Issues pertaining to the merits of the case would be explored in the second deposition.

Before a ruling was issued on this motion, Whitesell chose to notice and take the deposition of Mr. Jason Edwards on July 7, 2015, one of the three representatives EHP had identified in response to Interrogatory No. 58. Dissatisfied with the extent of Mr. Edwards' knowledge on the subject matter of Interrogatory No. 58 as revealed in the deposition, Whitesell has filed a motion for sanctions against EHP, seeking attorney's fees and costs associated with taking the deposition and filing for sanctions.

Both motions have been fully briefed and are ripe for consideration. The motions will now be addressed in turn.


## II. MOTION TO TAKE ADDITIONAL DEPOSITIONS

Through this motion, Whitesell seeks the Court's permission to take a Rule 30(b)(6) deposition of corporate

3

representatives identified in response to Interrogatory No. 58 on the topics listed in that Interrogatory, without prejudice to its right to re-depose the representatives on the merits at a later time. As grounds for its request, Whitesell iterates its prior complaints about Defendants' discovery responses (advanced in its motions to compel discovery responses) to include Defendants' improper reliance on their 2006 production, the corruption of metadata, the lack of parity in the production of emails, Husqvarna's lack of response to Interrogatory No. 58, and EHP's inadequate response to Interrogatory No. 58 (the subject of Whitesell's motion for sanctions). Whitesell also refers to two e-mails[2] to contend that Defendants have a "management-level directive to destroy documents directly related to Whitesell's claims." (Pl.'s Memo. in Supp. of Mot. for Leave, Doc. No. 666, at 2.) Whitesell argues that based upon this conduct, "Defendants have intentionally failed to preserve and produce information that Whitesell believes is damaging to Defendants' case, and have provided incomplete or evasive discovery responses in order to prevent Whitesell from locating and obtaining these materials." (Id. at 2-3.) Thus, Whitesell believes that it

---

[2] The first e-mail from EHP's Don Market, dated September 22, 2005, orders the recipient to delete the email. (Doc. No. 624-9, Ex. H.) The second e-mail, also sent in 2005, directs the recipient as follows: "Don't e-mail Kim [Rio], use only voice mail. (It conveniently leaves no paper trail.)" (Doc. No. 624-4, Ex. C, at 30-31.)

4

should be permitted to discover general information about Defendants' ESI ("electronically stored information") protocol and management and document production issues. Whitesell claims that it cannot adequately prepare for fact depositions without an explanation for the "significant gaps in [Defendants'] document production." (Id. at 3.)

Federal Rule of Civil Procedure 30(a)(2)(A)(ii) clearly states that, absent a stipulation, a party must obtain leave of court to take a deposition if "the deponent has already been deposed in the case." Nevertheless, if the first deposition taken is a Rule 30(b)(6) deposition of a corporate representative, courts have been inconsistent as to whether leave of court is required to re-depose the representative on matters outside of the deponent's original Rule 30(b)(6) designation. See Purdue Pharma L.P. v. Ranbaxy Inc., 2012 WL 1414308 (M.D. Fla. Apr. 20, 2012) (discussing the inconsistent treatment of the need to seek leave to take successive Rule 30(b)(6) depositions).

Taking a cue from an unpublished decision in the Southern District of Florida, this Court need not address this "thorny issue." See Procaps S.A. v. Patheon Inc., 2015 WL 2090401, at *3 n.2 (S.D. Fla. May 5, 2015) (not deciding the issue of whether leave is required to take a second 30(b)(6) deposition by granting the requested leave). Instead, this Court will

exercise its broad discretion under Rule 26(b)(2)(A) to limit the parties to taking just one deposition of each deponent. See Fed. R. Civ. P. 26 advisory committee's note (1993 Amendments) (stating that paragraph (b)(2) enables "the court to keep tighter rein on the extent of discovery. . . . [The rule] is intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery . . . ."). This ruling does not limit the duration or scope of any deposition except as provided by the Federal Rules of Civil Procedure. Nor does this ruling prejudice any party's right to seek leave under Rule 30(a)(2)(A)(ii) should future facts and developments warrant such request.

As the parties are aware, this Court has already attempted to rein in discovery in this case with its recent Order of August 17, 2015, in which monthly discovery hearings have been scheduled until the close of discovery. These hearings are specifically designed to address any perceived "gaps" in discovery that may arise. Indeed, the Court has already had two lengthy and productive discovery hearings in the matter. Many of the perceived "gaps" in document production set forth by Whitesell have been or are being addressed. And, as mentioned, the Third Stage of discovery is set to close in a little over a month. In short, the Court cannot justify further delaying this case or adding to its

already tremendous expense by allowing Whitesell to conduct discovery about discovery. Moreover, should the Court detect or uncover any directive, policy, mandate, or practice, written or unwritten, spoken or unspoken, to deliberately falsify, conceal, obfuscate, or destroy any information or document relevant to this litigation, the Court will wield its punitive powers with exacting force and direction. The two e-mails championed by Whitesell for that purpose do not lead the Court to the same conclusion at this juncture.[3]

Upon the foregoing, Whitesell's motion for leave to take additional depositions (doc. no. 665) is **DENIED.**

### III. MOTION FOR SANCTIONS

Interrogatory No. 58 was a two-part inquiry. It asked EHP to identify every person who has knowledge of (1) EHP's document retention policies and procedures and (2) EHP's efforts to preserve and produce documents and information relevant to the litigation. In identifying Mr. Jason Edwards,

---

[3] It should be noted that Defendants contend the e-mails have been given strained and false interpretations. Also, Defendants offer two documents from Whitesell's production which they argue demonstrate Whitesell's "intent to restrict written communications about issues at the heart of the current litigation . . . ." (Defs.' Opp'n to Pl.'s Mot. for Leave, Doc. No. 674, at 4.) This Court will not impute meaning to any of these "smoking gun" documents without _evidence_ of context.

EHP explained that he was a person with "general information" about the latter category.

In his deposition, Edwards is first asked several questions pertaining to EHP's document retention policies:

- Who was tasked with the responsibility of preserving [e-mails]?

- Do you know who at Electrolux has knowledge of the company's retention policies and procedures?

- How does EHP maintain its records?

- Is there a written document retention policy of the company?

- [Is there] any policy that you're aware of as to how and where data is retained?

- Are you aware of what kind of archiving is used by Electrolux?

- Do you know what backup systems at any time from 2008 to today were used by Electrolux?

- Are you aware whether there is a retention policy, written or oral, as to how your laptop is backed up?

- Do you know whether there is a procedure, policy or practice of Electrolux as to clearing data off of laptops before they are reassigned or destroyed?

- Do you know how EHP determined which individuals it would issue litigation holds to?

- Do you know how the company determined the categories of materials that employees were instructed to preserve?

- Who was the person at Electrolux, if you know, who was in charge of ensuring that electronic data was preserved?

- Do you know whether EHP has performed mirror image backups of the drives?

- Are you aware of the number and type of servers?

- And I would imagine that you also are not aware of the schedule that Electrolux uses to purge servers of information?

- Do you know what EHP's practice and procedures are for archiving e-mails?

(Edwards Dep., Doc. No. 672-6, at 21-46.) Mr. Edwards had nothing to offer by way of his responses to these questions. Mr. Edwards also answered "no" to all of the following questions, except that he testified that his computer was taken by IT and given back, but he did not know what IT did to it:

- Can you tell me what electronically stored or ESI searches were run for the documents to be produced in this case in response to Whitesell's discovery request?

- Can you tell me what search terms were used and how they were selected?

- Could you tell who the custodians were of the documents?

- Can you tell me what time periods were involved in the efforts to produce documents and information relative to this litigation?

- Could you tell as of what date EHP exercised its efforts to produce documents and information relevant to this litigation?

- Could you tell what testing was done to ensure identification of responsive documents and information?

- Could you tell what safeguards were put in place to prevent alteration of any metadata?

- Can you tell me who the custodians were in charge of the safeguards to prevent alteration of metadata?

- Do you know whether custodians were interviewed to determine what sources of electronically stored information might exist?

(Id. at 47-48.)   It is not far-fetched to expect a Rule 30(b)(6) witness identified with general information of EHP's efforts to produce documents and information relevant to the litigation to have something to offer on some of these issues.

Whitesell's questioning in this area was then tailored to inquiries of whether Mr. Edwards had any involvement in locating and producing e-mails of certain individuals following the March 12, 2015 hearing.   After a few minutes of Mr. Edwards' denial of any involvement in such production, the following occurred:

> Q:   [W]hat steps did you take to gather documents for production . . . locating any deleted emails from Don Market or to Don Market?
>
> . . . .
>
> A:   I didn't take any steps to produce anything.
>
> Q:   Then what does this mean, that you have general information regarding EHP's efforts to produce documents and information relevant to this litigation other than what you have testified to?
>
> . . . .
>
> A:   I didn't prepare that.  You would have to ask the person that prepared it.

10

> Q:   Other than what you have testified to, do you
>      have any further information regarding EHP's
>      efforts to produce documents and information
>      relevant to this litigation?
>
> A:   No.

(<u>Id.</u> at 62.)

A few questions later, Whitesell asked: "So besides producing your laptop, did you take any other steps regarding EHP's efforts to produce documents and information relevant to this litigation as that language is set forth in interrogatory 58?" Mr. Edwards responded: "[T]here were instances where I produced purchase history data out of our system." Whitesell followed up: "Anything else?", to which Mr. Edwards responded: "No." (<u>Id.</u> at 65-66.) On the issue of producing purchase history data, Mr. Edwards testified that on five to ten different occasions in 2015, Don Market had requested information, and Mr. Edwards accessed the PMS system and produced Microsoft Excel spreadsheets which he sent either to Don Market or outside counsel. (<u>Id.</u> at 66-71.)

Based upon this testimony, Whitesell argues that Mr. Edwards should not have been identified in response to Interrogatory No. 58 because he had no particularized information regarding EHP's efforts to produce documents "and certainly possesses no information that is different than any other of the dozens of other EHP employees whose computer was reviewed by EHP's IT department in connection with this

litigation." (Pl.'s Memo. in Supp. of Mot. for Sanctions, Doc. No. 668, at 3.) Whitesell argues that it is therefore entitled to sanctions against EHP.

In response, EHP points out Mr. Edwards's testimony that he assisted with pulling purchase history data in preparation for production. EHP quarrels with the amount of time Whitesell spent asking Mr. Edwards about the document retention policies since he was not identified as a person with knowledge of those matters, and EHP contends that Whitesell did not thoroughly explore the topic of his professed knowledge, otherwise Whitesell would have learned that Mr. Edwards also "participat[ed] in discussions about the collection of post-2006 emails [and] assisted with providing documents related to counterclaims and damages." (See Edwards Decl., Doc. No. 672-9, Ex. I, ¶ 8.) Finally, EHP further explains that in 2014 Mr. Edwards succeeded Sean Scarboro in the role of assisting Don Market in working with outside counsel in the litigation so that Mr. Edwards was necessarily included in response to the interrogatory.

Under Federal Rule of Civil Procedure 26(g), a signing attorney certifies that the discovery responses provided are complete and correct to the best of the attorney's knowledge, information and belief formed after a reasonable inquiry. Fed. R. Civ. P. 26(g)(1)(A). The attorney further certifies

that the response is not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. _Id._ Rule 26(g)(1)(B)(ii). Rule 26(g)(3) allows the Court to impose sanctions if a certification violates this rule without substantial justification. _Id._ Rule 26(g)(3).

At first blush, Whitesell's motion for sanctions appears well-grounded. From Whitesell's perspective, Mr. Edwards's deposition seemed needless and unproductive. Upon a more contemplative look at the issue, however, the Court cannot reach the conclusion that EHP violated its certification of discovery responses under the circumstances. Thus, Whitesell's motion for sanctions (doc. no. 667) is **DENIED**.

In reaching this conclusion, the present posture of this case is paramount. Following the March 12, 2015 discovery hearing, the Court was hopeful that the parties were on a more focused discovery track. While the Court in no way concludes that discovery was taking place in the most expedient and efficient manner, it seemed as though the parties were becoming more cooperative in their approach. However, less than a month later, Whitesell filed motions to compel discovery. This teed up the need for another discovery hearing, but the Court remained hopeful that the parties could

resolve many of their issues face to face in open court as they did on March 12.

On June 3, 2015, Whitesell changed its legal counsel. Two days later, new counsel sought to take limited Rule 30(b)(6) depositions of the three EHP representatives identified in Interrogatory No. 58. EHP refused to produce its witnesses for multiple depositions resulting in the motion discussed _supra_. Rather than seek guidance from the Court on this issue, Whitesell charged headlong into the deposition of Mr. Edwards. Nearly a month later, Whitesell _sent an email to_ EHP demanding that it pay part of the fees, costs and expenses in connection with the Edwards deposition because EHP provided a "false and evasive answer" to the interrogatory. (Doc. No. 672-7, Ex. G.) Whitesell offered no explanation of its position. (_See_ _id._) EHP responded that Whitesell's position was baseless because of Mr. Edwards's testimony of his assistance with purchase history data. (Doc. No. 672-8, Ex. H.) EHP further pointed out that Whitesell's concentration on document retention policies at the deposition was unwarranted. (_Id._) Whitesell filed its motion for sanctions two days later.

On these facts, the Court is unimpressed by Whitesell's effort to confer on the matter.[4] The duty-to-confer is not an

---

[4]    The spirit and purpose of the meet-and-confer requirement interposed by Local Rule 26.4 and Federal Rules of Civil Procedure 26(c) and 37(a)(2) is no less important in this context - a motion for sanctions under Rule 26(g) - even

empty formality. <u>Merritt v. Marlin Outdoor Advert. Ltd.</u>, 2010 WL 3667022, at *4 (S.D. Ga. Sept. 15, 2010). Moreover, one letter or discovery request, which simply demands that a party accede to every demand for information, can hardly be considered to qualify as a good faith effort to confer and attempt to resolve a dispute. <u>See</u> <u>Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.</u>, 339 F.3d 180, 186-87 (3d Cir. 2003) (recognizing requirement for good faith effort at conferring about dispute, not simply demanding acquiescence); <u>Williams v. Board of County Comm'rs of Unified Gov't of Wyandotte County and Kansas City, Kan.</u>, 192 F.R.D. 698, 699-700 (D. Kan. 2000) (single letter between counsel which addresses discovery dispute does not satisfy duty to confer); <u>Porter v. Brancato</u>, No. Civ. A. 96-2208-KHV, 1997 WL 150050, at *1 (D. Kan. Feb. 24, 1997) ("'A reasonable effort to confer' means more than mailing a letter to opposing counsel.") It remains to be seen whether Whitesell would have been satisfied by EHP's explanation of its disclosure had Whitesell discussed its concerns with greater specificity.

Additionally, the Court is unconvinced that EHP's response to Interrogatory No. 58 was for an improper purpose.

though the duty to confer is not specifically expressed in that subparagraph. Every litigant has a duty to "(1) stop and think before signing discovery requests and protective motions; and, (2) as commanded by local rule, confer before involving the Court." <u>Hernandez v. Hendrix Produce, Inc.</u>, 297 F.R.D. 538, 540 (S.D. Ga. 2014).

To the contrary, the Court views the question as somewhat of a mousetrap. Here, the Court surmises that had EHP failed to provide Mr. Edwards's name in response, a few questions into the depositions of Don Market and Sean Scarboro on these issues would have laid a foundation for a different motion for sanctions from Whitesell, one for EHP's failure to disclose Mr. Edwards. Surely, Mr. Market would have testified that Mr. Edwards gathered relevant documents and information to respond to discovery, particularly given the fact that Mr. Edwards is Mr. Scarboro's successor in the role of providing assistance to Market and outside counsel.

The interrogatory *generally* asks for persons with knowledge about efforts to produce documents and information relevant to the litigation, but then Whitesell complains that the witness does not have *particularized* knowledge of all areas pertinent to that subject matter. In this regard, Husqvarna's counsel's point at the hearing of August 14, 2015, is well-taken when he explained that the interrogatory is essentially premature "without the aid of factual discovery to understand more specifically what are the documents that both sides contend there may be gaps on and to try to get some basic information about what we're looking for instead of just casting stones and calling the other side a spoliator." (Hrg. Tr. of Aug. 14, 2015, Doc. No. 683, at 120.) This is not to

say that Defendants do not have an obligation to provide considered and correct responses to Interrogatory No. 58. In fact, EHP's response to the interrogatory lacks clarity. The opening sentence states that the listed individuals have knowledge regarding its "document retention policies," and then comes the qualification that Mr. Edwards has only information about EHP's efforts to produce documents and information. Nevertheless, upon due consideration, the Court cannot conclude that EHP failed to respond to the best of its knowledge, information, and belief after a reasonable inquiry. That is to say, there is no evidence of bad faith here.

Finally, the Court's decision on this matter is influenced by the fact that there is now a mechanism in place, the monthly discovery hearings, to address the perceived gaps and failings in discovery almost immediately as they arise. The Court cautions the parties that the discovery hearings are critical to a fair, efficient and measured progression of discovery and that even the slightest of perceived injustices, slights, or prejudices should be brought to the Court's attention at the hearings for expedited resolution.

**ORDER ENTERED** at Augusta, Georgia, this _10th_ day of September, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA