WHITESELL CORPORATION,　　　　*
　　　　　　　　　　　　　　　　*
　　　　Plaintiff,　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　v.　　　　　　　　　　　*　　　CV 103-050
　　　　　　　　　　　　　　　　*
ELECTROLUX HOME PRODUCTS,　　　*
INC., HUSQVARNA, A.B., and　　　*
HUSQVARNA OUTDOOR PRODUCTS,　　*
INC.,　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　Defendants.　　　　　　*

## O R D E R

Presently before the Court is Plaintiff Whitesell
Corporation's ("Whitesell") "Motion to Vacate Orders to
Prevent Manifest Injustice." Specifically, Whitesell asks
this Court to vacate thirteen prior Orders entered in this
case by the then-presiding district judge based upon alleged
judicial misconduct. For the reasons that follow, Whitesell's
motion to vacate is **DENIED**.

## I.　BACKGROUND

The allegations of judicial misconduct center around the
interaction between Whitesell's president and CEO, Neil L.
Whitesell, and the Honorable Dudley H. Bowen, Jr., Senior
District Judge for the Southern District of Georgia, who
presided over this case for ten years, from the time it was
filed on March 24, 2003, until he voluntarily withdrew from

the case on April 5, 2013. According to Whitesell, Judge Bowen conducted two private meetings in March 2008 and May 2009 with Mr. Whitesell and the principals of the Defendants, Mr. Roger Leon and Mr. Don Market. Counsel for the parties were not present for these meetings.[1] At both meetings, Judge Bowen and Mr. Whitesell met alone at some point.

As this Court[2] has pointed out previously, the record shows that the years prior to the March 2008 meeting "were subject to numerous starts and stops," and "when it appeared beyond all hope that the parties would be able to resolve their disputes without judicial intervention, the litigation was five years old." (See Order of Nov. 12, 2013, Doc. No.

---

[1] Despite Whitesell's characterization that "Judge Bowen excluded the parties' counsel and ordered that *only* the parties' principals meet with him on March 5, 2008 in Atlanta" (Whitesell's Mot. to Vacate, Doc. No. 670, at 7 (emphasis in original)), the attorneys for the parties were fully aware of the meetings. In fact, the record indicates that when Judge Bowen first broached the subject of meeting with the parties without counsel present, he asked whether counsel had any objection. Whitesell's counsel responded: "None whatsoever." (See Hr'g Tr. of Feb. 13, 2008, Doc. No. 345, at 40.) Further, during a hearing two days prior to the first of the two private meetings, Judge Bowen explained: "I want to get your views on as much of this as possible. I set this matter for today, quite frankly, in anticipation of my conference with your clients' principals on Wednesday so I could get as much background as I could absorb before that time." (See Hr'g Tr. of March 3, 2008, Doc. No. 173, at 3.) During the hearing, Whitesell's counsel told Judge Bowen: "I think, as you'll see on Wednesday, I have a client (Mr. Whitesell) that is certainly willing to seek to resolve this matter." (See id. at 192.)

[2] The use of "the Court" herein refers to the undersigned, currently presiding judge, unless otherwise indicated.

540, at 2.) As Judge Bowen pointed out in an Order dated March 12, 2008, settlement discussions between the parties reached an impasse on December 12, 2007, and "a renewed cycle of litigation ensued." (Order of Mar. 12, 2008, Doc. No. 172, at 4.) It appears that the impasse and an increased filing of motions in the case necessitated Judge Bowen's more active involvement.[3]

The first private meeting was held in Atlanta on March 5, 2008. According to Mr. Whitesell's affidavit, submitted with the motion to vacate and dated August 11, 2015, during the first meeting, Judge Bowen "pressed" Mr. Whitesell for critical information about the importance of Defendants' business to Whitesell in relation to Whitesell's overall revenue. (Whitesell Aff., Doc. No. 670, Ex. B, ¶¶ 9, 11, 13.) Mr. Whitesell also avers that Judge Bowen became "suprisingly angry" with him when he suggested that an outside arbitrator could help resolve the matter. (Id. ¶ 19.)

---

[3] See also Hr'g Tr. of Feb. 13, 2008, at 13 (Judge Bowen stating, "These things would come up every so often and I deal with it and then it would be out of mind because y'all would go off and mediate or do something else, so I come into this thing every six or eight months or a year and that is not the best way to understand it and really have a good case management perception of all of these issues[.] [S]o coming back into it now I still have the same feeling that I did when I started and that is both sides somehow and in some ways are asking me to in one way or another get these folks to do business with each other when it seems that they really don't want to.").

On March 12, 2008, Judge Bowen entered the first of the thirteen challenged Orders. The March 12, 2008 Order denied leave to Whitesell to file a second amended complaint. The motion to amend had been filed over a year after the deadline for filing amended pleadings had lapsed.[4] (See Order of Mar. 12, 2008, Doc. No. 172.) Judge Bowen also appointed Mr. Wade Herring of Savannah, Georgia, to serve as Mediator and Special Master to address outstanding issues including discovery issues and issues involving outstanding invoices. (See Order of April 23, 2008, Doc. No. 183.) Mr. Herring was also to serve as "Monitor and Executor of any compromise or settlement agreement involving these issues." (Id. at 1-2.) In his recent affidavit, Mr. Whitesell contends that Mr. Herring made threats, was verbally abusive toward him, and made comments which suggested that Judge Bowen had shared with Mr. Herring confidential information from their March 2008 meeting. (Whitesell Aff. ¶¶ 22-26.)

On June 12, 2008, Judge Bowen entered the second of the thirteen challenged Orders. This Order expressed Judge Bowen's "grave concerns about the validity, and thus the enforceability, of the original contract." (Order of June 12, 2008, Doc. No. 191, at 2.) The Order invited the parties to

---

[4] In addition to timeliness, Judge Bowen provides other reasonable bases for denying the motion to amend, including Whitesell's lack of diligence in discovery and prejudice to Defendants. (See Order of Mar. 12, 2008, at 10.)

4

brief whether the original Supply Agreement was unenforceable because the parties failed to clearly define the subject matter of the Agreement. (Id. at 6.) Judge Bowen had previously mentioned his concerns to the parties at the hearings of February 13 and March 3, 2008 (Hr'g Tr. of Feb. 13, 2008, at 11; Hr'g Tr. of March 3, 2008, at 4), and to Mr. Whitesell at his meeting with Judge Bowen on March 5, 2008 (Whitesell Aff. ¶ 15).

After briefing, Judge Bowen entered the Order of October 14, 2008, the third challenged order, which establishes the four enforceable categories of parts subject to the parties' supply agreements. This Order has been subject to criticism and procedural attack by Whitesell.[5] (See, e.g., Whitesell's Mot. for Reconsideration, filed Dec. 21, 2009, Doc. No. 250; Whitesell's First Writ of Mandamus, No. 10-14938 (11th Cir. Oct. 25, 2010); Whitesell's Second Writ of Mandamus, No. 12-15688 (11th Cir. Nov. 5, 2012); Whitesell's Mot. for Reconsideration, filed Aug. 29, 2013, Doc. No. 510.)

On May 7, 2009, the second of the two private meetings Judge Bowen held with the parties' principals took place. According to Mr. Whitesell, Judge Bowen was "quite hostile and threatening" toward him at the meeting and essentially

---

[5] On December 21, 2009, Whitesell moved to reconsider the October 14, 2008 Order. (Doc. No. 250.) After addressing each of the points raised by Whitesell, Judge Bowen denied the motion. (See Order of Feb. 17, 2010, Doc. No. 288.)

threatened that if Whitesell did not settle the lawsuit with Defendants, its case would "never see[] the light of day in [the] courtroom."[6]   (Whitesell Aff. ¶ 30.)

Whitesell contends that following the meeting, Judge Bowen set upon a course to ensure that the case did not move forward.   The Court will not recount the entirety of the procedural history outlined in Whitesell's motion to vacate. Suffice it to say, Whitesell views every ruling (or non-ruling as the case may be) as alleged reprisal for Whitesell's failure to settle the case.

Of note, on October 25, 2010, Whitesell filed a Petition for Writ of Mandamus with the Eleventh Circuit, specifically asking the Court of Appeals to vacate the October 14, 2008 Order.   The petition also asks for an order directing the district judge to vacate the appointment of Mr. Herring and to enter a comprehensive discovery schedule and trial date. Finally, in dedicating 5 pages of its petition to the request, Whitesell asks that the case be reassigned to another district judge upon remand.   (In re: Whitesell Corporation, No. 10-14938 (11th Cir. Oct. 25, 2010) ("Reassignment is necessary here because the court's patently irregular *sua sponte* SJ Invalidation Order; its repeated referrals to the special

---

[6]   Mr. Whitesell avers that Judge Bowen made other aggressive and inappropriate comments. (Whitesell Aff. ¶ 30.)

master to decide jury questions; its prolonged refusal to manage the case to allow Whitesell to properly prepare and try its claims; and its disapproval expressed in its October 13, 2010 Order that Whitesell's intransigence was preventing settlement, would cause a reasonable observer to have grave concerns about whether the judge can provide Whitesell with a fair trial of all properly triable claims.").) The Eleventh Circuit denied the petition upon finding that Whitesell had not demonstrated that its right to the writ was clear and indisputable.

On November 5, 2012, Whitesell filed a second Petition for Writ of Mandamus in the Eleventh Circuit, this time requesting an order directing the district court to vacate the stay of discovery and institute a discovery schedule. In the petition, Whitesell levels harsh criticism against Judge Bowen, stating that "the doors to the federal court have been closed to Whitesell." Whitesell again asks that the case be reassigned upon remand. (In re: Whitesell Corporation, No. 12-15688 (11th Cir. Nov. 5, 2012) ("The fact that the District Court raised and decided substantive issues in disregard of the most elementary principles governing summary judgment, the District Court's apparent determination not to move this case forward through discovery and trial, its insistence that Whitesell allow the Special Master to decide issues that are improperly before the Special Master, and its unwavering

insistence that Whitesell should settle the case, collectively evidence the District Court's belief that Whitesell is not entitled to legally mandated process to fairly determine Whitesell's entitlement to relief.").) In particular, Whitesell points out that Judge Bowen had "many hours" of off-the-record meetings with the Special Master, Mr. Herring. Whitesell contends that these meetings constituted extra-judicial personal knowledge that serves to disqualify Judge Bowen from presiding over the case.

On December 26, 2012, the Eleventh Circuit stayed the mandamus action for sixty days to afford Judge Bowen an opportunity to rule on four discovery-related motions. Upon receiving the Eleventh Circuit's order, Judge Bowen conducted a two-hour status conference and then assisted the parties over the course of nearly two weeks in developing a joint discovery plan. (See Order of Feb. 5, 2013, Doc. No. 490.) Ultimately, the second petition for a Writ for Mandamus was denied as moot.

On April 5, 2013, Judge Bowen withdrew from the case, and the case was reassigned to the undersigned judge. This Court's first order of business was to take up Whitesell's motion for reconsideration of two Orders entered on March 25, 2010, granting partial summary judgment in favor of

Defendants.[7]   This Court vacated portions of the prior rulings, granting in part Whitesell's motion for reconsideration.  (Order of June 24, 2013, Doc. No. 499.)

Next, the Court held a status conference on August 8, 2013.  At that time, the Court granted Whitesell leave to file a motion to reconsider the October 14, 2008 enforceable parts Order.  On November 12, 2013, after a thorough and sifting review, this Court arrived at the same conclusions that Judge Bowen had reached in his Order of October 14, 2008, and in the well-reasoned Order on Reconsideration dated February 17, 2010.  In fact, this Court could not find a "substantial ground for difference of opinion" to certify the case for interlocutory appeal.  (Order of Nov. 12, 2013, Doc. No. 540, at 8 (noting also that "[i]t is not lost on the Court that Whitesell filed a Petition for Writ of Mandamus with the Eleventh Circuit in 2010, arguing the erroneousness of the October 14, 2008 [Order], and the Eleventh Circuit did not see fit to address the issue").)

In March 2014, the Court conducted a two-hour hearing addressing, count by count, Whitesell's proposed Second Amended Complaint.  After the hearing and another round of briefs on the issue, the Court granted leave to Whitesell to file a Second Amended Complaint albeit upon sustaining certain

---

[7]   The Orders of March 25, 2010 are numbers seven and eight of the thirteen challenged orders.

objections lodged by Defendants.  (See Order of May 28, 2014, Doc. No. 577.)  Since the Second Amended Complaint was filed and a Joint Discovery Plan devised, the parties - with the Court's active participation - have been engaged in extensive discovery that is presently scheduled to close toward the end of 2016.

## II.  LEGAL STANDARD

Whitesell asks this Court to vacate thirteen prior orders entered by Judge Bowen.  Federal Rule of Civil Procedure 54(b) provides that a court may revise any interlocutory order at any time before the entry of final judgment.[8]  Watkins v. Capital City Bank, 2012 WL 4372289, at *4 (S.D. Ga., Sept. 24, 2013); Lambert v. Briggs & Stratton Corp., 2006 WL 156875, at *1 (S.D. Ga. Jan. 19, 2006).  While Rule 54(b) does not specify the standard to be used by courts in exercising authority to revise prior orders, courts in the Eleventh Circuit have recognized that reconsideration is appropriate if there is (1) an intervening change in controlling law, (2) newly discovered evidence, or (3) the need to correct clear error or prevent manifest injustice.  Raiford v. National Hills Exchange, LLC, 2014 WL 97359 (S.D. Ga. Jan. 8, 2014);

---

[8]  While Whitesell's motion is titled a "Motion to Vacate," the motion is essentially a motion to reconsider the prior orders, albeit for a matter extrinsic to the substantive legal holdings underpinning each order.

accord <u>Bryant v. Jones</u>, 696 F. Supp. 2d 1313, 1320 (N.D. Ga. 2010); <u>Burger King Corp. v. Ashland Equities, Inc.</u>, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). Here, Whitesell contends that it would be manifestly unjust to allow the challenged orders to stand.

"The reconsideration of a previous order is an extraordinary remedy and must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." <u>Travis v. Sec'y, DOC</u>, 2013 WL 5596395, at *1 (M.D. Fla. Oct. 11, 2013) (internal quotation marks omitted). Importantly, especially in the present context, a motion for reconsideration should not be granted to offer new legal theories or evidence that could have been presented before the original decision. <u>Raiford</u>, 2014 WL 97659, at *1 (citation omitted).

### III. ANALYSIS

In this case, it is Whitesell's burden to show its allegations of judicial misconduct are of such a "strongly convincing nature" that vacation of the prior orders is warranted. In considering the entirety of the case, this Court has determined that Whitesell is unable to carry its burden because the motion is untimely and Whitesell has not demonstrated manifest injustice.

A.   Timeliness

The incidents that give rise to Whitesell's complaint allegedly took place in March 2008 and May 2009.  According to Whitesell, the communications between Mr. Whitesell and Judge Bowen caused Whitesell to believe that Judge Bowen set upon a course of delaying the litigation and ensuring that the case would not proceed to trial.  Whitesell looks to the lengthy stay of discovery, the appointment and use of Mr. Herring, and other events in the case as evidence of Judge Bowen's deliberate conduct against Whitesell.

From this Court's perspective, any complaint that Whitesell had about Judge Bowen's conduct could have and should have been raised many years ago.  Timeliness is a factor in consideration of any motion for reconsideration. Lujan v. City of Santa Fe, --- F. Supp. 3d ---, 2015 WL 4993982, *16 (D.N.M. Aug. 15, 2015) (citing 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478.1 (2d ed.) ("Stability becomes increasingly important as the proceeding nears final disposition . . . . Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling.")); Rockland Exposition, Inc. v. Alliance of Automotive Serv. Providers of N.J., 894 F. Supp. 2d 288, 339-340 (S.D.N.Y. 2012) ("In determining whether reconsideration is warranted, the Court may also consider the timeliness of the motion, a tardy

movant's explanation for not presenting the evidence earlier, and the potential prejudice to the opposing party which may result from granting the motion."); cf. United States v. Roberts, 978 F.2d 17, 20-22 (1st Cir. 1992) (listing "tardiness" and "reasons underlying the tardiness" as factors to be examined on a motion for reconsideration).

Whitesell offers that it did not raise these judicial misconduct allegations any earlier in the case because Mr. Whitesell's attorneys had counseled against it at every turn. Mr. Whitesell avers that his attorneys told him that raising the matter would be improper and further prejudice his case. (Whitesell Aff. ¶ 32.)

Whitesell's explanation falls flat in light of the history of this case. The attack on Judge Bowen's conduct in Whitesell's two mandamus actions clearly demonstrates that its counsel was not worried about potential judicial retribution. In the first petition for writ of mandamus, Whitesell complains that Judge Bowen repeatedly disregarded controlling procedural and substantive law, attacking the October 14, 2008 enforceable parts Order in particular. (See Pet. for Writ of Mandamus, Case No. 10-14938, at 1-2, 20-24.) Whitesell further contends that Judge Bowen had "frustrated Whitesell's right to prepare and try its case to a jury." (Id. at 1, 23.) It also states that Judge Bowen had improperly diverted key fact issues to Mr. Herring. (Id. at 2-3, 15-17.) Finally,

Whitesell seeks reassignment of the case upon remand because of its "grave concerns" that Judge Bowen could not offer Whitesell a fair trial. (Id. at 25-29.) Specifically, Whitesell argues that Judge Bowen's conduct was based in part upon his "opinions regarding Whitesell's settlement position," opinions informed by Judge Bowen's alleged improper communications with Mr. Herring. (Id. at 26.) The allegations surrounding the private meetings could have been raised in support of Whitesell's request for reassignment of the case. Yet, Whitesell notably failed to mention the alleged coercive and aggressive comments of Judge Bowen at that time.

Whitesell had another opportunity to raise the judicial misconduct allegations in its second petition for writ of mandamus. In this petition, Whitesell again complains that Judge Bowen ignored the Federal Rules of Civil Procedure and violated Whitesell's due process rights. (See generally Pet. for Writ of Mandamus, Case. No. 12-15688.) Whitesell again seeks reassignment upon remand, again accuses Judge Bowen of improper communications with Mr. Herring regarding settlement negotiations, and yet again, fails to mention the most serious allegations against Judge Bowen. (See id. at 23-28.)

The mandamus petitions show that Whitesell's attorneys did not shy away from lodging allegations of judicial misconduct. Notably, Mr. Philip J. Kessler from Detroit,

Michigan, with whom the Court became familiar in the past couple of years, came into the case before the first mandamus petition, the filing of which was his first business of record. It would seem that had Mr. Whitesell wanted the communications of the private meetings raised, he could have hired an attorney willing to do so at that point. He apparently did not. Indeed, while the Court has not met Mr. Whitesell, there is no doubt that he is a savvy, assertive, intelligent businessman with deep litigation pockets capable of finding an attorney to conduct his case in a manner that he wishes. The retainment of the most recent attorneys and local counsel demonstrate that observation.[9]

---

[9] Whitesell attaches an e-mail from an attorney of the Hull Barrett law firm, William J. Keogh III, withdrawing his firm's representation of Whitesell as local counsel. The e-mail, dated August 13, 2015, is heavily redacted. The unredacted portion reads: "Our firm cannot assist in the new line of attack that is now being pursued. I trust you understand that position, as David Balser (former Whitesell counsel) did previously. Accordingly, our firm will be withdrawing from this case and notifying the court of our planned withdrawal." (Whitesell's Reply Br., Ex. A, Doc. No. 705.) Whitesell would have this Court conclude from this e-mail that prior counsel, presumably Mr. Balser, refused to raise the judicial misconduct allegations for "fear of retribution from Judge Bowen." (Id. at 4-5.) The Court first notes that Mr. Balser had withdrawn from the case nine months before the filing of the second petition for writ of mandamus, wherein the judicial misconduct allegations were not raised. More importantly, the ambiguity of the phrase "as David Balser did previously" cannot be overstated. Indeed, the Court takes more from the phrase "new line of attack," indicating that this is the first time local counsel, who had served in the case since 2003, had heard the present allegations. That said, the e-mail is heavily redacted and void of context. This Court attaches to it the significance it deserves under these circumstances, which is none.

15

The present motion to vacate based upon allegations of judicial misconduct that arose six and seven years ago is simply untimely. Whitesell's justification for the untimeliness-that his attorneys feared retribution-is belied by the mandamus petitions. In short, Whitesell's explanation of its delay in bringing these matters to the attention of the Eleventh Circuit or even to this Court upon reassignment is just not credible upon this Court's evaluation of the players in this case and the record.

B.   Manifest Injustice

In addition to being untimely, Whitesell's motion fails to establish the manifest injustice it claims. Manifest injustice "ordinarily requires a showing of 'clear and obvious error where the interests of justice demand correction.'" McGuire v. Ryland Grp., Inc., 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007) (quoting Prudential Sec., Inc. v. Emerson, 919 F. Supp. 415, 417 (M.D. Fla.1996)).

In this case, this Court has not only independently reviewed the challenged Orders and found the reasoning and conclusions therein to be legally sound, but the Court has responsibly and thoroughly reviewed the entire case. Moreover, discovery has been on-going since February 2013. Discovery is framed by the Second Amended Complaint and governed by a Joint Discovery Plan, both of which were fashioned by the scope, limitations, and rulings contained in

16

many of the thirteen challenged Orders.  Thus, the harm that would befall the parties in dramatically changing the landscape of this litigation nearly three years into the discovery process is immeasurable.

The Court will now elaborate.  The first challenged Order, dated March 12, 2008, denied Whitesell leave to amend its complaint.  (See Doc. No. 172.)  After reassignment, this Court allowed the filing of the Second Amended Complaint. Accordingly, the Order of March 12, 2008 has been superseded by subsequent case developments and vacating the Order now would serve no purpose.

The second, third, fourth and sixth challenged Orders, dated June 12, 2008, October 14, 2008, October 31, 2008, and February 17, 2010, all deal with limiting the case to four categories of enforceable parts.  (See Doc. Nos. 191, 212, 216 & 288.)  On November 12, 2013, this Court denied Whitesell's motion for reconsideration of this ruling by Judge Bowen after a thorough and sifting review of its own. (See Doc. No. 540.) Accordingly, Whitesell has suffered no prejudice because the Orders have been reviewed and essentially affirmed on the merits.

The seventh and eighth Orders, both dated March 25, 2010, were reconsidered upon reassignment.  (See Doc. Nos. 306 & 307.)  Whitesell also challenges Judge Bowen's denial of its motion for reconsideration of these Orders, dated October 13,

2010, the ninth of the challenged Orders. (See Doc. No. 363.)
These three Orders concern the duration term of the parties'
contractual obligations. Because this Court granted in part
Whitesell's motion for reconsideration (see Order of June 24,
2013, doc. no. 499), Whitesell has not shown that it has
suffered any prejudice because the Orders have been reviewed
independently. Further, to change the duration terms of the
parties' contractual obligations in any way at this point
would cause undue prejudice to Defendants and the ongoing
discovery process.

The tenth challenged Order, dated November 4, 2010,
resolved the parties' cross-motions for summary judgment on
the issue of Whitesell's attempt to raise prices of certain
parts in 2005 and 2007. (See Doc. No. 372.) The twelfth
challenged Order, dated May 9, 2011, denied Whitesell's motion
for reconsideration of the Order. (See Doc. No. 405.) Upon
reassignment, this Court had occasion to review these rulings
and found the reasoning and conclusions therein to be as
"sound and unassailable now" as they were at the time the
Orders were entered. (See Order of Aug. 30, 2013, Doc. No.
512, at 2.) Accordingly, Whitesell has not shown that it has
suffered any prejudice because the Orders have been reviewed
and essentially affirmed on the merits.

The Order of March 25, 2009 (the fifth challenged Order -
doc. no. 220) terminated the parties' motions to compel

without prejudice. The Order of December 14, 2010 (the eleventh challenged Order - doc. no. 376) is a ministerial order involving the Special Master. Now that discovery is ongoing, it is difficult to see how allowing these Orders to stand prejudices Whitesell.

Finally, Whitesell prevailed on the merits in the thirteenth challenged Order of June 8, 2011 (see doc. no. 429), when Judge Bowen denied Husqvarna's motion for summary judgment concerning the transition of Brunner and Matrix parts. Accordingly, Whitesell has not shown how it was prejudiced thereby.

In conclusion, Whitesell has not suffered a manifest injustice through the entry of the challenged orders because it has not demonstrated "'clear and obvious error where the interests of justice demand correction.'" See McGuire, 497 F. Supp. 2d at 1358 (quoted source omitted). Moreover, Whitesell has not shown that any harm to it outweighs the harm that would befall Defendants, and Whitesell for that matter, in vacating orders which could revamp the entire case.


## IV. MOTION FOR AN EVIDENTIARY HEARING

In its motion to vacate, Whitesell states that it is *entitled* to an evidentiary hearing in this matter. (See Doc. No. 670, at 23.) This compulsory language is used again in Whitesell's separately filed "Request for Preliminary Oral

Argument," wherein Whitesell states that it is "entitled to an evidentiary hearing during which [it] will present evidence in support of its Motion to Vacate." (Doc. No. 697, at 1.) Nevertheless, this Court has not found any case or other authority that mandates an evidentiary hearing on a motion for reconsideration.

In support of its "entitlement" to an evidentiary hearing, Whitesell cites two cases. The first case, <u>Valcin v. Primerica Life Ins. Co.</u>, 2011 WL 5037212 (M.D. Fla. Oct. 24, 2011), involved a plaintiff's claimed lack of understanding of the settlement agreement reached in her case. After notifying the district court that she had settled the case, the plaintiff refused to sign the settlement documents. The plaintiff moved to set aside the dismissal of her case. In consideration of the motion, the district court determined that the plaintiff's allegations regarding the settlement agreement were "sufficient to require an evidentiary hearing on the matter, at which both plaintiff and her attorney must testify." <u>Id.</u> at *2. The district court's announcement that it would conduct an evidentiary hearing under the particular circumstances of that case does not equate to a mandate that an evidentiary hearing be held in this case. Such a reading would require a tremendous leap in interpretation and application from a case-specific ruling to the case at bar. Moreover, there were no allegations of judicial misconduct in

the Valcin case.  In short, the case has no relevance to the instant one.

The second case, Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc., 304 F.3d 1331 (11th Cir. 2002), involved a party's challenge to an arbitration award based upon allegations of partiality on the part of a member of the arbitration panel.  Upon review of the arbitration award, the district court first allowed discovery concerning the allegations of partiality.  Following this period of discovery, the district court confirmed the arbitration award without an evidentiary hearing.  Id. at 1335-36.  In the case, the district court did not reach the issue of whether the partiality of the panel member mandated an evidentiary hearing because the district court, "on its own initiative, chose to revisit whether discovery should have been allowed at all.  It decided that its initial decision to allow discovery was incorrect and that it should confirm the arbitration award without further debate."  Id. at 1336.

The Eleventh Circuit vacated the arbitration award and remanded the case for an evidentiary hearing after detailing the facts demonstrating the partiality of the panel member. The Eleventh Circuit stated:  "'[T]he mere appearance of bias or partiality is not enough to set aside an arbitration award,' but it should have been enough to require the district court to hold an evidentiary hearing."  Id. at 1340 (quoted

source omitted). Essential to this holding is the Eleventh Circuit's determination that the challenging party had presented prima facie grounds for vacatur of the arbitration award based upon a conflict of interest under the Federal Arbitration Act ("FAA"). As the court put it, at that point "the district court should have plunged headlong into the evidentiary fact-finding." Id. at 1341.

What first strikes this Court about the Univ. Commons-Urbana case is that it involves a specialized area of the law both procedurally and substantively, i.e., the Federal Arbitration Act. The FAA expressly provides for the vacatur of an arbitration award "'[w]here there was evident partiality or corruption in the arbitrators . . . .'" Id. at 1338 (quoting 9 U.S.C. § 10(a)(2)). In that context, the Eleventh Circuit held that "evident partiality" "necessarily entails a fact intensive inquiry" and thus an evidentiary hearing. Id. at 1345. The Univ. Commons-Urbana case, however, does not mandate an evidentiary hearing outside the context of a Federal Arbitration Act case challenging the partiality of an arbitration panel member. Thus, Whitesell has failed to show that an evidentiary hearing is required.

Turning to the case at bar, there is simply no need to have an evidentiary hearing in light of the bases of the Court's ruling as announced supra. There is nothing more that can be presented that would excuse the untimeliness with which

22

this motion was filed or demonstrate that the challenged orders are manifestly unjust to Whitesell. Moreover, Whitesell has simply not established a prima facie case of judicial misconduct with nothing more than the self-serving affidavit of a party litigant submitted 7 years late, particularly where the challenged rulings have been and continue to be legally sustainable. Accordingly, Whitesell's motion for an evidentiary hearing regarding this matter (doc. no. 697) is **DENIED**.

### V. CONCLUSION

Upon the foregoing, Whitesell's "Motion to Vacate Orders to Prevent Manifest Injustice" (doc. no. 670) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 21ˢᵗ day of October, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA