IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

WHITESELL CORPORATION,         *
                                       *
        Plaintiff,         *
                                       *
     v.                *       CV 103-050
                                       *
ELECTROLUX HOME PRODUCTS,   *
INC., HUSQVARNA, A.B., and  *
HUSQVARNA OUTDOOR PRODUCTS, *
INC.,                         *
                                       *
        Defendants.      *

ORDER

This Order will address Defendant Husqvarna Outdoor Products, Inc.'s ("Husqvarna") objections to Interrogatories 10, 12, and 17 served upon it by Plaintiff Whitesell Corporation ("Whitesell"). These Interrogatories are part of Whitesell's Third Set of Interrogatories to Defendants. (See Doc. No. 771, Ex. A.)

The subject Interrogatories pertain to the Brunner and Matrix parts. Interrogatory 10 seeks pricing information for the.parts and all components of the parts from January 2001 to present. Interrogatories 12 and 17 seek specific information about the supply and/or manufacture of component parts from January 2001 to present. In response, Husqvarna has provided all information requested for the year 2002 and from January

1, 2004 to October 31, 2008 (a period of time that Husqvarna refers to as the "contract term"). Husqvarna objects to providing information for the years 2000 to 2001, 2003, and from 2009 to present.

The scope of duration was addressed at the January 21, 2016 monthly discovery hearing. Whitesell attempted to explain its position with respect to broadening the scope past what had already been provided by Husqvarna. The Court asked for briefing on the issue, specifically concerned that Whitesell's request was overly broad and immaterial to the claims in the case respecting the Brunner and Matrix parts. Whitesell filed a supportive brief on February 11, 2016, and Husqvarna responded on March 3, 2016.

Upon reviewing the briefs, and having had the benefit of argument at the January 21, 2016 hearing, the Court hereby **DENIES** Whitesell's motion to overrule Husqvarna's objections to the period of time requested in Interrogatories 10, 12, and 17.[1] In summary, Husqvarna has established that the supply of Brunner and Matrix parts from Whitesell to Husqvarna began with the execution of the Settlement Agreement in May 2003.[2]

---

[1] The Clerk is directed to **TERMINATE as DENIED** document number 771.

[2] Prior to the execution of the Settlement Memorandum, the parties disputed whether the Brunner parts fell within the scope of the Supply Agreement. This ambiguity as to the scope of covered parts is what led to the Court's Order of October 14, 2008, defining the four enforceable categories of parts.

Pursuant to that Settlement Agreement, the contract term for these parts should have run from January 1, 2004 to October 31, 2008. The parties do not dispute that the Brunner and Matrix parts were never transitioned to Whitesell as contemplated by the Settlement Memorandum, thus giving rise to Whitesell's breach of contract claim. In the Court's view, only information and pricing for the contract term is relevant to Whitesell's breach of contract claim.[3]

By way of further explanation, the fact that the Brunner and Matrix parts were never transitioned differentiates them from other *non-transitioned* parts. Non-transitioned parts will have a contract term-an end point-a date of full transition plus a 58-month extension period. The Brunner and Matrix parts do not have a determinable contract term other than the one provided for in the Settlement Memorandum. To that point, the parties have consistently differentiated

---

Only because the Settlement Memorandum definitively placed the Brunner parts within the scope of the Supply Agreement did the Court include them by name within the four enforceable categories of parts in this lawsuit. Accordingly, the Court readily agrees that the parties' obligations vis-à-vis the Brunner and Matrix parts began with the Settlement Memorandum.

[3] The Settlement Memorandum provides that if the Brunner and Matrix parts are not transitioned, Husqvarna must "transition additional mutually agreed upon parts . . . equal to the calender year 2002 purchase value" of the Brunner and Matrix parts not transitioned. (Doc. No. 578-2, Second Am. Compl. Ex. 2, ¶ 3.) Because of this "substitute parts" provision, Husqvarna has provided the 2002 purchase, usage and pricing data as well.

between the Brunner and Matrix parts and other parts. The Joint Discovery Plan bears this out. The Parts in Suit agreed to by all parties are separated into categories that include Brunner and Matrix parts apart from "Other Included Parts," "Non-Transition Parts in Suit," and the Padilla parts. (Doc. No. 723, Fifth Revised JDP, I.B.) With respect to the Brunner and Matrix parts, the JDP contemplates that Husqvarna would initially provide "purchase history receipt data for all parts purchased for any purpose from [Brunner and Matrix] during the period 01/01/04 to 11/01/08." (Id., II.7.) While Whitesell reserved the right to seek information for additional time periods, it must establish a reasonable basis for doing so. It has not.

For the period of time prior to Husqvarna's obligation to obtain its supply of Brunner and Matrix parts from Whitesell, i.e. 2000-2001, 2003, Whitesell only points to the fact that the parties' relationship began with the Supply Agreement in 2000. That fact, however, has no bearing on the Brunner and Matrix parts because they did not become an obligation between the parties until the execution of a negotiated Settlement Memorandum in May 2003. The number of parts and at what cost Husqvarna obtained these parts *prior to its obligation to get the parts from Whitesell* is simply not relevant.

With respect to the period of time from 2009 to present, Whitesell suggested at the January 21st hearing that the

4

contract term for Brunner and Matrix parts is still ongoing even as of today. (See Hrg. Tr. of Jan. 21, 2016, wherein Whitesell's counsel states "If [the Brunner and Matrix parts] didn't transition, . . . then there is no end date, essentially, until the sunset of, you know, which is today -- which is now.") Even though the Brunner and Matrix parts were never fully transitioned as contemplated by the Settlement Agreement, it does not necessarily follow that Husqvarna remains obligated to purchase those parts from Whitesell *ad infinitum* such that Whitesell may seek damages *ad infinitum*. A party may not obtain damages for a breach of contract claim that would put that party in a better position than it would have been in if the contract had been performed. E.g., Gainesville Glass Co. v. Don Hammond, Inc., 278 S.E.2d 182, 185-86 (Ga. Ct. App. 1981). Here, Whitesell was to supply Brunner and Matrix parts for a 58-month period; if Husqvarna breached this obligation through no fault of Whitesell's, Whitesell cannot be awarded damages for what would now amount to a 58-month period plus over seven years. Accordingly, the Court finds unavailing Whitesell's contention that Brunner and Matrix part information from 2009 to present is relevant on this basis.

In conclusion, Whitesell has failed to show that information concerning Brunner and Matrix parts for periods of time outside of the contract term are relevant to its claims

5

in this case.  Accordingly, the Court sustains Husqvarna's duration objections to Whitesell's Interrogatories 10, 12, and 17.

**ORDER ENTERED** at Augusta, Georgia, this ___9th___ day of March, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA