IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| WHITESELL CORPORATION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 103-050 |
| | * | |
| ELECTROLUX HOME PRODUCTS, | * | |
| INC., HUSQVARNA, A.B., and | * | |
| HUSQVARNA OUTDOOR PRODUCTS, | * | |
| INC., | * | |
| | * | |
| Defendants. | * | |

O R D E R

On December 9, 2015, this Court ordered Defendant Electrolux Home Products, Inc. ("EHP") to produce, over its attorney-client privilege and work-product objections, documents responsive to Plaintiff Whitesell Corporation's ("Whitesell") Eighth Request for Production of Documents. The Court had determined that EHP's privilege objections were overborne by Whitesell's preliminary showing of spoliation. Presently, Whitesell has filed a motion to overrule the privilege objections asserted by Defendant Husqvarna Outdoor Products, Inc.'s ("Husqvarna") to certain documents listed on Husqvarna's privilege log. Husqvarna opposes the motion, contending that Whitesell cannot establish a preliminary showing of spoliation against it and that it has, in any

event, produced privileged documents responsive to Whitesell's area of concern. Husqvarna argues that compelling it to produce the requested documents would amount to an unjustified sanction under Federal Rule of Civil Procedure 37(e).

## I. BACKGROUND

In order to address this motion, particularly in light of Husqvarna's response, it is necessary to provide the following context. At the heart of this controversy are missing e-mails from the custodial mailbox of Mr. Roger Leon, a former chief executive officer of Defendant EHP. Mr. Leon moved to Husqvarna at the time that Husqvarna spun off from EHP in 2006. The Leon e-mails were actually a subject area discussed between the parties in June 2008, when defense counsel represented the following in a letter to Whitesell:

> With respect to your previously expressed concerns about aspects of the Defendants' production regarding e-mails authored by Roger Leon, Husqvarna, as previously agreed, has completed its additional searches for responsive e-mails authored by Roger Leon. We are going to produce these e-mails to the Plaintiff in electronic format similar to our prior production . . . . During Husqvarna's additional searches, it was discovered that the hard drive on Mr. Leon's computer had previously crashed and that prior to replacement, Husqvarna had imaged this hard drive. The prior production searches did not discover the imaged hard drive but the follow-up searches did, and the documents are now going to be produced . . . no later than Friday, June 13, 2008.

2

(Doc. No. 767-4, Ex. D, at 4 (Letter from Perry Sentell to David Balser dated June 4, 2008).) This Court stayed discovery on June 12, 2008, so that the e-mails were not produced in 2008. At a hearing on March 12, 2015, defense counsel stated that responsive documents "right now are at the outside vendor" and would be produced a couple of weeks later. (Doc. No. 640, Hrg. Tr. of March 12, 2015, at 63, 78.) The documents were not produced, however, "as a result of oversight" by Husqvarna's outside vendor. (Doc. No. 767-2, Simon Dep. at 108.)

At a monthly discovery hearing in September 2015, Whitesell complained that it still did not have e-mails from Mr. Leon for a period of time between January 2002 and July 2004 despite the prior indications that the e-mails existed and would be produced. Consequently, at the hearing, the Court granted Whitesell's motion to take additional Rule 30(b)(6) depositions to explore the "gaps in e-mail production," specifically in response to Whitesell's request to seek information about the 2006 imaging of Mr. Leon's hard drive and about the document retention policy of Mr. Leon. (Doc. No. 722, Hrg. Tr. of Sept. 17, 2015, at 42-43, 57.)

Following the hearing, both sides served extensive Rule 30(b)(6) notices upon the other.[1] Whitesell deposed Mr.

---

[1] The Court has already made very clear that additional Rule 30(b)(6) depositions were granted to each party. (See

3

Daniel Jerome, EHP's Senior Director of Infrastructure, on October 13, 2015. Through this deposition (more specifically, through EHP's objections to certain Areas of Inquiry in the Rule 30(b)(6) Notice of Deposition), and as made clear to the Court at the November discovery hearing, it was determined that at the time Husqvarna spun off from EHP, the custodial mailboxes of all transferred employees were transferred over to Husqvarna such that EHP could not produce the missing Leon e-mails or any other transferred Husqvarna employee's e-mails. It was readily apparent that further inquiry into the transfer and custody and control of Husqvarna employees' files was necessary.[2] Accordingly, at the hearing of November 10, 2015, the Court deferred addressing the issue of the missing Leon e-mails until Whitesell took the deposition of Husqvarna's Rule 30(b)(6) representative.

As an offshoot to the deposition of Mr. Jerome, Whitesell served upon EHP its Eighth Request for Production of Documents, which sought very specific documents referenced in the deposition:

- The "purge hold list" (identified at pages 16-21 of the deposition

___

generally Doc. No. 764, Tel. Conf. Tr. of Dec. 14, 2015.)

[2] For instance, the Court learned that IBM facilitated and assisted in the transfer of files from EHP to Husqvarna but questions remained about IBM's role and process. Additionally, it remained unclear the extent to which files were transferred to Husqvarna at the time of the spin off.

4

- Internal e-mails sent "back and forth about whose data to collect" (identified at pages 22-23 of the deposition)

- Internal e-mails regarding the collection of data, "saying that we have been asked to collect data, and what data it is, and when we are going to do it, and that we collected it and returned it" (identified at pages 22-23 of the deposition)

- Mr. Jerome's e-mails that reference the Whitesell case (identified at pages 34-35 of the deposition)

- The 2006 Hold Letter (identified at pages 16-17 of the deposition)

EHP objected to producing these documents on the grounds of privilege. In overruling its objections, the Court concluded that Whitesell had made a preliminary showing of spoliation respecting the Leon e-mails sufficient to overcome EHP's assertions of privilege. (See Order of Dec. 9, 2015.) Thus, EHP was ordered to produce the requested documents. The Court makes clear here that when the December 9th Order was entered, there still existed questions respecting issues of spoliation vis-à-vis the Leon e-mails. Thus, purge lists, litigation hold letters, and internal communications about data collection seemed relevant to Whitesell's area of concern.

Whitesell was scheduled to take the Rule 30(b)(6) deposition of Husqvarna's representative, Mr. Simon Howard,[3] the day after the December 9th Order was entered. Taking note of the December 9th Order, Husqvarna produced similar documents

---

[3] Mr. Howard is Husqvarna's Senior Director of Business Engagements for Global Information Service (IT).

to Whitesell prior to the Howard deposition. More specifically, Husqvarna produced preservation communications to document custodians, a list of custodians who were searched, the search terms used to conduct the search, and project documents and materials relating to such searches. At deposition, Mr. Howard explained the process of preserving, collecting and producing documents in this litigation in 2006 and 2008. He explained the production of documents in 2015 including the error in production of the Leon e-mails and an archive server crash in 2012. Mr. Howard was exhaustively cross-examined about the potential reasons for any missing Leon e-mails and about Mr. Leon's preservation practices (as well as Husqvarna's retention policies). Mr. Howard thoroughly discussed his investigation into Whitesell's 45 Areas of Inquiry identified in the Rule 30(b)(6) Notice and divulged the content of his meetings and interviews with various Husqvarna employees and counsel conducted as part of his investigation. The documents supplied by Husqvarna in response to the Rule 30(b)(6) Notice are extensive and contain matters otherwise arguably protected by the work product and attorney-client privileges. (See Howard Dep., Ex. H2.) Additionally, Husqvarna provided written "responses" to each Area of Inquiry in the Rule 30(b)(6) Notice as though the Notice contained interrogatories. (See Howard Dep., Ex. H3.)

## II. LEGAL ANALYSIS

The Court provided the analytical framework for this discovery issue in the Order of December 9, 2015. That is, otherwise privileged documents may be discoverable upon a preliminary showing of spoliation.[4] As the Court previously stated, "a potential spoliator cannot stand behind a privilege to protect documents *relevant to the issue of spoliation*." (Order of Dec. 9, 2015, at 8 (emphasis added).)

Here, Whitesell relies upon the same facts underlying the Court's ruling on December 9th, that is, the missing Leon e-mails,[5] to support its request for certain privileged documents on Husqvarna's privilege log. It is now undisputed that the e-mails of EHP's employees that became Husqvarna employees during the spin off were transferred to Husqvarna and not retained by EHP. It is also undisputed that the first significant document production in this litigation post-dates the spin-off. Thus, the ability to produce responsive

---

[4] Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." E.g., Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009) (quoted source omitted).

[5] To be sure, Whitesell has also complained about the lack of production of e-mails generated prior to the 2006 spin-off from other Husqvarna employees' custodial mailboxes. Yet, its focal point is and always has been the Leon e-mails. And, the Court has previously noted: "The number of emails produced to and from individuals on either side will never match up." (Order of Dec. 9, 2015, at 5.)

7

documents of Husqvarna employees for the time prior to 2006 rests with Husqvarna. Husqvarna does not dispute that there are missing e-mails from certain Husqvarna custodians. Thus, there has been a preliminary showing of spoliation on the part of Husqvarna.[6]

This preliminary showing of spoliation, however, does not throw open the door to Whitesell of all documents pertaining to data collection and production. Rather, the Court finds that Husqvarna has produced, through its Rule 30(b)(6) representative, all documents and information pertaining to the missing Leon e-mails that are reasonably ascertainable. Its production is not only akin to what was ordered for production in the December 9th Order, but it extends beyond the scope of that Order. The explanations offered by Husqvarna

---

[6] Husqvarna contends that it did not have a duty to preserve documents prior to the filing of Whitesell's original complaint in this case in October of 2005. Husqvarna explains that all issues between the parties prior to that time were resolved through the Settlement Memorandum of 2003 or in the Consent Order of 2005. Husqvarna further explains that e-mails and documents from the time period prior to October 2005 would have no relevance to the claims at issue presently in the case. Husqvarna's contentions in this regard do not diminish this Court's prior finding that the parties were at odds with each other at times prior to October 2005. Thus, litigation was reasonably foreseeable, even if the exact nature of the litigation was not then known or clear. Indeed, Mr. Howard testified that Husqvarna's David Agee was told to preserve all Whitesell documentation in December 2004. (Howard Dep. at 69.) Perhaps Husqvarna's objections to relevance may be material to a determination of prejudice at another time, but the Court need not dissect here the particular claims of the parties at respective times in the history of their relationship.

may not be satisfactory to Whitesell, but the Court is convinced that Whitesell has received all that it is entitled to receive _relevant to the alleged spoliation_ of the Leon e-mails. The Court will not compel the production of substantive, privileged memoranda regarding data collection and production that no doubt extend far beyond the missing Leon e-mails in a case involving more extensive and substantive discovery issues. In short, Whitesell's present request-to compel production of every privileged document described as concerning data collection-is overly broad, unduly burdensome and has not been shown to relate to the issue at the forefront of this entire exercise-the missing Leon e-mails.

### III. CONCLUSION

Upon the foregoing, Whitesell's motion to overrule the privilege objections asserted by Husqvarna on its privilege log (doc. no. 767) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 31st day of March, 2016.

```
                                    _____
                                    HONORABLE J. RANDAL HALL
                                    UNITED STATES DISTRICT JUDGE
                                    SOUTHERN DISTRICT OF GEORGIA
```