IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| WHITESELL CORPORATION, | * | |
| Plaintiff, | * | |
| v. | * | CV 103-050 |
| ELECTROLUX HOME PRODUCTS, INC., HUSQVARNA, A.B., and HUSQVARNA OUTDOOR PRODUCTS, INC., | * | |
| Defendants. | * | |

# O R D E R

During the monthly discovery hearing on December 5, 2016, Plaintiff Whitesell Corporation ("Whitesell") raised objections to Defendants' Third Request for Production of Documents.[1] The Court heard oral argument on the issues presented by the requests and deferred ruling until this written Order.

The objected-to requests may be grouped into two categories. The first category (RFP Nos. 1-4) requests documents including deposition transcripts and declarations of former and current Whitesell employees, expert-related material, and trial exhibits from unrelated cases in which

---

[1] Whitesell's "Objections to Defendants' Third Request for Production of Documents" is appended hereto as Exhibit A.

Whitesell sought damages against third-party customers or suppliers since 2001, including but not limited to the case of Whitesell Corporation v. Whirlpool Corporation ("Whirlpool case") in the Western District of Michigan. The Court will refer to this category as "Damages Testimony." The second category (RFP Nos. 6-8) requests the ISO and QS900[2] or similar certificates and "related documentation" received by any of Whitesell's manufacturing facilities and all third-party sub-suppliers for Parts in Suit for the period 2001-2013. Defendants also request "all written policies, procedures and quality manuals reviewed and/or approved in connection with the ISO and QS900 certificates." The Court will refer to this category as "Quality Certifications."

*Damages Testimony*

Defendants contend that Damages Testimony from other cases is highly relevant to this case. Defendants first point out that the Whirlpool case is very similar. In that case, Whitesell sought damages against Whirlpool, one of Defendants' major competitors, related to Whitesell's supply of similar fasteners to Whirlpool during a similar damages period. In fact, Whitesell made similar allegations concerning

---

[2] The reference to "QS900" in the Requests for Production may be a typographical error since the Supply Agreement and the parties at oral argument referred to "QS9000."

2

Whirlpool's intent to breach their supply agreement. Defendants have obtained trial transcripts in the Whirlpool case which contain statements related to Whitesell's production capabilities and profit margins on its fasteners as well as in the fastener industry in general. Defendants argue that the requested additional documents are necessary to test the assertions in this case respecting production capability and product costs.[3]

In response, Whitesell asserts that Defendants' requests are "clearly irrelevant" and have "no bearing" on the issues in this case. The Court, however, does not reach this same conclusion. In fact, Defendants *may* be able to show that Damages Testimony in the Whirlpool case directly bears upon the issues in this case. For instance, the Court is swayed by Defendants' contention that if Whitesell, through its experts or otherwise, apportions its overhead and expense costs across all of its clients, then testimony about apportionment of those same or shared costs to Whirlpool is relevant to any

---

[3] Because Defendants focused on drawing similarities to the Whirlpool case at oral argument, the Court questioned Defendants about the actual breadth of their requests. Defendants replied that their requests for production encompass any case in which Whitesell's representatives testified with respect to a damages claim made by Whitesell against other customers or suppliers. Defendants stated, however, that if they had to narrow their requests to the Whirlpool case, they would do so. Later in the proceeding, Defendants returned their focus *exclusively* to the Whirlpool case.

3

apportionment in this case during the same time period. Nevertheless, Defendants can only speculate, no matter how reasoned and despite the representations of counsel at other hearings, as to what Whitesell's experts will do in this case. As yet, there are no expert reports; thus, it remains to be seen how the experts will calculate the profit margins in this case, among other things, and upon what evidence they will rely.

In short, Defendants' request for Damages Testimony is premature. Upon further development of the record through fact depositions and expert witness discovery, Defendants may be able to establish the relevance of the Whirlpool case materials to the issues of product capability and profit margins. Until that time, and without prejudice to Defendants to re-urge the matter, Whitesell's objections to the request for Damages Testimony are sustained. This ruling does not preclude Defendants from inquiring of fact witnesses at deposition about their testimony or involvement in the Whirlpool case.

*Quality Certifications*

Defendants argue that the Quality Certifications are relevant to their defense that their failure to transition certain parts (particularly the Brunner parts) was largely due

to Whitesell's inability to produce qualified parts, i.e., parts that met the qualification standards. In response, Whitesell agreed to produce its Quality Certifications for its manufacturing facilities from 2001 to 2013, but not the "related documentation" or the policies, procedures and quality manuals reviewed and/or approved in connection with Quality Certifications, on the basis that the requests are overbroad and irrelevant to any claim or defense in the case.[4]

In the Supply Agreement between the parties, Whitesell makes certain quality commitments. As those commitments relate to the Quality Certifications, Whitesell commits

> [t]o maintain inspection documents and certificates of conformance, upon request to allow for review, for any article/shipment, shipped, as requested by each Electrolux location. <u>Since Whitesell is ISO9002 and QS9000 certified, if it maintains its certifications in good standing it shall therefore be deemed to have met an even higher manufacturing standard and shall constitute full compliance without further need or audit by Electrolux</u>.

(Supply Agreement, ¶ 12.3 (emphasis added).) By its terms then, Whitesell's commitment to Defendants with respect to the Quality Certifications is met if Whitesell maintained its

---

[4] Whitesell also points out that the written policies, procedures and quality manuals prior to 2006 are unorganized and are not in digital format; therefore, it would be unduly burdensome to produce these documents. The Court will not find that having to examine hard copies of documents is *per se* unduly burdensome. Indeed, that is how discovery occurred for decades before the digital age, and it remains a party's responsibility to produce relevant and responsive documents in this manner unless there is a sufficient showing of burden.

5

Quality Certifications in good standing. Stated another way, the only relevant issue created by the Supply Agreement is whether Whitesell maintained its Quality Certifications.

Defendants contend that the supporting documentation and information underlying the Quality Certifications will inform the inquiry into whether Whitesell was capable of producing qualified parts. However, the Quality Certifications are not issued on a part-by-part basis; they do not pertain to any one part or even category of parts. Thus, they do not signify that a manufacturing facility is or is not capable of producing a qualified part. Rather, the Quality Certifications are issued to a *facility* upon review of that facility's overarching quality management system. The Quality Certifications ensure efficient, consistent, and effective quality management and control; they do not ensure that a facility can or will meet a particular part's design and qualification standards. The Court agrees with Whitesell that the question of whether it was capable of producing qualified parts instead involves the Production Part Approval Process or PPAP, which ensures that a component part supplier can design and produce an individual part according to the quality requirements for the part. In short, Defendants have failed to establish that the process by which Whitesell obtained the

Quality Certifications is relevant to their claims involving the quality of individual parts.

Upon the foregoing, Whitesell's objections to RFP Nos. 6-8 are sustained except that Whitesell shall produce (in response to Request for Production Nos. 6 and 7) all ISO and/or QS9000 or similar certifications for each of its manufacturing facilities, both domestic and international, that supplied Parts in Suit to Defendants for the period of 2001 to 2013.

*Conclusion*

Upon the foregoing, Whitesell's objections to Defendants' Third Requests for Production are hereby **SUSTAINED IN PART** as more particularly delineated in this Order.

**ORDER ENTERED** at Augusta, Georgia, this 10th day of January, 2017.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

WHITESELL CORPORATION, )
)
Plaintiff, )
)
v. ) CASE NO. 1:03-cv-00050-JRH
)
ELECTROLUX HOME PRODUCTS, INC.,)
HUSQVARNA A.B. and HUSQVARNA )
OUTDOOR PRODUCTS, INC., )
)
Defendants. )
_____)

## WHITESELL CORPORATION'S OBJECTIONS TO DEFENDANTS' THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, WHITESELL CORPORATION ("Whitesell"), through its counsel, and pursuant to Fed. R. Civ. P. 26 and 34, hereby serves its Objections to the Defendants' Third[1] Request for Production of Documents served by Defendants, ELECTROLUX HOME PRODUCTS, INC. ("EHP") and HUSQVARNA HOME PRODUCTS, INC. ("HOPI") (collectively, "**Defendants**").

### REQUESTS FOR PRODUCTION

1. Please produce any and all deposition transcripts, including videotaped copies of all depositions, and related exhibits of Whitesell current and former employees, including corporate designees testifying pursuant to Rule 30(b)(6), in cases against customers or suppliers in which Whitesell sought damages since 2001, including but not limited to, *Whitesell Corporation v. Whirlpool Corporation*, No. 1:05-cv-00679 (W.D. Mich. 2005).

---

[1] The Third Request for Production of Documents is actually the Defendants' fifth Request for Production.

Exhibit A

RESPONSE:

Whitesell objects to this Request as overbroad, harassing, irrelevant to any party's claim or defense, and not proportional to the needs of this case. This Request fails to identify any specific subject area of interest to the Defendants or in any way related to this case, and amounts to a classic fishing expedition that seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the Request places a burden on Whitesell that is disproportionate to any benefit the discovery might provide to Defendants.

Whitesell believes that Defendants may be seeking information about Whitesell's use of the TOOL$ and IFS systems referenced in Whitesell's 30(b)(6) deposition taken on January 14, 2016 and its inability to provide per-part cost data for the Parts in Suit. All available information has previously been provided in Whitesell's prior discovery responses and, in the case of per-part cost data, Whitesell has repeatedly explained to Defendants and to the Court via on the record statements through counsel that such per part cost data does not exist. Accordingly, the request is unreasonably cumulative or duplicative to Whitesell's prior discovery and other responses on those issues.

Notwithstanding Whitesell's prior objections, if Defendants narrow the Request to seek information concerning the use or functioning of the TOOL$ and IFS systems in connection with the Parts in Suit, Whitesell will agree to search for and produce any responsive documents not previously produced.

2. Please produce any and all declarations submitted by Whitesell current and former employees in cases against customers or suppliers in which Whitesell sought damages since 2001, including but not limited to, *Whitesell Corporation v. Whirlpool Corporation*, No. 1:05-cv-00679 (W.D.Mich. 2005).

RESPONSE:

Whitesell objects to this Request as overbroad, harassing, irrelevant to any party's claim or defense, and not proportional to the needs of this case. This Request fails to identify any specific subject area of interest to the Defendants or in any way related to this case, and amounts to a classic fishing expedition that seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the Request places a burden on Whitesell that is disproportionate to any benefit the discovery might provide to Defendants.

Whitesell believes that Defendants may be seeking information about Whitesell's use of the TOOL$ and IFS systems referenced in Whitesell's 30(b)(6) deposition taken on January 14, 2016 and its inability to provide a per-part cost data for the Parts in Suit. All available information has previously been provided in Whitesell's prior discovery responses and, in the case of per-part cost data, Whitesell has repeatedly explained to Defendants and to the Court via on the record statements through counsel that such per part cost data does not exist. Accordingly, the request is unreasonably cumulative or duplicative to Whitesell's prior discovery and other responses on those issues.

Notwithstanding Whitesell's prior objections, if Defendants narrow the Request to seek information concerning the use or functioning of the TOOL$ and IFS systems in connection with the Parts in Suit, Whitesell will agree to search for and produce any responsive documents not previously produced.

3. Please produce any and all deposition transcripts, including videotaped copies of all depositions, and related exhibits of experts retained by Whitesell in cases against customers or suppliers in which Whitesell sought damages since 2001, including but not limited to, *Whitesell Corporation v. Whirlpool Corporation*, No. 1:05-cv-00679 (W.D.Mich. 2005).

**RESPONSE:**

Whitesell objects to this Request as overbroad, harassing, irrelevant to any party's claim or defense, and not proportional to the needs of this case. This Request fails to identify any specific subject area of interest to the Defendants or in any way related to this case, and amounts to a classic fishing expedition that seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the Request places a burden on Whitesell that is disproportionate to any benefit the discovery might provide to Defendants.

Whitesell believes that Defendants may be seeking information about Whitesell's use of the TOOL$ and IFS systems referenced in Whitesell's 30(b)(6) deposition taken on January 14, 2016 and its inability to provide a per-part cost data for the Parts in Suit. All available information has previously been provided in Whitesell's prior discovery responses and, in the case of per-part cost data, Whitesell has repeatedly explained to Defendants and to the Court via on the record statements through counsel that such per part cost data does not exist. Accordingly, the request is unreasonably cumulative or duplicative to Whitesell's prior discovery and other responses on those issues.

Notwithstanding Whitesell's prior objections, if Defendants narrow the Request to seek information concerning the use or functioning of the TOOL$ and IFS systems in

connection with the Parts in Suit, Whitesell will agree to search for and produce any responsive documents not previously produced.

4. Please produce any and all trial exhibits from *Whitesell Corporation v. Whirlpool Corporation*, No. 1:05-cv-00679 (W.D.Mich. 2005).

RESPONSE:
Whitesell objects to this Request as overbroad, harassing, irrelevant to any party's claim or defense, and not proportional to the needs of this case. This Request fails to identify any specific subject area of interest to the Defendants or in any way related to this case, and amounts to a classic fishing expedition that seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the Request places a burden on Whitesell that is disproportionate to any benefit the discovery might provide to Defendants.

Whitesell believes that Defendants may be seeking information about Whitesell's use of the TOOL$ and IFS systems referenced in Whitesell's 30(b)(6) deposition taken on January 14, 2016 and its inability to provide a per-part cost data for the Parts in Suit. All available information has previously been provided in Whitesell's prior discovery responses and, in the case of per-part cost data, Whitesell's has repeatedly explained to Defendants and to the Court via on the record statements through counsel that such per part cost data does not exist. Accordingly, the request is unreasonably cumulative or duplicative to Whitesell's prior discovery and other responses on those issues.

Notwithstanding Whitesell's prior objections, if Defendants narrow the Request to seek information concerning the use or functioning of the TOOL$ and IFS systems in connection with the Parts in Suit, Whitesell will agree to search for and produce any responsive documents not previously produced.

5. Please produce any and all documents that have been obtained from third parties related to this litigation.

RESPONSE:

Whitesell has received documents from Bamal and Martin. Whitesell understands that such documents were provided to Mr. Sentell by Whitesell's prior counsel. There are no other documents responsive to this request.

6. Please produce a copy of all International Organization for Standardization ("ISO") certificates and related documentation received by any of Whitesell's manufacturing plants and/or facilities, both domestic and international, as well as all third party sub-suppliers used by Whitesell to supply Parts in Suit to Defendants for the period 2001-2013, including but not limited to 9002 and 9001 certifications. This request includes documents indicating the name of the registrar(s) issuing the certificate(s), the identity of the plant and/or facility to which the certificate(s) relates, the effective dates of each such certification, all recertification audits that the plant and/or facility underwent and the result of such recertification audits(s).

**RESPONSE:**

The request for "all . . . certificates <u>and related documentation</u> received by <u>any of Whitesell's manufacturing plants and/or facilities</u>, both domestic and international, as well as all third party sub-suppliers used by Whitesell to supply Parts in Suit to Defendants for the period 2001-2013" is overbroad, harassing, irrelevant to any party's claim or defense, and not proportional to the needs of this case. Accordingly, the Request places a burden on Whitesell that is disproportionate to any benefit the discovery might provide to Defendants.

Notwithstanding Whitesell's objections, if Defendants narrow the Request to seek only certificates regarding the Parts in Suit, Whitesell will agree to search for and produce any responsive documents as they are maintained in the ordinary course of business, as provided for in the parties' Stipulated Protocol for the Production of Documents.

7. Please produce a copy of all QS900 or similar certifications and related documentation received by the Whitesell Corporation, as well as all third party sub-suppliers used by Whitesell to supply Parts in Suit to Defendants for the period 2001-2013. This request includes documents indicating the name of the registrar(s) issuing the certificate(s), the identity of the plant and/or facility to which the certificate(s) relates, the effective dates of each such certification, all recertification audits that the Company underwent and the result of such recertification audits(s).

## RESPONSE:

The request for "all . . . certificates <u>and related documentation</u> received by <u>any of Whitesell's manufacturing plants and/or facilities</u>, both domestic and international, as well as all third party sub-suppliers used by Whitesell to supply Parts in Suit to Defendants for the period 2001-2013" is overbroad, harassing, irrelevant to any party's claim or defense, and not proportional to the needs of this case. Accordingly, the Request places a burden on Whitesell that is disproportionate to any benefit the discovery might provide to Defendants.

Notwithstanding Whitesell's objections, if Defendants narrow the Request to seek only certificates regarding Parts in Suit, Whitesell will agree to search for and produce any responsive documents as they are maintained in the ordinary course of business, as provided for in the parties' Stipulated Protocol for the Production of Documents.

8. Please produce copies of all written policies, procedures and quality manuals reviewed and/or approved in connection with the ISO and QS900 certificates described in the two preceding requests for production.

## RESPONSE:

Whitesell objects to this Request as overbroad, harassing, irrelevant to any party's claim or defense, and not proportional to the needs of this case. Requests 6-8 presumably seek information concerning the quality of Parts in Suit. To the extent any of the documents requested in Requests 6-8 contain such information, it would be contained in the certificates responsive to Requests 6-7, which Whitesell has offered to produce, as noted above. The additional documentation requested in Request 8 would provide no information concerning the quality of Parts in Suit, nor is it in any way related to issues in this case, and amounts to a classic fishing expedition that seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the Request places a burden on Whitesell that is disproportionate to any benefit the discovery might provide to Defendants.

Notwithstanding Whitesell's prior objections, Whitesell will agree to produce responsive documents to the extent they are reasonably available in electronic form, which primarily consists of materials from 2006 and later. Based on Whitesell's review, these documents in electronic form would be approximately 3,400 pages. Earlier, hard copy documents might be contained in boxed files that are currently in storage. These files are not categorized in any manner that would allow Whitesell to easily search for responsive material, and the cost and burden of retrieving those files,

searching for potentially responsive materials among primarily non-responsive and irrelevant materials, and producing such materials is far outweighed by the fact that the materials (to the extent they can even be located) will produce no useful or relevant information beyond what Whitesell has offered to produce in response to Requests 6-7.[2] Accordingly, Whitesell will not produce hard-copy documents responsive to this request.

Dated: June 6, 2016.

Respectfully submitted,

By:/s/ Steve I. Silverman
Alan J. Kluger, Esq. (*admitted pro hac vice*)
Fla. Bar No. 200379
akluger@klugerkaplan.com
Steve I. Silverman (*admitted pro hac vice*)
Fla. Bar No. 516831
ssilverman@klugerkaplan.com
Terri Meyers, Esq. (*admitted pro hac vice*)
Fla. Bar No. 881279
Lisa J. Jerles, Esq. (*admitted pro hac vice*)
Fla. Bar No. 56092
KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.
Miami Center, 27th Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 379 9000
Facsimile: (305) 379 3428
*Attorneys for Whitesell Corporation*

---

[2] If it becomes necessary should defendants file a motion to compel directed to this Request, Whitesell will provide a declaration concerning the burden imposed by this Request as stated above.

CASE NO. 1:03-cv-00050-JRH

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June6, 2016, a true and correct copy of the foregoing has been furnished via electronic mail on the parties identified in the Service List below.

By: <u>/s/Steve I. Silverman</u>
Steve I. Silverman

## SERVICE LIST

Michael P. Kenny
Kyle G.A. Wallace
Elizabeth H. Helmer
Alston & Bird, LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309-3424
404-881-7000
404-881-7777 (fax)
mike.kenny@alston.com
kyle.wallace@alston.com
elizabeth.helmer@alston.com
*Electrolux Home Products, Inc.*

James M. Brogan (Pro Hac Vice
Matthew a. Goldberg (Pro Hac Vice)
Brian J. Bogle (Pro Hac Vice)
DLA Piper LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
215-656-3300
215-656-3301 (fax)
James.brogan@dlapiper.com
Matthew.goldberg@dlapiper.com
Brian.Bogle@dlapiper.com
*Husqvarna AB and Husqvarna Outdoor Products, Inc.*

R. Perry Sentell, III
Laurel P. Landon
Kilpatrick Townsend & Stockton, LLP
1450 Greene St
Enterprise Mill Suite 230
Augusta, GA 30901
706-823-4202
706-828-4453 (fax)
psentell@kilpatricktownsend.com
llandon@kilpatricktownsend.com
*Husqvarna Outdoor Products, Inc.; and Husqvarna, A.B.*

Hal J. Leitman
Todd H. Surden
Macey, Wilensky & Hennings, LLC
303 Peachtree Street, N.E.
Suite 4420
Atlanta, GA 30308
404-584-1200
404-681-4355 (fax)
hleitman@maceywilensky.com
tsurden@maceywilensky.com
*Whitesell Corporation*