IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| WHITESELL CORPORATION, | * | |
| Plaintiff, | * | |
| v. | * | CV 103-050 |
| ELECTROLUX HOME PRODUCTS, INC., HUSQVARNA, A.B., and HUSQVARNA OUTDOOR PRODUCTS, INC., | * | |
| Defendants. | * | |

**O R D E R**

Defendant Husqvarna Outdoor Products, Inc. ("Husqvarna") has filed a "Motion for Partial Summary Judgment Regarding the Identity of the Remaining Course of Performance Parts in Suit and Computation of Their Contract Duration Terms." (Doc. No. 897.) The matter came before the Court for oral argument on April 17, 2018.[1] Based upon the arguments of counsel at the hearing and in brief, and upon a thorough review of the record, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Husqvarna's motion for partial summary judgment as explained below.

---

[1] The Court also heard argument on two motions for partial summary judgment filed by Electrolux Home Products, Inc. (Doc. Nos. 893 & 894.)

## I. BACKGROUND[2]

On December 14, 2000, Husqvarna's predecessor in interest, Electrolux Home Products, Inc. ("EHP") entered into a Strategic Partnership Agreement ("SPA") with Plaintiff Whitesell Corporation ("Whitesell"), whereby EHP agreed to buy all of its current and future requirements for certain goods from Whitesell during the pendency of the SPA, and Whitesell agreed to supply all of Husqvarna's requirements for such goods.[3] (See Doc. No. 568, Ex. 1, Supply Agreement § 2.0.) The initial term of the SPA was January 1, 2001 through April 1, 2008. (Id. § 3.0.) Thus, Husqvarna was obligated to purchase and Whitesell was obligated to sell 100% of Husqvarna's requirements for covered parts from January 1, 2001 to April 1, 2008. Recognizing that Husqvarna had to wind down its existing relationships with other suppliers, the SPA gave Husqvarna approximately 2.5 years to transition the

---

[2] While the parties and the Court are well-versed in the procedural and factual background of the case, Husqvarna's motion, which asks the Court to decide the duration term of the parties' contract with respect to certain Course of Performance parts, compels the Court to start from the beginning.

[3] On June 12, 2006, EHP transferred its outdoor products division to Husqvarna A.B., which in turn transferred the business to Husqvarna Outdoor Products, Inc. ("Husqvarna"). For the sake of convenience, the Court may call the name Husqvarna when reciting facts prior to the spinoff even though the entity involved at the time was EHP.

2

covered parts to Whitesell, providing that "[f]ailure to complete the transition [of parts by June 30, 2003] shall proportionally extend the initial term of [the SPA]." (Id. § 3.1.) The scope of goods subject to the SPA was to be identified on an attached Exhibit B.

The parties did not create an Exhibit B. Nevertheless, the parties began to transition certain parts under the terms of the SPA. However, a dispute arose between them regarding whether the SPA covered certain parts for lawn tractors manufactured by Husqvarna at its Orangeburg, South Carolina facility. This dispute led to the filing of this lawsuit in 2003.

On May 23, 2003, the parties executed a Settlement Memorandum through which they agreed to define the scope of goods subject to the SPA through a "clarified Exhibit B." (See Doc. No. 568, Ex. 2, Settlement Memorandum ¶ 1.) Further, the parties agreed to include "Brunner and/or wireform parts" in their supply relationship, which were to be listed on a newly created Exhibit B-1. (Id. ¶ 3.) The initial term of the parts subject to the Settlement Memorandum was December 31, 2003 to November 1, 2008,[4] or 58 months.

---

[4] While the Settlement Memorandum identifies the start of the initial term as December 31, 2003, the parties and the Court more often than not refer to the initial contract duration term as January 1, 2004 to November 1, 2008. The Court will maintain this convention.

3

(Id.) Thus, the termination date for all parts listed on the clarified Exhibit B and newly created Exhibit B-1 was to be November 1, 2008. Similar to the SPA, the parties contemplated that transition of the parts would not be immediate but instead set the transition date as December 31, 2003. Important to the instant motion, the Settlement Memorandum provided that, for the parts that were not transitioned by December 31, 2003, the initial term for those parts would be "proportionally extended by the time it takes to fully transition" those parts. (Id.) This will be referred to herein as the "proportional extension provision."

Just as the parties never created the initial Exhibit B, they never created the clarified Exhibit B or the Exhibit B-1 referenced in the Settlement Memorandum.

In 2005, the parties entered into a Consent Order "to preserve and govern the rights of the parties prior to this Court's final judgment on the parties' disputes regarding the interpretation, enforcement, validity, and meaning of the parties['] Settlement Memorandum and Supply Agreement." (Doc. No. 30, Order of May 17, 2005, ¶ 7.) The Consent Order extended the transition deadline to December 31, 2005, for "all wireform products used or to be used by EHP's Orangeburg, South Carolina, McRae, Georgia, or any future or alternative locations or production facilities within North America" and

4

for "all parts that were to be transitioned under the Settlement Memorandum." (Id. ¶ 4.) Notably, the Consent Order did not identify the specific parts that were to be transitioned under the Settlement Memorandum. It also did not change the initial term for covered parts that was provided for in the Settlement Memorandum, i.e. January 1, 2004 to November 1, 2008.[5]

On October 14, 2008, this Court concluded that the subject matter of the Supply Agreement between the parties (i.e., the scope of "goods") was too indefinite to be enforced. (Order of Oct. 14, 2008, Doc. No. 212, at 22.) The Court, however, determined that the Settlement Memorandum gave rise to four enforceable part categories, one of which is the Course of Performance category. Because the initial duration term of the Settlement Memorandum was seemingly about to end, the Court invited the parties to present argument regarding "the date of termination of the parties' contractual obligations." (See Orders of October 14, 2008 and October 31, 2008, Doc. Nos. 212 & 216, respectively.)

Thereafter, Defendants EHP and Husqvarna filed separate motions for partial summary judgment concerning the duration term of the parties' contractual obligations. (Doc. Nos. 225 & 260.) On March 25, 2010, the Court resolved the motions,

---

[5] See n.4, supra.

5

reaching three legal conclusions respecting the contract duration terms of covered parts:

> 1. The Settlement Memorandum's duration term provision (January 1, 2004 to November 1, 2008) is applicable to the four enforceable part categories as determined by the Order of October 14, 2008. Thus, for certain covered parts, the termination date of the parties' contractual obligation was November 1, 2008.

(See Order of March 25, 2010, Doc. No. 306, at 13, adopted in the Order of March 25, 2010, Doc. No. 307, at 7.)

> 2. The termination date for covered, active parts transitioned to Whitesell prior to December 31, 2003, as well as those parts which first came into use by Husqvarna after that date and were then immediately transitioned to Whitesell, is November 1, 2008.

(See Order of March 25, 2010, Doc. No. 307, 8-9.)

> 3. Husqvarna's obligation to purchase parts in use prior to December 31, 2003, but which were not transitioned to Whitesell until after that date, was properly terminable 58 months after the part was fully transitioned to Whitesell. Thus, each of these non-transitioned parts would have its own contract duration term of 58 months beginning on the date of its full transition to Whitesell.

(Id. at 17.)

To apply these legal rulings in determining the contract duration term of a part, the Court must first determine when the part came into existence and when the part was then fully transitioned to Whitesell. (See Order of June 24, 2013, Doc. No. 499, at 3.) If these matters are undisputed, then the Court may determine the contract duration term of a part as a

6

matter of law.

Through the course of discovery, which commenced in earnest in February 2013 with the exchange of usage and purchase history data (see also Order of November 12, 2013, Doc. No. 541, at 16-23 (explaining the importance of such data in determining the fully transitioned dates of parts)), the parties have been able to agree on contract duration terms for a vast majority of Parts in Suit. Duration terms for many more parts have been determined through the arguments and concessions of counsel in the most recent round of motions for partial summary judgment, as evidenced by the Orders that will come out of the April 17th hearing.

Nevertheless, there remains a handful (proportionally speaking) of parts for which the contract duration terms remain in dispute. Through the instant motion for partial summary judgment, Husqvarna contends that this Court may determine the contract duration terms as a matter of law as to the parts in dispute between Husqvarna and Whitesell. Husqvarna's motion also seeks a determination from the Court that the list of parts provided by Whitesell in response to certain interrogatories is the complete universe of Course of Performance Parts in Suit subject to Whitesell's breach of contract claim as against Husqvarna.

## II. LEGAL STANDARD

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the nonmoving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoted source omitted) (emphasis supplied). The party opposing the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue to be tried." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

8

The Clerk has given the nonmoving party, Whitesell, notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 898.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. LEGAL ANALYSIS

During discovery, Husqvarna propounded three interrogatories asking Whitesell to identify all Course of Performance Parts in Suit for which it is claiming damages from Husqvarna's alleged breach of contract and to state whether the parts are subject to the proportional extension provision. Combining its responses, Whitesell produced an Excel Spreadsheet (the "Spreadsheet") on July 11, 2016, containing over 750 listed parts with a proposed duration term for each part.[6] From this list, Husqvarna disputes the contract duration terms offered by Whitesell for 39 parts, which are discussed in Section III.A-D of Husqvarna's opening brief. The remaining parts from Whitesell's Spreadsheet not

---

[6] Of note, the Course of Performance Parts in Suit listed on Whitesell's Spreadsheet, and subject of the instant motion, do not include the Brunner/Matrix parts.

9

specifically addressed in Section III.A-D have been listed on Exhibit 36 to Husqvarna's motion. Exhibit 36 is discussed in Section III.E of Husqvarna's brief.

Of the 39 disputed parts, the parties have now agreed on the contract duration terms for 11 parts. Thus, summary judgment is granted with respect to the following parts in that the parties have agreed on the following contract duration terms:

| Part No. | Contract Duration Term |
|---|---|
| 178345 | Jan. 1, 2004 - Nov. 1, 2008 |
| 178819 | Jul. 1, 2006 - Apr. 31, 2011 |
| 179065 | Jul. 1, 2006 - Apr. 31, 2011 |
| 180218 | Mar. 31, 2007 - Jan. 31, 2012 |
| 187556 | Nov. 1, 2006 - Aug. 31, 2011 |
| 190736 | Feb. 1, 2007 - Nov. 30, 2012 |
| 134300 | Jan. 1, 2004 - Nov. 1, 2008 |
| 139155 | Jan. 1, 2004 - Nov. 1, 2008 |
| 144648 | Jan. 1, 2004 - Nov. 1, 2008 |
| 146848 | Jan. 1, 2004 - Nov. 1, 2008 |
| 148456 | Jan. 1, 2004 - Nov. 1, 2008 |

This leaves 28 parts for which the contract duration terms are in dispute.

A. **The TEX Parts**

The majority of the remaining parts, 24 of the 28 parts,

10

are known in this litigation as TEX parts.[7] As explained herein, TEX parts are parts of a sort not specifically addressed by this Court in any prior order.

The TEX parts did not exist at the time of the transition deadline of January 1, 2004.[8] In fact, many of the TEX parts did not come into existence for anywhere between 12 and 24 months after January 1, 2004. When Husqvarna first needed a TEX part, it did not purchase the part from Whitesell; in other words, TEX parts were not immediately transitioned to Whitesell upon first use. Rather, Husqvarna purchased the parts from a third-party supplier.

Whitesell contends that the proportional extension provision in the Settlement Memorandum applies to TEX parts in that the contract duration term for these parts runs 58 months from the date of full transition to Whitesell. Whitesell's contention would extend the duration term of the TEX parts not only for periods of purchases from other suppliers, but also for the periods immediately following the January 1, 2004 transition deadline in which Husqvarna had no purchase

---

[7] Husqvarna represents that "TEX" stands for Tractor Excellence and that TEX parts were redesigned for use in a new tractor model that was coming out in the 2006 production season.

[8] Whitesell has presented no evidence to rebut this factual assertion. That is, Whitesell has produced no usage or purchase history data to show that the TEX parts were active parts prior to January 1, 2004.

requirements for the parts from any supplier. While Husqvarna agrees that the contract duration term begins on the date of full transition, it contends that the duration term should only be extended for the time that it purchased a TEX part from another supplier, i.e., the time it took to fully transition the part to Whitesell, and not for the period of inactivity prior to purchase from any supplier. Thus, Husqvarna would subtract the period of inactivity from the 58-month contract duration term for each part.

By way of example, Part No. 194323 is a TEX part. The initial purchase of Part No. 194323 from any supplier was from third-party supplier Northern Wire on July 26, 2005. Part No. 194323 was not in existence on January 1, 2004; thus, Husqvarna did not have a need for the part from January 1, 2004 until July 26, 2005 (18+ months). The parties agree that the fully transitioned date for this part, the date Husqvarna was purchasing 100% of its needs from Whitesell, is November 1, 2006.[9] Thus, both parties agree that the initial contract term of 58 months should start from November 1, 2006. The dispute arises as to when the contract duration term should

---

[9] Initially, Husqvarna claimed the fully transitioned date was earlier, May 26, 2006. However, because the usage data indicates that Husqvarna had not exhausted its inventory from Northern Wire by that date, Whitesell claimed November 1, 2006. Here, as with all other TEX parts, Husqvarna accepts the fully transitioned date offered by Whitesell.

12

end. Whitesell simply adds 58 months to November 1, 2006 to calculate a termination date of August 31, 2011. Husqvarna, however, subtracts the initial 18-month period of inactivity from that date, resulting in a termination date of February 1, 2010.

Whitesell's position is based upon this Court's application of the proportional extension provision to parts transitioned after January 1, 2004 in the March 25, 2010 Order. A closer look at this Order is warranted. The Court determined that each part would have an initial term of 58 months. From there, the Court determined that the proportional extension provision proportionately extends the contract duration term "by the time it takes to fully transition" a part. (See Order of March 25, 2010, Doc. No. 306, at 21-25 (interpreting and relying upon Settlement Memorandum ¶ 3).) Thus, for "parts that were in use . . . prior to December 1, 2003 but were not transitioned to Whitesell until after that date, [Husqvarna's] obligation to purchase these parts from Whitesell lasts [58 months] from the date each individual part was transitioned to Whitesell." (Id. at 21-22.) In other words, in applying the proportional extension provision to these non-transitioned parts, the time it took for Husqvarna to fully transition these parts to Whitesell would be proportionally extended in that the time

13

would not be counted against the initial contract term of 58 months. In so holding, the Court ensured that each part that was in active use prior to January 1, 2004, but not transitioned until after that date received a duration term of the full 58 months. Concomitantly, the Court did not apply the proportional extension provision to parts that were fully transitioned by January 1, 2004, or to parts that first came into use by Husqvarna after that date and were then immediately transitioned to Whitesell. For those parts, the contract duration term was determined to be January 1, 2004 to November 1, 2008. This is because Husqvarna was not taking time to fully transition these parts. They were either transitioned prior to the transition deadline or immediately transitioned upon first use.

The TEX parts do not squarely fall within the categories of parts discussed in the March 25, 2010 Orders. Because the TEX parts did not exist prior to January 1, 2004, they were neither active parts that transitioned by January 1, 2004, nor active parts that failed to transition by January 1, 2004. The TEX parts were also not parts that came into use after January 1, 2004 and were then immediately transitioned to Whitesell. Nevertheless, the legal interpretation of the proportional extension provision discussed in the March 25, 2010 Orders is pertinent.

The intent of the parties as expressed through the

proportional extension provision is to capture "the time [Husqvarna] takes to fully transition" a part where it fails to do so by the transition deadline. Thus, Whitesell does not lose the time off of the 58-month contract duration term for any delays caused by Husqvarna in not timely transitioning a part. For this reason, Husqvarna readily agrees, as it must, that Whitesell should not lose the time Husqvarna spent purchasing the TEX parts from third-party suppliers instead of Whitesell when the TEX parts first came into use.[10] Consequently, Husqvarna does not seek to subtract the period of third-party purchases from the 58-month duration term for TEX parts. Rather, Husqvarna concedes that the duration term for each TEX part must be proportionately extended by the time it purchased the part from a third-party supplier rather than immediately transitioning the part to Whitesell.[11]

In short, the proportional extension provision, by its express terms, captures only "the time it takes to fully

---

[10] As Husqvarna puts it, the parties intended to proportionately extend the period of time for the transition period - "the period of time Whitesell did not have the opportunity to be the sole supplier of the part after it came into existence." (Husq.'s Br. Addressing Matter Taken Under Advisement, Doc. No. 991, at 2.)

[11] Had Husqvarna immediately transitioned the TEX parts to Whitesell upon their first use, the legal rulings in this case would dictate that the proportional extension provision would not apply and the contract duration term would be January 1, 2004 to November 1, 2008.

15

transition" a part because Husqvarna should have been purchasing 100% of its requirements from Whitesell during that time. The proportional extension provision does not capture the time that Husqvarna was <u>not</u> "transitioning." Whitesell therefore is not entitled to proportionately extend its contract duration term by the period of time Husqvarna had no requirements.

Upon the foregoing, the Court determines that the 24 disputed TEX parts do not receive a proportional extension of for the months of inactivity from January 1, 2004 until the parts' first purchase from any supplier. Accordingly, summary judgment is granted with respect to the 24 TEX parts with the contract duration term as follows:

| Part No. | Contract Duration Term |
|---|---|
| 194319 | Apr. 27, 2006 - Aug. 27, 2009 |
| 194320 | Feb. 1, 2007 - Jun. 1, 2010 |
| 194322 | Dec. 1, 2006 - Mar. 1, 2010 |
| 194323 | Nov. 1, 2006 - Feb. 1, 2010 |
| 194352 | Apr. 26, 2006 - May 26, 2009 |
| 195218 | Apr. 29, 2006 - Sept. 29, 2009 |
| 195804 | Mar. 1, 2007 - May 1, 2010 |
| 196203 | Feb. 1, 2007 - Jun. 1, 2010 |
| 196205 | May 11, 2006 - Sept. 11, 2009 |
| 196826 | Nov. 1, 2006 - Dec. 1, 2009 |
| 197258 | Apr. 27, 2006 - Aug. 27, 2009 |
| 197259 | May 19, 2006 - Sept. 19, 2009 |

| 197267 | Mar. 1, 2007 - Jun. 1, 2010 |
| 197269 | Jul. 1, 2006 - Oct. 1, 2009 |
| 197329 | Jan. 1, 2007 - May 1, 2010 |
| 197451 | Oct. 1, 2006 - Dec. 1, 2009 |
| 197659 | Jul. 1, 2006 - Nov. 1, 2009 |
| 197660 | May 8, 2006 - Sept. 8, 2009 |
| 198468 | Nov. 1, 2006 - Mar. 1, 2010 |
| 199189 | Jun. 1, 2006 - Aug. 1, 2009 |
| 199652 | Oct. 16, 2006 - Mar. 16, 2010 |
| 199769 | Dec. 1, 2006 - Mar. 1, 2010 |
| 199790 | Jan. 1, 2007 - Mar. 1, 2010 |
| 199918 | Nov. 25, 2009 - Oct. 25, 2012 |

### B. Remaining Disputed Parts

Four disputed parts remain. The first two parts, Part Nos. 192502 and 192706, have a similar issue as the TEX parts. These parts were not transitioned to Whitesell until several months after January 1, 2004. However, Husqvarna was not purchasing the part from any supplier during these initial months. Because Husqvarna was not "transitioning" the part and had no requirements, the proportional extension provision does not apply to these two parts. Accordingly, the parts, which were immediately transitioned to Whitesell upon their first use after January 1, 2004, have a contract duration term of January 1, 2004 to November 1, 2008. Summary judgment is granted as to Part Nos. 192502 and 192706.

17

The parties dispute the fully transitioned dates for Part Nos. 110702X and 181847. Whitesell has presented evidence that the parts were purchased from another supplier prior to 2004 and contends that Husqvarna is ignoring critical usage data in its estimation of the fully transitioned date. Because of this dispute of fact, the Court is unable to determine the contract duration terms of these parts. Accordingly, summary judgment is denied as to Part Nos. 110702X and 181847.

C. **Exhibit 36**

Aside from determining contract duration terms, the second component of Husqvarna's motion for partial summary judgment asks this Court to declare that the parts listed on Exhibit 36 (*plus* the parts specifically discussed in the previous section herein) are the total universe of Course of Performance Parts in Suit subject to Whitesell's breach of contract claims against Husqvarna.

As discussed at the April 17th hearing, Whitesell agrees not only that Exhibit 36 and the previously discussed parts are the complete universe of Course of Performance Parts in Suit subject to its breach of contract claims against Husqvarna, but that the contract duration terms listed on Exhibit 36 are accurate for purposes of Whitesell's damages claim. Accordingly, summary judgment is granted to Husqvarna

in these respects without prejudice to Whitesell to modify or supplement the scope of Exhibit 36 should supplemental information become available.[12]

### IV. CONCLUSION

Upon the foregoing, Husqvarna's "Motion for Partial Summary Judgment Regarding the Identity of the Remaining Course of Performance Parts in Suit and Computation of Their Contract Duration Terms" (doc. no. 897) is **GRANTED IN PART** as specifically set forth hereinabove and **DENIED IN PART** (with respect to Part Nos. 110702X and 181847).

**ORDER ENTERED** at Augusta, Georgia, this 25th day of May, 2018.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[12] As discussed at the hearing, there must be an end point to Whitesell's ability to introduce parts back into the litigation or change duration terms, particularly because such changes could alter the damages calculations of the parties' experts. Moreover, the parties have certified that their production of usage and purchase history data is complete. Accordingly, Whitesell has until 30 days after the close of fact discovery to move to change the list of parts and their attendant duration terms on Exhibit 36.