IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
WHITESELL CORPORATION,          *
                                *
        Plaintiff,              *
                                *
   v.                           *    CV 103-050
                                *
ELECTROLUX HOME PRODUCTS,       *
INC., HUSQVARNA, A.B., and      *
HUSQVARNA OUTDOOR PRODUCTS,     *
INC.,                           *
                                *
        Defendants.             *
```

# O R D E R

On March 7, 2019, Defendant Husqvarna Outdoor Products, Inc. ("Husqvarna") submitted a Fee Application (doc. no. 1167) in accordance with the Court's Order of February 14, 2019, which granted Defendants' motion for sanctions in this case. The Order followed an evidentiary hearing conducted on February 11, 2019.

The Fee Application includes: "(1) the fees and expenses incurred in drafting and filing the Motion for Sanctions and to Stay the Joint Discovery Plan . . . and the attendant briefs; (2) the fees and expenses incurred in responding to Plaintiff's Motion to Stay Ruling on the Sanctions Motions and Motion to Strike the Sanctions Motions . . . ; and (3) the fees and expenses incurred in preparing for and attending the

February 11, 2019 hearing." (Fee Application, at 1.) The award of fees and expenses related to all these events was specifically sanctioned by the Court in its Order of February 14, 2019. (Doc. No. 1159, at 15.)

An award of fees must be reasonable and fall within the guidelines the Eleventh Circuit has promulgated. See Norman v. Housing Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988). The Eleventh Circuit has adopted the lodestar method for determining reasonable attorney's fees. Id. at 1299-1302. The "lodestar" is determined by multiplying an attorney's reasonable hourly rate by the number of compensable hours reasonably expended. Bivens v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). In determining the reasonable hourly rate and the number of hours reasonably expended, a court should consider the twelve Johnson factors.[1] Bivens, 548 F.3d at 1350 n.2 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

The Court prefaces its dive into the details of

---

[1] The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

2

Husqvarna's fee application with the following observations based upon the <u>Johnson</u> factors, particularly considering the amount involved; the results attained; the experience, reputation and ability of the attorneys; the difficulty of the questions involved; the time and labor required; and the skill required to attain the result.

Here, the result attained is the striking of Plaintiff's purported $50 million lost profits claim. While the difficulty in attaining this result may not be apparent on the strength of the Court's Order of February 14, 2019 alone, the Court is well aware of the history and nature of this discovery dispute – a history that is only borne out by a thorough reading of the lines and between the lines of multiple briefs and motions, discovery requests and responses, and statements of counsel at hearings over a period of time dating back to the summer of 2014. Further, this case on its face does not appear overly complex; it is but a breach of contract case. Yet, dealing in nuts, bolts, and screws is a multi-million dollar prospect as between these parties. The case itself is in its sixteenth year of litigation, the last six of which have been with the undersigned judge. I have presided over most of the discovery in the case, with the First Joint Discovery Plan adopted only a few months prior to my assignment to the case. (The Court has just entered the

3

Eighth Joint Discovery Plan.) During the course of discovery, I found it necessary to conduct almost monthly hearings because of the number of hurdles and roadblocks thrown into the path of litigants on both sides of the "v".[2] The discovery issues were often complicated because of the sheer number of parts at issue, the number of manufacturing and production facilities at issue, the various information technology systems that came and went over time, and the different enterprise resource planning systems used by the parties, not to mention the long passage of time between the parties' dealings and the discovery requests. Despite the Court's involvement and its quest for candor and completeness, the sanctionable conduct occurred.

The difficulty for Defendants in prosecuting the motion for sanctions was exponentially increased by Plaintiff's obstinate adherence to its position that it was not required to produce the requested data. Plaintiff's posturing,

---

[2] On August 14, 2015, I observed: "I believe that a judge should, essentially, get out of the way of lawyers and let them litigate and try their cases without a great deal of interference or participation. . . . It now appears painfully obvious to me that that philosophy just won't work in this case." (Hrg. Tr. of Aug. 14, 2015, Doc. No. 683, at 4-5.) I further noted that at some point I may require the parties to appear with their lawyers if "the pattern and trajectory of this case continues to be as it's now developing . . . [to] tell them of my dismay over the path and tone of the litigation . . . ." Id. at 5-6. While I have not seen fit to call the parties to court for this purpose, sadly the tenor of this case has consistently spiraled downward.

4

particularly in brief, demonstrates a level of gamesmanship unseen by this judge in his almost 37 years at the bar. The disingenuousness displayed by Plaintiff throughout this sanctions process continues even into its "response" to Defendants' fee application in that Plaintiff maintains that it "produced all responsive cost information in its possession, custody, or control to the Defendants in response to the discovery requests" (Pl.'s Resp. and Objs. to Fee Applications, Doc. No. 1174, ¶ 8) in direct contravention to the Court's findings in its Order of February 14, 2019.[3] While the ruling may be "difficult to comprehend" for Plaintiff (see id. at ¶ 9 n.4), the Court struck the lost profits claim only after thoughtful and considered judgment and upon findings supported by record evidence as thoroughly explained in my comments, questions and findings at the hearing and in the resulting order.

In short, the outcome attained is the result of fine lawyering, extensive argument, cogent presentation, and dogged determination and perseverance. It is also the right result, no matter the grave impact upon the sanctioned party. The

---

[3] Plaintiff's recalcitrance is also manifest by its suggestion that this Court has not held an evidentiary hearing on Defendants' motion for sanctions, despite the Court's directive that the parties "present full argument, to include any necessary and appropriate evidentiary support" at the February 11th hearing. (See Order of Jan. 3, 2019, Doc. No. 1127, at 2.)

5

Court is reminded of the Eleventh Circuit's observation in Norman: "If the result was excellent, then the court should compensate for all hours reasonably expended." 836 F.2d at 1302. But while Plaintiff did not file a single objection to Defendants' claimed hourly rates or hours expended, the Court will nevertheless endeavor to conduct a fair and reasonable review of the fee application to produce an equitable award.

### *Hours Reasonably Expended*

In determining the number of hours reasonably expended, the Court must consider whether the work sought to be compensated was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citations omitted). Courts must exclude hours that were "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1989).

Turning now to the submitted fee application, Husqvarna has employed two law firms that were actively involved in litigating its motion for sanctions. The law firm of Kilpatrick Townsend & Stockton LLP ("KTS") employed three attorneys for a total of 320.9 hours, claiming in total amount a fee of $107,259.00. The law firm of DLA Piper LLP ("DLA") employed 3 attorneys and 3 staff members for a total of 560.70 hours, claiming in total amount a fee of $191,620.00.

Husqvarna does not provide a line item detailed account of every hour expended; rather, it groups its claim in four categories (relating to certain events or filings) with a detailed narrative of the type of work involved in that category. For example, Category One relates to hours expended in preparation of the motion for sanctions.[4]

For each category, KTS utilized the services of two partners and one contract attorney. DLA also utilized the services of two partners and one associate for each category.

---

[4] The detailed narrative describing the work involved in this category is as follows:

> Conferences with co-counsel and co-defendants counsel re: issues to be addressed in motion and evidence supporting same; review of extensive written discovery requests and Whitesell's responses and supplemental responses to same and selecting items relevant to Motion for Sanctions; review of extensive transcripts re: motion to compel and discovery hearings held by Court and selecting pertinent portions; review of documents produced in case to identify pricing quotes received by Whitesell from sub-suppliers identified for the supply of Brunner parts and comparing same with belatedly produced product cost data; drafting of portions of Brief in Support of Motion for Sanctions and review and edits to numerous drafts of brief; teleconferences with co-counsel and co-defendant's counsel re: additions and edits to drafts of brief; compiling and organizing numerous exhibits for filing with Court and preparation of motion to seal confidential materials; teleconference and emails with opposing counsel re: briefing schedule for Plaintiff's response and subsequent briefs in connection with Motion for Sanctions.

(Fee Application, at 4.)

7

That means that four experienced and reputable partners and two additional attorneys worked on every aspect of the sanctions proceedings. In the Court's estimation, this is excessive. Accordingly, the Court will only allow the fees of one partner and one associate (or contract attorney) per firm so that the number of attorneys involved is reduced from 6 to 4 - a reduction of attorney hours by 1/3.

The 1/3 reduction to each attorney's claimed hours is the only reduction that the Court will make in the number of hours expended. Counsel's detailed narrative for each category and the number of the hours expended therein appear reasonable and without objection by Plaintiff. Moreover, the Court reflects upon its prefatory observations in assessing the reasonableness of the claimed hours. Thus, the number of hours expended will be compensated as follows:

| KTS Attorneys ||
|---|---|
| Attorney | Hours |
| Sentell | 157 |
| Landon | 42 |
| Huff | 15 |

| DLA Attorneys ||
| Attorney | Hours |
|---|---|
| Brogan | 66.5 |
| Goldberg | 46.5 |
| Boyle | 184 |

The Court will not reduce the number of hours expended by DLA staff members. The Court will, however, will reduce the travel expenses of DLA in connection with a January 23, 2019 meeting with co-counsel in Augusta, Georgia, and the hearing of February 11, 2019, by 1/3. Thus, the Court will award $7,469.20 in travel expenses to DLA.

*Reasonable Hourly Rate*

A reasonable rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299; see also Blum v. Stenson, 465 U.S. 886, 895-96 n.22 (1984). The "going rate" in the community is the most critical factor in setting the fee rate. Martin v. Univ. of S. Ala., 911 F.2d 604, 610 (11th Cir. 1990). The relevant legal community is the district in which the Court sits: the Southern District of Georgia, Augusta Division. See Knight v. Alabama, 824 F. Supp. 1022, 1027 n.1 (N.D. Ala. 1993) (citing Turner v. Secretary of Air Force, 944 F.2d 804,

9

808 (11th Cir. 1991)). Because the Court is itself considered an expert on hourly rates in the community, it may consult its own experience in forming an independent judgment. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). Two years ago, this Court set a reasonable billing rate in the Augusta market as $300 per hour. See Plumbers & Steamfitters Local No. 150 Pension Fund v. Muns Group, Inc., Case No. 1:15-CV-200, Order of March 27, 2017, Doc. No. 37 (S.D. Ga. Dec. 16, 2015). This rate did not differentiate between a partner and an associate but the Court recognizes that years of experience and skill level are important factors in setting a rate.

In this case, Husqvarna's local counsel, the KTS firm of Augusta, Georgia, submits that its partners should be compensated at an hourly rate of $350. It further submits that its contract attorney should be compensated at an hourly rate of $270. The Court observes that these rates are a fair reflection of the Augusta, Georgia legal market for the services rendered in the present case given the considerable experience (an average of 29 years between the two partners, Sentell and Huff) and skill of the fee applicants.

The DLA firm submits that its managing partner with 38 years of experience, James M. Brogan, should be compensated at an hourly rate of $525; its partner of 18 years experience, Matthew A. Goldberg, at a rate of $505 an hour; and its associate of 10 years experience, Brian J. Boyle, at a rate of

$300. These rates must be adjusted to the local rate and be commensurate with the rates set for the KTS attorneys. Accordingly, the DLA attorneys will be compensated as follows: Brogan at $375 per hour; Goldberg at $335 an hour; and Boyle at $300. The paralegal rate is set at $125 an hour; and the trial graphic specialist at a rate of $140 an hour.

*Lodestar*

Upon the foregoing, the Court finds the lodestar calculations as follows:

| Applicant | # of hours | x hourly rate | = total |
|---|---|---|---|
| Brogan | 66.5 | $375 | $24,937.50 |
| Sentell | 157 | $350 | $54,950.00 |
| Huff | 15 | $350 | $5250.00 |
| Goldberg | 46.5 | $335 | $15,577.50 |
| Boyle | 184 | $300 | $55,200.00 |
| Landon | 42 | $270 | $11,340.00 |
| Hoffman | 53 | $140 | $7420.00 |
| Newby | 58 | $125 | $7250.00 |
| Hudson | 4 | $125 | $500.00 |
| **TOTAL** | | | **$182,425.00** |

*Conclusion*

Upon the foregoing, the Court will **GRANT IN PART** the fee application submitted by Husqvarna on March 7, 2019 (doc. no. 1167). More specifically, the Court awards Husqvarna $182,425.00 in attorney's fees and $7,469.20 in expenses. The Clerk is directed to **ENTER JUDGMENT** in the amount of $189,894.20 against Plaintiff Whitesell Corporation and in favor of Defendant Husqvarna Outdoor Products, Inc.

**ORDER ENTERED** at Augusta, Georgia, this 17th day of April, 2019.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA