IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| WHITESELL CORPORATION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 103-050 |
| | * | |
| ELECTROLUX HOME PRODUCTS, INC., | * | |
| HUSQVARNA, A.B., and HUSQVARNA | * | |
| OUTDOOR PRODUCTS, INC., | * | |
| | * | |
| Defendants. | | |

O R D E R

Defendant Electrolux Home Products, Inc. ("EHP") has filed a "Motion for Partial Summary Judgment as to L'Assomption Parts." The motion seeks a determination as a matter of law that Plaintiff Whitesell Corporation does not have standing to seek damages for EHP's failure to purchase Whitesell parts for its L'Assomption, Canada facility. For the following reasons, EHP's motion for partial summary judgment is **GRANTED**.

I. FACTUAL BACKGROUND

The contractual relationship at issue in this case began with a Strategic Partnership Agreement ("SPA") entered into on "the 14th Day of December, 2000, by Electrolux Home Products [Defendant herein], of White Consolidated Industries Inc., a Delaware

corporation, its Affiliates and related organizations . . . and Whitesell Corporation [Plaintiff herein]." (EHP's St. of Undisputed Material Facts, Doc. No. 970-1, ¶ 2.) Unlike EHP, Whitesell Corporation was not defined to include "Affiliates and related corporations," and no other entities affiliated with Whitesell Corporation were parties to the SPA. (Id. ¶ 3.)

Under the SPA, EHP agreed to purchase and Whitesell Corporation agreed to provide all of EHP's "current and future needs of cold headed/threaded fasteners and various related Class C items" from January 1, 2001 through April 1, 2008.[1] (See generally Doc. No. 568, Ex. 1, SPA.) Whitesell Corporation began supplying goods to EHP shortly after the SPA was executed. (EHP's St. of Undisputed Material Facts, ¶ 6.) EHP operates several facilities in North America, one of which was located in L'Assomption, Quebec, Canada. (Id. ¶ 9.) The requirements of EHP at its L'Assomption facility, however, were not supplied by Whitesell Corporation. Rather, Whitesell Canada, which was headquartered in Vaughn, Ontario, Canada, and distributed all types of fasteners and Class C components, supplied parts to this facility.[2] (Id. ¶¶ 11 & 16; see also id. ¶ 19.)

---

[1] This was the initial term of the SPA. The duration term of the contract would later be modified by the parties.

[2] Whitesell Corporation admits in brief that only Whitesell Canada supplied parts to the L'Assomption facility. (Whitesell Br. in Opp'n, Doc. No. 984, at 6, 13.)

2

At all times relevant, Mr. Neil Whitesell, the president and CEO of Whitesell Corporation, was also the sole shareholder of Whitesell Canada.[3] (Id. ¶ 10.) The two corporations were wholly separate entities. Although there were transactions between Whitesell Corporation and Whitesell Canada, those transactions occurred at arm's length. (Id. ¶ 14.) The two entities had different customers with only limited overlap. (Id. ¶ 15.) They had different email servers and different systems for tracking part purchases. (Id. ¶ 12.)

Mr. Whitesell used Whitesell Canada to supply parts to the L'Assomption facility because "it made logical sense for [his] Canadian business to service [EHP's] Canadian facility." (Id. ¶ 17.) At issue here are 92 parts EHP's L'Assomption facility purchased from Whitesell Canada. (See EHP's Mot. for Partial Summ. J., Doc. No. 970, Ex. A.) Sales between Whitesell Canada and the L'Assomption facility did not flow through Whitesell Corporation. The L'Assomption facility received invoices for all of its part purchases directly from Whitesell Canada and made payment for those purchases directly to Whitesell Canada. (EHP's St. of Undisputed Material Facts, ¶ 18.) Whitesell Canada is not a party to this lawsuit. (Id. ¶ 22.)

---

[3] Mr. Whitesell sold Whitesell Canada in 2017. (EHP's St. of Undisputed Material Facts, ¶ 23.)

3

In the lawsuit, Whitesell Corporation has sued EHP for an alleged breach of contract, seeking lost profits for EHP's failure to purchase all of its requirements for covered parts from Whitesell Corporation during the contract duration term. Through its present motion for summary judgment, EHP points out that Whitesell Corporation never supplied any of the 92 subject parts to the L'Assomption facility; thus, Whitesell Corporation could not have suffered lost profit damages related to the L'Assomption parts. Further, EHP contends that Whitesell Corporation does not have standing to seek damages, if any, on behalf of Whitesell Canada.

## II. LEGAL STANDARD

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the nonmoving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). Moreover,

4

> [t]he mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoted source omitted) (emphasis supplied). The party opposing the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue to be tried." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

The Clerk has given the nonmoving party, Whitesell, notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 971.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## III. LEGAL ANALYSIS

The relevant facts necessary to resolve this matter are undisputed. Whitesell Canada was not a party to the SPA and is

5

not a party to this lawsuit. Whitesell Canada is a separate entity from Whitesell Corporation.[4] And, the 92 parts at issue here, the L'Assomption parts, were never purchased by EHP from Whitesell Corporation; rather, the parts were purchased from Whitesell Canada.

Setting aside the issue of whether Whitesell Canada has any claim against EHP since it is not a party to this lawsuit, the undisputed facts demonstrate that Whitesell Corporation cannot seek lost profits on the L'Assomption parts because they did not supply those parts to EHP.[5] Moreover, Whitesell Corporation does not have standing to bring a claim for any lost profits suffered by Whitesell Canada. See Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."); Canton Plaza, Inc. v. Regions Bank, Inc., 732 S.E.2d 449, 454 (Ga. App. 2012) (stating that it is "axiomatic that each corporation is a separate entity" and citing O.C.G.A. § 9-2-20(a) ("As a general

---

[4] Mr. Whitesell testified that Whitesell Canada "operated as a completely standalone entity" and that "[t]he two businesses operated completely autonomous of each other." (EHP's Mot. for Partial Summ. J., Doc. No. 970, Ex. B, Whitesell Dep. at 279, 282.)

[5] On October 14, 2008, this Court limited the parts covered by the SPA to four enforceable categories, one of which has been designated the Course of Performance category. (Neither party contends that the 92 L'Assomption parts fall within any of the other three enforceable part categories.) Parts that EHP never purchased from Whitesell Corporation cannot qualify as Course of Performance parts. (See Order of June 18, 2018, Doc. No. 1017, at 4-5.)

rule, an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested . . . .")); Mitchell Co. v. Campus, 2009 WL 1758835, at *5 (S.D. Ala. June 17, 2009) ("[A] corporation does not have standing to assert claims belonging to a related or closely affiliated corporation simply because their businesses are intertwined."); cf. AEP-PRI Inc. v. Galtronics Corp., 2013 WL 4400833, at *8 (S.D.N.Y. Aug. 13, 2013) ("Under New York law, the fact of corporate affiliation does not give an entity the right to bring a suit in its own name to remedy an injury to an affiliate."); Clarex Ltd. v. Natixis Sec. Am. LLC, 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012) ("It is black-letter law that one corporation cannot assert an affiliate's legal rights.").

In response, Whitesell Corporation asserts the doctrine of equitable estoppel. Whitesell Corporation points out that EHP expected and received the same benefits under the parties' contractual agreements for parts supplied to EHP's L'Assomption facility by Whitesell Canada as it did for parts supplied domestically by Whitesell Corporation (i.e., a 2% rebate as provided for in the parties' Settlement Memorandum of 2003). Whitesell Corporation also notes that EHP's Canadian facility saved money from accepting the parts domestically from Whitesell

Canada.[6] Finally, the evidence indicates that EHP expressly acknowledged that its requirements for the L'Assomption facility fell under the terms of the contractual agreements between EHP and Whitesell Corporation even though the parts were at all times supplied by Whitesell Canada. (See generally Decl. of David Elsberg, Doc. No. 986, Exs. 1-8.) In sum, Whitesell Corporation argues that EHP should be estopped from denying the validity of its contractual agreements with Whitesell Corporation after having availed itself of the rights and obligations of those agreements for nearly a decade.

The Court is not persuaded by Whitesell Corporation's estoppel arguments. The issue is not whether EHP accepted performance from Whitesell Canada such that it should be estopped from disclaiming liability for any breach. Rather, the issue is to whom are damages from any alleged breach owed. Because Whitesell Canada was the supplier of parts to the L'Assomption facility profiting thereby, any claim for lost profits inures to the benefit of Whitesell Canada. Further, performance by Whitesell Canada in place of Whitesell Corporation, whether agreed to or not by the parties, does not confer standing on Whitesell Corporation to seek lost profit damages. More succinctly, Whitesell

---

[6] In fact, the evidence shows that the use of Whitesell Canada was a mutually agreeable decision. (See Elsberg Decl., Exs. 10, 12-14.)

8

Corporation has not presented any evidence that it lost profits from EHP's failure to purchase L'Assomption parts, and thus, its claim for lost profits on the 92 L'Assomption parts cannot be sustained.

Faced with this reality, Whitesell Corporation argues in brief that EHP has misunderstood its damages theory as it relates to the L'Assomption parts. Here, Whitesell Corporation argues that it sustained loss as a result of EHP's alleged breach of contract in the form of "commission payments." (Doc. No. 984, at 16-17.) In particular, Whitesell Corporation contends that from 2001 to 2009, Whitesell Canada made regular commission payments to Whitesell Corporation on its sale of parts to EHP's L'Assomption facility; accordingly, any breach of the supply agreement resulted in a loss of commission to Whitesell Corporation. (Id.; see also Wiese Aff., Doc. No. 987, ¶ 9.)

In support thereof, Whitesell Corporation submits the affidavit of Robert R. Wiese, the former Chief Operating Officer of Whitesell Corporation, who explains that two types of documents evidence the commission payments. First, Mr. Wiese explains that the commission payments were individually tracked on Whitesell Corporation's internal spreadsheets. (Wiese Aff. ¶ 12.) Mr. Wiese attaches 6 different spreadsheets. (Id., Exs. 11-16.) For example, Exhibit 13 is a seventy-page spreadsheet tracking payments for year-end December 31, 2006. On 12 of those pages, a

9

single line item appears labeled "EHP Commission Fee." Second, Mr. Wiese attaches Whitesell Corporation's annual audited financial statements, stating that the "commission payments" are reflected thereon and appear as "Revenue/Sales" or "Other Income." (Id. ¶ 10; Exs. 1-10.)

In response, EHP complains that this evidence is insufficient to show that Whitesell Corporation suffered damages in the form of lost commission payments. The Court agrees. The audited financial statements are too unspecific to be of any evidentiary value. The general term "Other Income" makes no reference to Whitesell Canada, EHP, L'Assomption or commission payments.[7] Moreover, the internal charts noting sporadic "EHP Commission Fees" fare no better. This vague reference does not tie this fee to Whitesell Canada or the L'Assomption parts. Telling of Whitesell Corporation's lack of evidence is the fact that in more than four years of document

---

[7] The language that Mr. Wiese points out in the audited financial statements under the heading "Related Party Transaction" does not provide necessary clarity. The provision states: "Certain transactions have occurred between the Company and other companies related by common ownership. Whitesell Corporation performs management, accounting and certain administrative activities on a fee basis for related parties. The income generated covers related expenses." (See generally Wiese Aff., Exs. 1-10.) However, Whitesell Corporation had several related corporations to which this statement could be referring. (See Whitesell Corporation's Resp. and Obj. to Defs.' Sixth Interrogatory, Ex. A to EHP's Reply Br., Doc. No. 999.) Further, commission payments based upon sales are not the same as income which covers expenses related to the "management, accounting, and certain administrative activities" of related corporate parties.

10

discovery in this case, Whitesell Corporation has not provided any information about an alleged commission relationship between it and Whitesell Canada.

In short, Whitesell Corporation has failed to provide evidence to create a genuine dispute of material fact that it suffered any recoverable damages relating to the 92 L'Assomption parts.

IV. CONCLUSION

Upon the foregoing, EHP's motion for partial summary judgment as to L'Assomption parts (doc. no. 970) is **GRANTED**. Whitesell Corporation may not assert a claim for damages for breach of contract against EHP for the 92 L'Assomption parts listed on Exhibit A to the motion.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of November, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA