IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

WHITESELL CORPORATION,                  *
                                        *
            Plaintiff,                  *
                                        *
      v.                                *      CV 103-050
                                        *
ELECTROLUX HOME PRODUCTS, INC.,         *
HUSQVARNA, A.B., and HUSQVARNA          *
OUTDOOR PRODUCTS, INC.,                 *
                                        *
            Defendants.                 *

_____

O R D E R

_____


     Presently pending before the Court is Defendant Electrolux
Home Products, Inc.'s ("EHP") motion for partial summary judgment
as to "Tooling Invoices."   This motion seeks consideration of
certain claims in Count VI of Whitesell's Second Amended Complaint
("SAC").   The Clerk has given the nonmoving party in this matter,
Plaintiff Whitesell Corporation, notice of the summary judgment
motion and the summary judgment rules, of the right to file
affidavits or other materials in opposition, and of the
consequences of default.   (Doc. No. 1318.)   Therefore, the notice
requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th
Cir. 1985) (per curiam), are satisfied.   Upon consideration of the
parties' briefs, the record, and the relevant law, the Court DENIES
the motion for partial summary judgment as discussed herein.

## I.   BACKGROUND[1]

On December 14, 2000, the parties to this lawsuit executed a purported Supply Agreement entitled "Strategic Partnership Agreement" ("SPA").  (See SPA, Ex. 1 to SAC, Doc. No. 578-1.) Pursuant to the SPA, EHP agreed to buy all of their current and future requirements for certain Goods from Whitesell during the term of the Agreement, and Whitesell agreed to supply all of EHP's requirements for such goods.  The "Goods" were to be listed on Exhibit B entitled "Goods to be Purchased by Electrolux from Whitesell."  (Id. § 2.1.2.)

The Initial Pricing of Goods was provided for in the SPA as follows:

> The price for each Good shall be the Whitesell Unit Price as set forth in Exhibit B; . . . If necessary, within thirty days of signing [the SPA], Electrolux shall provide spreadsheets of the current costs and annual volumes for evaluation for all Goods to be transitioned to Whitesell.  If requested, Whitesell shall have access to such original cost documents and invoices to verify volumes, current costs, vendor managed inventory costs, and other Goods related costs in order to verify the actual total cost currently being paid to establish the Total Electrolux Unit Cost for Exhibit B which shall be used to calculate the discounted or non-discounted Whitesell Unit Cost for each Good(s) as referenced in 5.1.

---

[1] As required, this Court will view the record evidence "in the light most favorable to the [nonmovant]," see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will "draw all justifiable inferences in [the non-movant's] favor," see United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and quoted source omitted).

2

(SPA, § 5.2 (emphasis added).)    The referenced Discount provision states:

> Pricing shall be at ten percent (10%) below the Total Electrolux Unit Cost per Exhibit B for cold headed threaded fasteners that Whitesell has the current internal manufacturing capability to produce.  All other Goods shall not receive a discount and are to be priced at the Total Electrolux Unit Cost entered into Exhibit B.  Such purchase cost **shall include** all product purchase costs, **tooling costs**, vendor managed inventory costs, and any other direct purchase costs as referenced in Initial Pricing as set forth in section 5.2.

(SPA, § 5.1 (emphasis added).)

The referenced Exhibit B was never created, but Whitesell began supplying EHP with goods, or parts, shortly after the SPA was executed.  From 2000 to 2006, Whitesell did not issue invoices for tooling charges.  (Dep. of Don Market, Ex. A to EHP's Mot. on Tooling Invoices, Doc. No. 1316, at 221.)  Moreover, EHP did not expect to pay for separate tooling charges (i.e., charges outside of individual piece pricing) unless there was an agreement to make a capital investment ahead of time.  (Id. at 227.)

However, on December 1, 2006, John Duffner of Whitesell emailed Don Market of EHP and other EHP employees in charge of the different EHP divisions, attaching dozens of tooling invoices dated in November of that year.  (See Exs. D-I to EHP's Mot. on Tooling Invoices.)  According to Mr. Market, EHP had no forewarning of these tooling charges.  (Market Dep. at 221 ("No discussion prior. No e-mails. No nothing.  Just an invoice.").)  According to

3

Whitesell's damages expert, Mr. Peter Karutz, these invoices totaled $433,800.

After receiving the invoices, Mr. Market emailed Mr. Duffner that day and asked: "Was this understood at the site level or any level that we would transition business to Whitesell from an existing supplier at the same cost and have tooling expenses? Was it quoted and a PO issued?" (Ex. J to EHP's Mot. on Tooling Invoices.) Another EHP manager also emailed Mr. Duffner that day and noted: "[T]ooling quotes were never submitted with piece part quotes, PLUS most of these parts, Whitesell is purchasing from my original supplier?" (Id., Ex. K.) Mr. Duffner responded to Mr. Market that the invoices were for parts being re-sourced to different sub-suppliers and noted:

> EHP has historically always paid tooling charges to it[s] suppliers for plastic and other special parts and this has also been the pattern and practice with Whitesell as well. Also, our [SPA] clearly covers that parts are to be transitioned at the EHP "total cost" being paid which includes tooling costs as part of the total cost.

(Id., Ex. J.) Mr. Market responded:

> Yes you are correct. [EHP does] buy tooling for some component parts from other suppliers. These tooling purchases require an upfront quote, capitol (sic) investment request and approval, a purchase order and tooling ownership . . . . I am not aware of Electrolux having any of these discussions on these transition parts. . . . If Electrolux had owned the tooling previously and if it were part of the "Total Cost", it would have simply been transferred from the previous supplier to Whitesell. I can only assume Whitesell had some type of benefit to tool a new supply

4

> chain therefore justifying Whitesell to tool up someone
> new.  I do not see this as an Electrolux expense
> considering our "Total Cost" approach.

(Id., Ex. L.)

EHP did not pay these "tooling invoices."  Whitesell issued only one other invoice for tooling charges in September 2007 for $3,535, which covered an obsolete part.  (Id., Ex. M.)  EHP did not pay this invoice either. In Count VI of the SAC, titled "Breach of Contract (Failure to Pay Invoices)," Whitesell seeks recovery for "valid and undisputed invoices" to include the aforementioned "tooling invoices."  (Doc. No. 578, ¶ 170.)  Mr. Karutz opines that the total value of the tooling invoices claim is $437,335.[2]

EHP moves for summary judgment as to Whitesell's tooling invoices claim.  EHP argues that the plain language of the SPA establishes as a matter of law that Whitesell cannot charge for tooling outside of individual piece pricing.  EHP further argues that Whitesell has not presented any evidence to show that it is entitled to recover on the tooling invoices; that is, EHP contends there is a failure of proof that Whitesell actually purchased, received, and used tooling to manufacture EHP parts as invoiced.

---

[2] Mr. Karutz also includes a calculation for prejudgment interest.

## II.   LEGAL ANALYSIS

The Court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The purpose of the summary judgment rule is to dispose of unsupported claims which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Id. at 323.  Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial.  Id. at 322-23.  When the movant does not bear the burden of proof at trial, as here, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 153, 157, 160 (1970); Celotex Corp., 477 U.S. at 320, 322-25).

Whitesell, the non-movant, has the burden of proof on its breach of contract claim at trial.  "The elements for a breach of

6

contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." <u>Norton v. Budget Rent A Car Sys., Inc.</u>, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010) (quoted source omitted). To prove its breach of contract claim, Whitesell must show that it has the right to complain about the non-payment of the tooling invoices, that is, that the tooling invoices are valid, and that it suffered damages caused by the non-payment.  EHP may carry its initial burden at summary judgment by either negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case.

Through its motion, EHP disputes that the tooling invoices are valid under the SPA.  EHP contends that the contract unambiguously provides that "all product purchase costs, **tooling costs**, vendor managed inventory costs, and any other direct purchase costs" shall be <u>included</u> in the purchase cost (the "Total Electrolux Unit Costs") listed on Exhibit B.  (<u>See</u> SPA, § 5.1) Thus, the contract does not contemplate separate tooling charges outside of the purchase costs set forth in Exhibit B.

Evidence extrinsic to the SPA supports EHP's position that Whitesell could not charge separate tooling charges outside of individual piece pricing.  First, Whitesell did not charge separate tooling costs in the first six years of their business

7

relationship.   Second, EHP has presented evidence of Whitesell correspondence prior to December 1, 2006, showing that Whitesell did not intend to separately charge EHP for tooling costs.   In reference to "Phase II Fastex parts," Mr. Duffner informed EHP that "the parts were formally quoted and all production tooling paid for by Whitesell at a substantial cost to [Whitesell] for the tooling." (Ltr. Of Sept. 2, 2004, Ex. B to EHP's Mot. on Tooling Invoices.)   Attached to this e-mail, Mr. Duffner attached a prior letter, dated August 31, 2003, regarding transition of the Fastex parts, which stated:  "All tooling cost[s] related to the current active parts being transitioned will be paid for by Whitesell." (Id., Ex. C.)   EHP notes that 35 of the 55 parts associated with Whitesell's tooling invoices are Fastex parts.   (EHP's Mot. on Tooling Invoices at 10 n.8.)

Finally, EHP contends that Whitesell has not substantiated its tooling invoices claim with evidence that it "actually purchased, received, and used the tooling at issue to manufacture EHP parts." (Id. at 11.)   Here, EHP puts forth illustrative examples tending to demonstrate that Whitesell's tooling invoices are, in various ways, erroneous or unwarranted.   (Id. at 12.)

Upon this evidence, EHP has met its burden on summary judgment, showing that the separate tooling invoices are invalid. Now, Whitesell must "demonstrate that there is indeed a material

issue of fact that precludes summary judgment." <u>See Clark</u>, 929 F.2d at 608.  Whitesell may not simply rely on the pleadings or repeat conclusory allegations contained in the complaint.  <u>See Morris v. Ross</u>, 663 F.2d 1032, 1033—34 (11th Cir. 1981).  Rather, it must go beyond the pleadings and submit evidence such as affidavits, depositions and admissions sufficient to withstand a directed verdict motion at trial.  <u>See Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993).  Stated another way, to create a genuine dispute of material fact for trial, Whitesell "must come forward with specific evidence of every element essential to [its] case to which (1) [it] has the burden of proof, and (2) the summary judgment movant has made a plausible showing of the absence of evidence of the necessary element." <u>See Discrete Wireless, Inc. v. Coleman Techs., Inc.</u>, 2008 WL 11333527, at *2 (N.D. Ga. Jul. 29, 2008) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

In response, Whitesell argues that EHP is estopped from or has waived its ability to assert that the tooling charges are invalid under the SPA because EHP materially breached the SPA by not providing requested information.  In this regard, Whitesell points to the provision of the SPA which obligates EHP to provide Whitesell "original cost documents and invoices to verify volumes, current costs, vendor managed inventory costs, and other Goods related costs" in order to establish the cost that Whitesell would

charge EHP.  (SPA, § 5.2.)  Whitesell then submits Mr. Duffner's affidavit, which provides that Whitesell requested this information in accordance with the SPA and that EHP's failure to timely provide the information "hampered Whitesell's ability to determine the Total Electrolux Unit Cost." (Aff. of John Duffner, Doc. No. 1361-2, ¶ 32.)  Mr. Duffner further avers that had it had the requested information, Whitesell would have "included tooling in the Total Electrolux Unit Cost from the beginning and charged EHP tooling from the beginning of the parties' relationship." (Id. ¶ 33.)  Additionally, Neil Whitesell, Whitesell's principal, testified that EHP never gave Whitesell "the actual tooling costs that they had paid to the supplier" so that they could be factored into pricing for parts.  (Dep. of Neil Whitesell, July 10, 2018, at 175-76.)

In reply, EHP contends that the Duffner affidavit is too conclusory to create a genuine dispute of material fact.  It appears that EHP demands Whitesell produce extrinsic evidence to show that Whitesell actually requested the information pursuant to Section 5.2 of the SPA in order for the Court to consider Mr. Duffner's statement as evidence.  This is not required, however. As pointed out by Whitesell, if a court discounted an affidavit because it is not supported by extrinsic evidence of the averments, the court would be compelled to grant summary judgment in a

defendant's favor "on every occasion where the plaintiff cannot point to supporting extrinsic evidence." (Pl.'s Reply Br. at 4-5 (quoting Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1160 (11th Cir. 2012).)

The Court concludes that Whitesell has created a genuine dispute of material fact regarding whether it requested information as provided in Section 5.2 of the SPA and whether EHP's failure to timely provide said information affected the pricing of the subject parts. However, a finding that EHP failed to provide any requested information does not necessitate a finding that EHP owes Whitesell on the tooling invoices. EHP has certainly presented some evidence that the tooling charges are erroneous or unwarranted as to certain parts. Moreover, the parties dispute whether tooling charges are even appropriate when Whitesell did not change the supplier. Accordingly, the *validity* of the invoices is left to the proof before a jury. Finally, while EHP argues that Whitesell has not presented evidence that the tooling charges were actually purchased, received, and used to manufacture EHP parts, the Court views Whitesell's invoices for parts actually manufactured for EHP as some evidence that tooling was involved. EHP's argument in this regard seems to be part and parcel of its validity challenges. In any event, the matter of who paid what

11

for tooling and who is responsible for tooling charges must be resolved by a jury.

### III.   CONCLUSION

Upon the foregoing, Defendant EHP's motion for partial summary judgment as to Whitesell's Tooling Invoices claim (doc. no. 1316) is **DENIED**.[3]

**ORDER ENTERED** at Augusta, Georgia, this 13th day of August, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[3] The issue of prejudgment interest as it pertains to Count VI will be addressed in the Court's Order on Defendants' Motion to Strike Whitesell's Claims for Prejudgment Interest (doc. no. 1305).

12