IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| WHITESELL CORPORATION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 103-050 |
| | * | |
| ELECTROLUX HOME PRODUCTS, INC., | * | |
| HUSQVARNA, A.B., and HUSQVARNA | * | |
| OUTDOOR PRODUCTS, INC., | * | |
| | * | |
| Defendants. | | |

O R D E R

Before the Court are two motions related to Defendant Electrolux Home Products, Inc.'s ("EHP") expert witness, Paul Dopp, filed by Plaintiff Whitesell Corporation ("Whitesell"). The first motion is a motion for sanctions, which is based upon Whitesell's contention that EHP willfully failed to produce a document upon which Mr. Dopp relied. The motion for sanctions also relies upon the errors and miscalculations in Mr. Dopp's expert report. The second motion, titled "Daubert Motion, Motion in Limine, and Motion to Strike," seeks to exclude Mr. Dopp as an expert based upon the aforementioned errors and miscalculations and based upon Whitesell's theory of the case that EHP is not entitled to the damages calculated by Mr. Dopp as a matter of law. The Court will address both motions herein.

## I. BACKGROUND

Mr. Dopp is a Certified Public Accountant and Certified in Financial Forensics with over 35 years of experience in the area of forensic and general accounting, including the quantification of complex financial damages, investigation of business disputes, corporate internal investigations, financial fraud investigations, funds tracing, business valuations, and financial analysis consulting. (Dopp Expert Report, Doc. 1268, Ex. A, at 4-5.) Mr. Dopp's qualification as an expert is not in dispute here.

On April 19, 2019, EHP served Mr. Dopp's expert report upon Whitesell in accordance with the relevant deadline. Therein, Mr. Dopp calculated the amount of damages related to EHP's counterclaims for phase-out inventory, expedite fees, and annual rebates. Schedule 2 to his report related to his opinion regarding EHP's phase-out damages; specifically, it contained the calculation of damages based on the differences in prices between what EHP was paying Whitesell for certain parts and what EHP paid third-party suppliers for those same parts during the relevant time period.[1] Schedule 2 is 46 pages listing the itemized parts,

---

[1] Generally speaking, the relevant time period is referred to as the Phase-Out Period, contractually defined as the period of time between EHP's termination notice and the effective date of termination. (See Sec. Am. Compl., Ex. 1, SPA ¶ 23.1.) Mr. Dopp identified three elements of the phase-out damages: (a) increased costs of replacement parts during Phase-out Period following the August 20, 2008 erroneous inventory list provided by Whitesell; (b) expedite fees incurred related to these purchases; and (c) increased costs of replacement parts for parts purchased after the

2

the quantity purchased and the price difference for each part, and the resulting alleged damage to EHP. Footnote 1 to Schedule 2 refers to a document titled "GR Analysis Other Suppliers Parts Data.xlsx Tab 'Other Suppliers Data'" (hereinafter referred to as "Unproduced Document"). EHP describes the Unproduced Document as a draft working paper prepared by Mr. Dopp in the process of preparing his report using certain case materials listed in Appendix 2 to the report. To be sure, Appendix 2 purports to contain a list of all documents that Mr. Dopp considered and relied upon. The Unproduced Document does not appear on Appendix 2.

It is undisputed that EHP did not produce the Unproduced Document initially with the expert report or in response to Whitesell's request for production of documents served on April 25, 2019, which asked that EHP produce "[t]he expert report of Dopp, and all exhibits and appendices to such expert report, in native format" (Request No. 1) and "[a]ny and all Documents reviewed or relied upon by Mr. Dopp" (Request No. 7).[2] In response to Request No. 1, EHP informed Whitesell that though it is under no obligation to produce the requested native versions, it would

---

Phase-Out Period, which Whitesell allegedly refused to supply to EHP. (Dopp Expert Report at 12.)

[2] Whitesell served these requests to produce in conjunction with a motion to take additional discovery related to expert reports. (See Doc. No. 1189, Ex. A.) The Court denied the motion as moot after Whitesell indicated that it was satisfied with the responsiveness of Defendants to its requests. (Order of May 29, 2019, Doc. No. 1212.)

nevertheless produce the native versions of the Schedules attached to Mr. Dopp's report. (See Doc. No. 1193, Ex. A.) In response to Request No. 7, EHP responded that all documents reviewed or relied upon by Mr. Dopp are listed on Appendix 2 and had already been produced. (Id.) Notably, even though the Unproduced Document was identified in the footnote of Schedule 2, Whitesell did not file a motion to compel with the Court.

On July 16, 2019, Whitesell served its Notice of Taking Videotaped Deposition Duces Tecum of Paul Dopp and attached 18 document requests including "all work papers and documents Dopp relied upon in making his analysis or opinion in this matter." (Doc. No. 1270, Ex. A.) On July 30, 2019, EHP objected to the document requests as duplicative, unduly burdensome, and in excess of what is required under the Federal Rules of Civil Procedure. (Id., Ex. B.) Whitesell did not file a motion to compel with the Court.

Whitesell took the deposition of Mr. Dopp on September 12, 2019, which the Court has thoroughly reviewed. (See Doc. No. 1282, Ex. B.) It became apparent from the start that Whitesell had detected significant discrepancies between the cost per unit of particular parts in the underlying source data (i.e., invoices from third-party suppliers) and the cost per unit of those same parts used by Mr. Dopp to compute EHP's damages. For example, the unit cost of Part No. 134227100 charged by the third-party supplier

4

as reflected on Schedule 2 was $2.30296. The damage to EHP for purchasing that part from the third-party supplier was calculated by using the price differential between $2.30296 and the unit cost charged by Whitesell times the 9,000 units at issue. However, the unit cost for Part No. 134227100 as reflected in the relevant underlying invoice was $.0071 per unit, which would obviously yield a reduced damages calculation for the 9,000 units because the price differential would be significantly less. (See generally Dopp Dep. at 149-61.) Similar errors were revealed and discussed for several other parts.

When Mr. Dopp was asked about the discrepancy between the invoice price and the price used for the damages calculation for Part No. 134227100, Mr. Dopp referenced the Unproduced Document, stating that he had to look at "the file that did the calculation." (Id. at 160-61.) At this point, the parties determined that the file had not been produced. After a short recess, counsel for EHP represented that the Unproduced Document was created by Mr. Dopp in preparation of his report and in doing so, he relied on the documents that were listed and produced on Appendix 2. As such, counsel described the Unproduced Document as a "work paper." (Id. at 177-78.) When Mr. Dopp was asked about the file at that time, he confirmed that the Unproduced Document was created by his team. (Id.) Later, Mr. Dopp reaffirmed that he created the document and reviewed it as part of his quality control. (Id. at 201.) He

also stated that it formed the basis of his opinions in the report. (Id.) When asked specifically if he relied upon it, Mr. Dopp stated: "I rely on my work, yes, so. But there's a difference between relying on documents produced that form the basis for my opinions. But my schedules and my calculations, yes, that's my work product and I -- my work product supports my opinions." (Id. at 202.)

Four days after the deposition, EHP's counsel wrote Whitesell's counsel regarding Mr. Dopp's working papers and explained that disclosure is not required by the Federal Rules of Civil Procedure. (Doc. No. 1238, Ex. B.) EHP nevertheless agreed to produce the papers. EHP further explained that because Mr. Dopp planned to produce a revised expert report, about which Whitesell had already indicated it planned to depose Mr. Dopp, Whitesell would have an opportunity to ask Mr. Dopp about the working papers. (Id.) Counsel would go back and forth by letter on the issue of EHP's production obligations and whether Whitesell had been prejudiced. (Id., Exs. C & D.) Ultimately, on September 20, 2019, EHP produced the Unproduced Document to Whitesell. On September 23, 2019, Whitesell filed the instant motion for sanctions based on EHP's failure to produce the Unproduced Document previously.

The Court also reviewed Mr. Dopp's deposition with an eye toward the miscalculations. All told, it appears that Whitesell

6

discovered errors in Mr. Dopp's calculations totaling $700,000, a 61% deviation from the total calculated damage amount on Schedule 2. (Dopp Dep. at 217-18.) It took some time for Mr. Dopp to recognize there was a problem, and he initially resisted Whitesell counsel's characterization of his work as sloppy. (See id. at 197-98.) Even so, Mr. Dopp opined that while there were errors in the data used, his "methodology and [] approach [wa]s reliable." (Id. at 177.) He testified that he would not stand behind his report in court until he fixed the errors. (Id. at 200-01.) Ultimately, however, Mr. Dopp recognized that the errors had a "significant impact on the damages," which he lamented was "embarrassing" and "upsetting." (Id. at 224.)

EHP served Whitesell with Mr. Dopp's amended expert report on October 4, 2019. The Court does not know whether Whitesell re-deposed Mr. Dopp.

## II.  MOTION FOR SANCTIONS

Federal Rule of Civil Procedure 26 governs the disclosure of expert reports, which must contain: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list

of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Rule 26 also requires "[a] party who has made a disclosure under Rule 26(a) . . . [to] supplement or correct its disclosure or response . . . in a timely manner." Fed. R. Civ. P. 26(e). Rule 37(c) is the enforcement mechanism for Rule 26(a), providing that if a party fails to provide the information required by Rule 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Alternative sanctions include the payment of reasonable expenses, including attorney's fees, caused by the failure to disclose and any other sanction listed in Rule 37(b)(2)(A)(i)-(vi).

In this case, Whitesell's sanction motion is premised upon its belief that EHP was required to disclose the Undisclosed Document because Mr. Dopp testified that he reviewed and relied upon it. Whitesell points to Rule 26(a), which requires the disclosure of all facts or data considered by an expert in forming his opinion, as well as its two requests for the production of documents upon which Mr. Dopp relied. EHP holds fast to its contention that the Unproduced Document is a working paper that is not required to be produced under the Federal Rules. EHP further

contends that even if it were required to be disclosed, Whitesell has suffered no prejudice as a result of its late disclosure.

The Court agrees that Rule 26 does not "require a party to disclose all of its expert's notes, calculations, and preliminary analysis." See Etherton v. Owners Ins. Co., 2011 WL 684592, at *2 (D. Colo. Feb. 18, 2011) (cited source omitted); see also Gillespie v. Sears, Roebuck & Co., 386 F.3d 21, 35 (1st Cir. 2004) (stating Rule 26(a) does not require that the expert report contain, or be accompanied by, all of the expert's working notes or recordings); CSX Transp., Inc. v. Kirkland, 2017 WL 2271120, at *4 (S.D. Ga. May 24, 2017) (stating that the Rules do not require that work notes be attached to an expert report). Moreover, it should be remembered that the purpose of the expert witness discovery rules is to provide notice to opposing counsel of the expert witness's testimony to prepare for cross-examination and to prevent surprise. See W. Union Holdings, Inc. v. E. Union, Inc., 316 F. App'x 850, 854 (11th Cir. 2008); see also Companhia Energetica Potiguar v. Caterpillar Inc., 2016 WL 7507848, at *4 (S.D. Fla. Aug. 1, 2016) ("The purpose of Rule 26(a)(2) is to provide notice to opposing counsel – before the deposition – as to what the expert witness will testify" so as to "minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial.")

Here, Mr. Dopp's report identifies the procedure and methodology he used to calculate the damages, and EHP provided the underlying data from which the calculations were drawn, i.e. the documents listed in Appendix 2. In fact, Whitesell was able to conduct an efficacious cross-examination of Mr. Dopp without the Undisclosed Document. Thus, the objectives of the expert discovery rules were not subverted by EHP's failure to provide Mr. Dopp's intermediary working paper, which he created from data that had been produced. Whitesell grounds its motion on the fact that Mr. Dopp testified that he "relied" on this working paper. One would assume, however, that most experts would similarly testify that they relied on their working papers when producing their reports. Requiring disclosure of a document solely based upon testimony that the expert relied on it would swallow up the working paper exception to the disclosure rules. In short, the Court concludes that EHP did not err in not producing the Undisclosed Document as "facts or data" upon which the expert relied because it was a working paper not required to be disclosed. Thus, the non-disclosure was substantially justified.[3] The Court therefore does

---

[3] Notably, Mr. Dopp disclosed the existence of the Undisclosed Document in his expert report, but Whitesell never asked for the document specifically or filed a motion to compel production prior to the deposition. Ultimately, EHP produced the document with the concession that Whitesell could re-depose Mr. Dopp after his revised expert report was provided.

not find that EHP should be sanctioned for the failure to produce the Undisclosed Document.

The Court now turns to Whitesell's second basis for sanctions against EHP related to Mr. Dopp's expert report, namely the significant miscalculations related to phase-out damages.[4] There is no dispute that Mr. Dopp's final calculation of phase-out damages was grossly inaccurate because the third-party supplier cost per unit of various parts did not match the relevant underlying invoice from the third-party supplier. EHP argues that the Eleventh Circuit has held that mistakes in an expert's calculations, when the methodology is otherwise sound, go to the weight of the evidence, not the admissibility, and are not grounds for striking an expert's testimony. See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1345 (11th Cir. 2003), and cases cited therein. Moreover, courts routinely allow experts to submit supplemental and amended expert reports.[5] And, EHP has

---

[4] There is no indication that Mr. Dopp's calculations regarding annual rebates or expedite fees were erroneous.

[5] The Court must mention that two months after filing the instant motion for sanctions, Whitesell filed a "Notice" on the record, which addresses Whitesell's *post-deposition* submission of updated schedules for its own expert's report, that of Mr. Peter J. Karutz. (See Doc. No. 1278.) Therein, Whitesell states that the updated schedules, which correct errors previously made by Mr. Karutz, "do not affect the substance of [his] opinions or damages calculations," "pre-empt[ing] a potential argument from the Defendants that the service of Mr. Karutz' updated schedules somehow make Mr. Karutz not competent to offer his expert opinions or that Mr. Karutz should otherwise be excluded or limited as an expert witness." (Id.) This demonstrates that amendments and

11

submitted an amended report for Mr. Dopp, presumably reflecting the correct costs. It is on this basis that EHP contends that it should not be sanctioned, essentially a no harm, no foul argument.

While the Court agrees with EHP that the miscalculations do not render Mr. Dopp unqualified or incompetent to testify on the matters for which he was hired, it cannot agree that Whitesell suffered no harm from Mr. Dopp's erroneous report. The Court can imagine that attorneys or paralegals spent a number of hours trying to piece together where Mr. Dopp got the per unit cost he used in calculating the damages. Indeed, Mr. Dopp did not comprehend his error at deposition for well over an hour of questioning on the issue.[6] In fact, Whitesell spent almost the entire deposition going over the mistakes made by Mr. Dopp. Whether Whitesell had other ground to plow at deposition is immaterial. So too is whether Whitesell chooses to re-depose Mr. Dopp. The fact remains that a significant amount of time at deposition and undoubtedly in preparation for the deposition was wasted because of the miscalculations that EHP did not discover in advance of disclosing the expert report. The Court cannot simply overlook the matter because EHP filed an amended report.

---

supplements to expert reports are commonplace and do not necessarily require exclusion of the expert or his report.

[6] The Court recognizes that the matter may have been confusing because the cross-examination involved the native version of Schedule 2 which differed from the Schedule 2 attached to the expert report.

12

For this reason, the Court will impose sanctions against EHP for the submission of the miscalculated damages report. That is, EHP shall pay Whitesell reasonable attorney's fees and costs associated with the review and analysis of Mr. Dopp's April 15, 2019 expert report and preparation for and taking the deposition of Mr. Dopp on September 12, 2019. In this way, Whitesell's motion for sanctions (doc. no. 1268) is **GRANTED IN PART**. Whitesell shall file a *particularized* application for the awarded fees and costs within fourteen (14) days hereof. EHP may file any objections thereto within fourteen (14) days of service.

### III.  Daubert Motion

On December 13, 2019, Whitesell filed a "Daubert Motion, Motion in Limine, and Motion to Strike" (the "Daubert motion") the expert report and testimony of Mr. Dopp. On this same day, Whitesell filed three substantially similar Daubert motions against three other defense experts. Whitesell asserts the same grounds to exclude Mr. Dopp as it did to exclude the other experts, namely that Mr. Dopp's testimony is unnecessary or irrelevant to the issues in the case because EHP cannot sustain its counterclaims for damages as a matter of law. The Court rejected this argument in its Order of September 30, 2020, denying Whitesell's Daubert motions against the other three experts. (See Doc. No. 1412.) The Court similarly holds here, in relation to Mr. Dopp, that

13

Whitesell's essential legal premise is erroneous because genuine disputes of material fact exist with respect to the attribution of fault on EHP's counterclaims for damages. Thus, the expert report of Mr. Dopp on the issue of counterclaim damages is not irrelevant.

The only distinction between the Daubert motion related to Mr. Dopp and the three other motions is Whitesell's contention that Mr. Dopp is not competent or qualified to offer his damages report because of the aforementioned miscalculations. The Court rejected this argument supra. The miscalculations go to the weight of Mr. Dopp's opinion, not his qualifications. Matters of compensation and time spent in preparing the expert report also go to the weight of an expert's opinion, not admissibility. Whitesell will be permitted to cross-examine Mr. Dopp about his erroneous initial report at trial on a limited basis and matters of compensation and preparation.

Upon the foregoing, Whitesell's Daubert motion (doc. no. 1302) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 2nd day of March, 2021.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA