IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
WHITESELL CORPORATION,          *
                                *
        Plaintiff,              *
                                *
    v.                          *     CV 103-050
                                *
ELECTROLUX HOME PRODUCTS, INC., *
HUSQVARNA, A.B., and HUSQVARNA  *
OUTDOOR PRODUCTS, INC.,         *
                                *
        Defendants.             *
```

O R D E R

Before the Court is Defendants' motion to strike certain opinions offered in the expert report of Peter J. Karutz, who is the only expert witness for Plaintiff Whitesell Corporation.[1] Defendants further seek to preclude Mr. Karutz from testifying at trial on any stricken opinions. Finally, assuming the Court strikes certain opinions of Mr. Karutz, Defendants seek summary judgment on claims that they contend are then unsupported by evidence.

Mr. Karutz is a forensic accountant. His amended expert report dated August 12, 2019, is under consideration here. In

---

[1] Mr. Karutz's expert report appears in the record as Exhibit E to the instant motion to strike. (Doc. No. 1314-13.)

Defendants' estimation, the following four areas of Mr. Karutz's expert report are infirm:

    (1) Calculation of Plaintiff Whitesell's damages for unpurchased phase-out inventory;

    (2) Calculation of Plaintiff Whitesell's damages for Defendant Husqvarna's failure to purchase Brunner and Matrix inventory;

    (3) Calculation of damages for unearned rebates; and

    (4) Calculation of prejudgment interest.

Unpurchased Inventory

In Opinion 1 of his expert report, Mr. Karutz includes a calculation of Plaintiff Whitesell's damages resulting from Defendants' alleged failure to purchase inventory. This Opinion is broken down into four categories: (i) wireform parts purchased at scrap value by Defendant Husqvarna because Husqvarna purchased these parts from Matrix, as opposed to Plaintiff Whitesell; (ii) Brunner inventory Defendant Husqvarna directed Plaintiff Whitesell to secure for a planned transition of supply in 2008 and 2009; (iii) phase-out inventory pursuant to Section 23.1 of the Strategic Partnership Agreement ("SPA"); and (iv) inventory that became obsolete during the parties' course of performance. (Pl.'s Resp. to Defs.' Mot. to Strike Karutz, Doc. No. 1359, ¶ 7.)

The first area that Defendants attack in the instant motion to strike is that part of Opinion 1 pertaining to phase-out inventory (category (iii)) that Plaintiff Whitesell claims

2

Defendants had an obligation to purchase. As explained in more detail in its Order of March 25, 2020, phase-out inventory (termed "excess fastener inventory" in the Order) is Plaintiff Whitesell's inventory that existed for parts that were terminating on November 1, 2008 pursuant to Defendants' April 2008 Notices of Termination. (See Order of Mar. 25, 2020, Doc. No. 1401, at 3-6.) Here, Defendants take issue with the methodology by which Mr. Karutz determined the part quantities of phase-out inventory and with the inclusion of parts from the L'Assomption facility in Canada. The Court need not address these issues because Defendants' motion for summary judgment as to Count III of Plaintiff Whitesell's Second Amended Complaint, in which they seek damages for Defendant Husqvarna's failure to pay for excess fastener inventory during the Phase-Out Period of the parties' relationship, has been granted.[2] (See id. at 25.) Accordingly, the Court grants Defendants' motion to strike that portion of Mr. Karutz's expert report (and any related trial testimony) regarding the calculation of damages for the failure to purchase phase-out inventory. Defendants' request for summary judgment on the issue of phase-out inventory damages has been rendered moot here by the Order of March 25, 2020.

---

[2] Through its Order of March 25, 2020, the Court held that Plaintiff Whitesell failed to assert a claim against Defendant Electrolux Home Products, Inc. ("EHP") for failure to purchase phase-out inventory. (Doc. No. 1401, at 1-2 n.1.)

3

Brunner and Matrix Inventory

The second area of Opinion 1 attacked by Defendants' instant motion relates to the scrap value of the wireform parts purchased from Matrix (category (i)) and the Brunner inventory Whitesell secured for a planned transition of supply in 2008 and 2009 (category (ii)). With respect to these categories, Defendant Husqvarna contends that Mr. Karutz failed to adhere to the pricing provisions of the parties' supply agreements and therefore his methodology in calculating damages is fatally flawed. The Brunner and Matrix parts[3] are governed by the parties' Settlement Memorandum of May 28, 2003, which provides:

> In addition to the annual rebate provided in Section 7 of this Memorandum, all Exhibit "B-1" Brunner, wireform or substitute parts transitioned to Whitesell will receive a five percent (5%) discount from the EHP piece price, plus freight, **now being paid by EHP**, unless other terms and pricing are mutually agreed to by the parties in writing.[4]

(Settlement Memorandum, Ex. 2 to Sec. Am. Compl., Doc. No. 578, ¶ 3 (emphasis added).) Defendant Husqvarna complains that rather than use the discovery information pertaining to the pricing of

---

[3] Matrix Wire Inc. ("Matrix") supplied the "wireform parts" referenced in the Settlement Memorandum. The parties and the Court have used the terms "Matrix" and "wireform" parts interchangeably.

[4] Defendant EHP and Whitesell were the original parties to the SPA and Settlement Memorandum. On June 12, 2006, EHP transferred its outdoor products division to Husqvarna A.B., which in turn transferred the business to Husqvarna Outdoor Products, Inc. ("Husqvarna"). The Brunner and Matrix (wireform) parts were apparently supplied only to Defendant Husqvarna.

Brunner and Matrix parts in May 2003, Mr. Karutz used pricing for the Brunner parts used in a Memorandum of Understanding ("MOU") provided by Husqvarna's counsel to Whitesell's counsel on November 30, 2009. There is no dispute, however, that the MOU was never executed by the parties and therefore cannot constitute a mutually agreed upon pricing different from the May 2003 pricing.[5] In valuing the Matrix parts, Mr. Karutz inexplicably used prices in effect in October 2008. In addition to using the wrong pricing for these parts, Mr. Karutz also failed to apply the 5% discount to the Brunner and Matrix pricing as required by Paragraph 3 of the Settlement Memorandum.

The Court finds the pricing used by Mr. Karutz unsupported by the evidence in the case and therefore erroneous. Thus, his damage calculations respecting the Brunner and Matrix inventory as constituted must be stricken and disallowed at trial. However, the Court will not grant summary judgment to Defendant Husqvarna

---

[5] In an effort to justify the use of the Brunner MOU for valuation, Plaintiff Whitesell argues that Paragraph 3 of the Settlement Memorandum required only a writing, not a "*signed or fully executed*" writing. (Pl.'s Resp. to Mot. to Strike Karutz ¶ 12 (emphasis in original).) This argument is completely contrary to the bedrock of contract law requiring a meeting of the minds. Moreover, the Court is reminded that it was Plaintiff Whitesell who once moved to strike, pursuant to Federal Rule of Evidence 408, any arguments or evidence pertaining to the 2009 negotiations surrounding the Brunner and Matrix MOUs as inadmissible settlement discussions. (See Doc. No. 363; see also Order of June 8, 2011, Doc. No. 429 (providing a more detailed background surrounding the Brunner and Matrix MOUs).)

on Plaintiff Whitesell's Brunner and Matrix inventory claims as requested. Rather, Mr. Karutz will be permitted to amend his report to reflect this ruling.

### Unearned Rebates

Mr. Karutz calculated damages for "Unearned Rebates" in his expert report. The Court, however, granted Defendants' motion for summary judgment on Plaintiff Whitesell's claim for unearned rebates. (See Order of December 20, 2019, Doc. No. 1275.) Accordingly, Defendants' motion to strike this expert calculation and any testimony related thereto is granted.

### Prejudgment Interest

In his expert report, Mr. Karutz included a calculation for prejudgment interest at a rate of 7% simple interest after every damages calculation contained in his report. Defendants' motion to strike this subject area is a reiteration of their contemporaneously filed motion to strike Plaintiff Whitesell's claims for prejudgment interest (doc. no. 1305). The Court has fully addressed the issue of Plaintiff Whitesell's claim for prejudgment interest and its inclusion of prejudgment interest calculations in the Karutz expert report in its Order of August 27, 2020, thereby rendering moot the issue here. (See Order of Aug. 27, 2020, Doc. No. 1409.)

6

Plaintiff Whitesell's Other Damages Claims

In a separate section of their present motion to strike, Defendants point out that Mr. Karutz has not offered any opinion or damage calculation respecting the following claims identified by Plaintiff Whitesell in the parties' joint submission of remaining claims and counterclaims (see doc. no. 1415, § I):

- Reimbursement for the third-party contract entered into in November 2007 for painting of Matrix parts required by Defendant Husqvarna;

- Reimbursement for investment in the equipment to manufacture Matrix and Brunner parts; purchased raw material to manufacture the parts; and investment in warehouse space to store the finished parts near Defendant Husqvarna's facilities;

- Reimbursement for investment in buildings and costs of equipment and infrastructure to supply Brunner and Matrix parts; and

- Count VII – Breach of Excess Stock Settlement Formula Agreement

Defendants reason that because there is no expert opinion on the amount of damages for these categories, they are entitled to summary judgment. Plaintiff Whitesell counters that witnesses other than Mr. Karutz may provide testimony related to these damages, and therefore, the motion for summary judgment is premature. Plaintiff Whitesell also suggests in its Sur-Reply that it has produced evidence of these damages during discovery. The Court finds that granting summary judgment in the context of the instant motion to strike would be inappropriate at this

juncture. Accordingly, Defendants' motion for summary judgment on these claims is denied.

### Conclusion

Upon the foregoing, Defendants' motion to strike certain opinions of Mr. Karutz (doc. no. 1314) is **GRANTED**. More specifically, the opinions (and related trial testimony) of Mr. Karutz regarding damages for unpurchased phase-out inventory, the failure to purchase Brunner and Matrix inventory, and unearned rebates are stricken. Mr. Karutz may prepare and serve upon Defendants an amended report related to the failure to purchase Brunner and Matrix inventory within forty-five (45) days hereof. Defendants' motions for summary judgment included in their motion to strike are either moot or premature and therefore denied.

**ORDER ENTERED** at Augusta, Georgia, this 12th day of April, 2021.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA