IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| WHITESELL CORPORATION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 103-050 |
| | * | |
| ELECTROLUX HOME PRODUCTS, INC., | * | |
| HUSQVARNA, A.B., and HUSQVARNA | * | |
| OUTDOOR PRODUCTS, INC., | * | |
| | * | |
| Defendants. | | |

**O R D E R**

A simple glance at "03" in the caption will raise an eyebrow as to the case's longevity, especially when one learns that there has yet to be a jury trial. The simple moniker "breach of contract" case would lead one to further question the longevity. If one were to ask why, the parties, the myriad of lawyers, and the Court would provide many and various answers, all of which are probably correct to some degree.

The case has been challenging in most every respect, and the Court's endeavors to simplify or explore alternative methods of resolution have not been favorably met or successful. Nevertheless, the Court has soldiered on through alternative dispute initiatives and associated stays of the case, discovery disputes, multiple hearings, summary judgment motions, sanctions motions and hearings, interlocutory appeals, and challenges by way

of recusal motions and writs of mandamus, all with one purpose in the end – a just resolution of the case as efficiently and effectively as possible. Along the way there have been significant court decisions that have dramatically altered the playing field for the litigants, many-but certainly not all- of which have gone against Plaintiff Whitesell Corporation. The first such Order, the "Enforceable Parts" Order of October 14, 2008, invalidated the original Supply Agreement between the parties and limited the scope of parts subject to suit to four categories of parts. (Doc. No. 212.) More recently, the Court struck Whitesell's lost profits claim in granting Defendants' motion for sanctions. (Doc. No. 1159.) Whitesell is undoubtedly keen to have an appellate court review these Orders and others (although it eschewed the chance to seek an interlocutory appeal for the October 14, 2008 Order). There have been other major decisions that have winnowed Whitesell's claims down – again, decisions that Whitesell has strongly opposed as evidenced by its motions for reconsideration and allusions to the incorrectness of past decisions oft placed in its filings. So profound is Whitesell's assertion of judicial error, it refuses to negotiate a settlement or consent to mediation if it means its appellate rights will be extinguished. (See Order of Dec. 7, 2020 (denying a motion for settlement conference because Whitesell's insistence on retaining appellate rights is "an insurmountable barrier to any settlement negotiation").) In the

Court's estimation, Whitesell not only wants an immediate jury trial but also deeply desires for the Eleventh Circuit Court of Appeals to have its turn.

Fortunately, the time for trial is drawing nigh, and in fact, the case could be ready for pre-trial proceedings in a matter of weeks. However, the COVID-19 pandemic has created its own obstacles to imminent resolution. The Court's docket is suffering from a tremendous backlog of cases. Civil case trials have been pushed even further back because of the number of criminal case trials and proceedings that must be conducted. The current surge in COVID-19 cases in this District due to the Delta variant now threatens further disruptions to the schedule of trials. Add to this equation the fact that the parties believe that the trial of the case could take a number of weeks, and the Court is left with no definitive response to the parties' entreaty of when a jury trial could be had in the case. It will probably not be in this calendar year.

Against this backdrop, Defendants filed a "Motion to Appoint Magistrate Judge," wherein Defendants seek to have Count VI of Whitesell's Second Amended Complaint referred to the United States Magistrate Judge for administration or disposition of the claim. Count VI, subtitled "Failure to Pay Invoices," involves Whitesell's claim that Defendants Electrolux Home Products, Inc. ("EHP") and Husqvarna Outdoor Products, Inc. ("Husqvarna") have

3

failed to pay certain invoices. Defendants explain, and Whitesell does not dispute, that the disputed invoices involve three categories: (1) claims for payment for Whitesell's inventory of obsolete parts; (2) invoices for which there was a dispute over the correct price; and (3) other invoice disputes related to a range of Whitesell charges and fees such as tooling charges, shipping charges, expedite fees, and more.  (Defs.' Mot. to Appoint, Doc. No. 1446, at 3.)  The parties refer to these claims jointly as the A/R claims.  Defendants further explain, and again Whitesell does not dispute, that the A/R claims involve more than 300 individual parts which will require part-tailored evidence and independent review by a jury requiring, in essence, "a series of time-intensive minitrials."  (Id. at 2.)  In the interest of judicial economy, Defendants propose that the Magistrate Judge conduct a mandatory settlement conference on the A/R claims, and if no settlement is reached, engage in fact finding on the A/R claims and make a report and recommendation to the Court regarding procedures for effectively presenting the case to a jury.

In response to the motion, Whitesell refuses to engage in a settlement conference on solely Count VI with the Magistrate Judge because a jury trial would still be necessary on the remaining claims and there is still the matter of Whitesell's appellate rights.  Whitesell also opposes sending the A/R claims to a magistrate judge because of its concern that the magistrate judge

would be usurping the role of the jury as the fact-finder. Whitesell also believes that Defendants are "attempting an end run around the Court's Order imposing a deadline to file summary judgment motions in hopes of obtaining a summary judgment ruling from the Magistrate." (Pl.'s Resp. in Opp'n to Mot. to Appoint, Doc. No. 1448, ¶ 8.) The Court understands Whitesell's demand for a jury as the fact-finder and will not intentionally interfere with it. More importantly, however, the Court does not envision the use of a United States Magistrate Judge, whose court docket has been equally hampered by the COVID-19 pandemic, as promoting judicial economy under these circumstances.

In considering the seemingly herculean task of presenting the individual stories of over 300 parts, valued at approximately $3 million, to a jury, the Court is reminded that as far back as March 2008, the previous presiding judge was greatly concerned about how this case may be presented to a jury, although at the time he was addressing the indefiniteness of the scope of goods. (See Tr. of Mar. 14, 2008, Doc. No. 173-4, at 194 ("I am very much concerned about how we are going [to] present this case to a jury." (Bowen, J., presiding)); Tr. of Oct. 14, 2008, Doc. No. 211, at 30 ("I must have a way to pose specific interrogatories to the jury which are grounded upon, as the statute says, some reasonably certain basis for giving an appropriate remedy." (Bowen, J., presiding)). Moreover, in the case's present posture, Count VI is but a shard

5

of the original case since the issues awaiting appeal are worth hundreds of millions of dollars. Stated another way, Count VI may prove so insignificant in the scheme of all the other appellate issues that the parties will likely devote few, if any, resources to appeal Count VI issues, especially considering litigation involving 300 parts will likely result in a mixed bag of wins and losses for both sides.

Because the A/R claims will require extraordinary effort, time and expense by the Court and a jury, the Court cannot abide simply sending the claims to trial without an attempt to somehow narrow the issues involved. It occurs that a run at summary judgment, or at least toward a list of stipulations, is appropriate.[1] The parties may find that there is more commonality among the 300 disputed parts than they originally thought. The Court can certainly understand why an effort to present the A/R claims for summary judgment has not been attempted previously. Yet, the Court cannot fathom how to present the A/R claims to a jury without the pre-trial assistance of someone to develop a trial plan that maximizes every efficiency.

Upon the foregoing, the Court will shift the burden associated with Claim VI from the judiciary and appoint a special master under

---

[1] "District courts unquestionably possess the power to trigger summary judgment on their own initiative." Massey v. Congress Life Ins. Co., 116 F.3d 1414, 1417 (11th Cir. 1997); see also Fed. R. Civ. P. 56(f).

6

Federal Rule of Civil Procedure 53. Thus, Defendants' motion for the appointment of a magistrate judge to address and/or resolve Claim VI of the Second Amended Complaint (doc. no. 1446) is **DENIED**.

Rule 53 permits a district court to name a special master to "hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by some exceptional condition." Fed. R. Civ. P. 53(a)(1)(B)(i). Also, a special master may "address pretrial . . . matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Id. 53(a)(1)(C). The circumstances outlined *supra* reveal the exceptional conditions of this case, specifically of the A/R claims, the need to examine whether the number of claims or issues may be reduced in some way by virtue of summary judgment or stipulations, and the unavailability of a district or magistrate judge to effectively and timely assist in this task.

As required by Rule 53(b)(1), the Court hereby gives notice of its intent to appoint Charles C. Stebbins III, Esq., to serve as Special Master as contemplated in this Court. Mr. Stebbins' curriculum vitae is attached to this Order as Exhibit "A." An affidavit by Mr. Stebbins disclosing any ground for disqualification is attached to this Order as Exhibit "B." See Fed. R. Civ. P. 53(b)(3)(A). The Court will hear any objections,

7

comments, and suggestions from the parties about the appointment outlined herein within fourteen (14) days of entry of this Order.

The selected Special Master is granted the full rights, powers, and duties afforded by Rule 53(c) and shall act with all reasonable diligence to perform the following tasks as fairly and efficiently as possible:

- Meet with the parties to identify the most efficient, organized, and succinct presentation of the A/R claims on a per part basis. It is the Court's expectation that a stipulated analytical framework will be developed. The Court envisions that perhaps for each and every part, the parties include information that identifies any relevant contractual provision or prior ruling of the Court; any stipulations of fact; any statements of material facts that each side contends is undisputed but for which there is no stipulation; any statements of material disputed facts; any timeline of events that relates the story of each part; any supporting exhibits, discovery responses, and/or testimony; and legal arguments for and against summary judgment.

- Provide periodic status reports to the Court.

- Communicate and meet with the parties as needed in order to permit the full and efficient performance of these duties. Communication with the parties and the Court is addressed more fully below.

- Conduct any necessary and appropriate evidentiary hearing wherein the Special Master shall have the power to compel, take, and record evidence.

- Submit a Report and Recommendation to the Court recommending findings of fact and conclusions of law respecting the A/R claims and recommending whether summary judgment should be granted with respect to the part(s). Any party may file an objection to a Report and Recommendation within 21 calendar days of the date it is filed; failure to meet this deadline will constitute a permanent waiver of any objection(s).

- Submit a Report identifying any remaining disputed material facts that must be tried by a jury. In order to create this Report, the Special Master shall meet with the parties for the purpose of developing a detailed trial plan for each part to include a list of all witnesses who will testify, all exhibits to be admitted, and a proposed time limit for presentation. The Special Master shall aggressively limit the time and number of witnesses and exhibits proposed by the parties.

- Propose structures and strategies for settlement negotiations on the A/R claims if feasible.

Rule 53(b)(2)(B) directs the Court to set forth "the circumstances, if any, in which the [Special Master] may communicate *ex parte* with the court or a party." Accordingly, the Court instructs that no *ex parte* communication shall occur between the Special Master and any party, attorney, witness, or the Court without prior notice to the parties; nor shall any party, attorney, or witness have *ex parte* communications with the Court without prior notice to the parties. This said, the Court should not be included in matters involving logistics, the management of the Special Master's activities and duties and other procedural matters, or the submissions of the parties including any legal briefs. In fact, much like discovery, the Court should <u>not</u> be included in any correspondence or submissions related to the Special Master's appointment, other than periodic status reports and Reports and Recommendations, except as absolutely necessary. The only other allowable *ex parte* communication with the Special

9

Master will be for the purpose of any settlement or mediation effort, again with prior notice to the parties.

Rule 53(b)(2)(C) states that the Court must define "the nature of the materials to be preserved and filed as a record of the [Special Master's] activities." In this regard, only periodic status reports or Reports and Recommendations of the Special Master shall be filed on the case docket. The Special Master need only preserve the correspondence and documents received from the parties and any correspondence and documents created by the Special Master in the performance of these duties for a period of ninety (90) days following the termination of the appointment.

The Special Master shall incur only such fees and expenses as are reasonably necessary to fulfill these duties. The Special Master shall be compensated at his usual and customary rate of $400 per hour. The Special Master shall maintain normal billing records of expenses and the time spent on this matter with reasonably detailed descriptions of the activities and matters worked upon. Each party - (1) Plaintiff Whitesell Corporation; (2) Defendant Electrolux Home Products, Inc.; and (3) Defendants Husqvarna, A.B., and Husqvarna Outdoor Products, Inc. - shall bear 1/3 of the fees and expenses. The Special Master shall file a Statement of Fees and Expenses with the Court on a monthly basis. The parties may file objections to the Statement of Fees and Expenses within seven (7) calendar days of its filing or any

objection thereto is waived. The parties will be required to make interim payments as the Court directs.

The parties shall provide full cooperation to the Special Master. The parties shall timely comply with the rulings and directives of the Special Master. Pursuant to Rule 53(c)(2), the Special Master may, if appropriate, "impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party." The Special Master shall enjoy the same protections from being compelled to give testimony and from liability for damages as those enjoyed by judges performing similar functions.

After fourteen (14) days hereof, the Court will reissue this Order as an "Order Appointing Special Master" with any appropriate suggestions or modifications. The "Order Appointing Special Master" will become effective immediately. The Special Master shall then proceed with reasonable diligence and according to a scheduling order entered into through consultation with the parties.

Plaintiff Whitesell has filed a motion for status conference. Because the parties will be occupied with a scheduling order related to the Special Master assignment, it would not be helpful to conduct an immediate status conference pertaining to trial matters at this point. Rather, the Court expects that a status conference would be more constructive after the parties have

conducted the Special Master process and the Court is better positioned to appreciate its own schedule and the needs of these litigants. Accordingly, the motion for status conference (doc. no. 1481) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 5th day of August, 2021.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

12