```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF GEORGIA
                      AUGUSTA DIVISION
```

```
WHITESELL CORPORATION,           *
                                 *
          Plaintiff,             *
                                 *
     v.                          *    CV 103-050
                                 *
ELECTROLUX HOME PRODUCTS, INC.,  *
HUSQVARNA, A.B., and HUSQVARNA   *
OUTDOOR PRODUCTS, INC.,          *
                                 *
          Defendants.            *
```

## O R D E R

Before the Court is Defendants Husqvarna AB and Husqvarna Outdoor Products, Inc.'s ("Husqvarna" hereinafter) motion in limine to exclude any evidence or argument concerning the "Substitute Part Provision" of the parties' Settlement Memorandum at the trial of the case. The Court denies the motion for the reasons that follow.

### I.  BACKGROUND

This case involves the contractual relationship between Husqvarna and Plaintiff Whitesell Corporation, a parts supplier, which began in 2000 when the parties entered into a Strategic Partnership Agreement ("SPA"). This motion involves the contractual obligation for Whitesell to provide "Brunner and

wireform parts" to Husqvarna, which arose upon the parties' execution of the Settlement Memorandum of May 28, 2003. Paragraph 3 of the Settlement Memorandum provided as follows:

> Whitesell will make product supply capability presentations to [Husqvarna] for any or all of the Brunner and/or wireform parts. To the extent that [Husqvarna does] not transition the supply of all Brunner and wireform parts to Whitesell, [Husqvarna] agrees to transition additional mutually agreed upon parts for Whitesell to supply in an amount which creates gross purchases . . . equal to the calendar year 2002 purchase value of the Brunner and wireform parts not transitioned (hereinafter, "substitute parts.") While the parties will immediately begin the process of determining which Brunner, wireform and/or substitute parts to transition to Whitesell, full transition will not be made until December 31, 2003.

(See generally Sec. Am. Compl., Doc. No. 578, Ex. 2, Settlement Memo. ¶ 3.) For purposes of this Order, Paragraph 3 is called the "Substitute Part Provision."

It is undisputed that Husqvarna did not transition the Brunner and wireform parts to Whitesell by December 31, 2003. Husqvarna also did not transition agreed upon substitute parts. This failure to transition parts forms the basis of Whitesell's breach of contract claim in Count II of its Second Amended Complaint. (Second Am. Compl. ¶¶ 137-44.) More specifically, Whitesell alleges that it made "significant investments in buildings, equipment, and other infrastructure to supply" the Brunner and wireform parts and that it "manufactured significant quantities of these parts based on [Husqvarna's] obligation to transition" the

parts. (Id. ¶¶ 140-41.) Thus, Whitesell seeks damages in the form of operational losses to include payment for its inventory of these parts.[1] (Id. ¶ 144; see also Parties' Joint Resp. to Court's Order of Sept. 30, 2020, Doc. No. 1415, at 2 (detailing the remaining claims in the case).) Whitesell does not state a specific claim for lost profits or loss of revenue from the failure to transition substitute parts in Count II. (See Sec. Am. Compl., ¶ 144.) Indeed, the Court has foreclosed Whitesell's ability to seek lost profits through its Sanctions Order of February 14, 2019 (doc. no. 1159).

The failure to transition also forms the basis of Husqvarna's counterclaim for damages "based upon Whitesell's alleged refusal and/or inability to supply all Enforceable Parts to include Brunner and wireform parts."[2] (See Husq. Ans., Doc. No. 584, Count III.) Therein, Husqvarna seeks damages for costs incurred for purchasing "Safety Stock" parts and for losses in failing to receive pricing discounts and annual rebates. (Id. ¶ 38.)

The parties vehemently disagree as to whose feet the failure to transition rests. Husqvarna contends that the failure to

---

[1] On April 19, 2022, the Court granted Husqvarna's motion in limine to exclude evidence pertaining to Whitesell's damages claim for capital expenditures. (Doc. No. 1541.)

[2] Husqvarna has also counterclaimed based upon Whitesell's alleged failure to pay annual rebates and to comply with the phase-out inventory obligations. (See Husq. Ans., Counterclaims I & II.)

transition was due to Whitesell's conduct such as its failure to timely locate sub-suppliers for parts it did not have the capability or desire to manufacture; failure to successfully complete required qualification processes for parts; failure to make supply capability presentations; and threatening to cease supplying parts. Whitesell contends that the failure to transition was the result of Husqvarna's deliberate scheme to avoid the contract with Whitesell in favor of alternate suppliers. As the Court has noted, the "attribution of fault" is a "hotly contested, fact-intensive inquiry that requires consideration and resolution by a jury." (See Order of Sept. 10, 2020, Doc. No. 1410, at 7 n.3.)

At times in this case, however, the parties have sought to avoid a jury trial on this issue. Husqvarna has claimed that it should be excused, as a matter of law, from any obligation under Paragraph 3 of the Settlement Memorandum based upon Whitesell's conduct related to the transition efforts. (See Order of Jun. 8, 2011, Doc. No. 429 (denying Husqvarna's motion for summary judgment on Whitesell's claims concerning the transition of Brunner and Matrix parts).) Whitesell has claimed that it is not liable for damages on Husqvarna's counterclaims, as a matter of law, because Husqvarna transitioned neither the Brunner and wireform parts nor substitute parts under the Substitute Part Provision. (See Order of Sept. 10, 2020 (denying Whitesell's motion for summary judgment

4

on liability as to Husqvarna's counterclaims); Order of March 25, 2021, Doc. No. 1462 (granting Husqvarna's motion to strike Neil Whitesell as an expert and his expert report).) On these occasions, the Court has declined to enter judgment in favor of either party because the disputed reasons behind the failed transition of Brunner and wireform parts is the crux of their affirmative claims against each other.

Now, Husqvarna seeks to exclude "presentation of evidence and argument concerning the Substitute Part Provision" because the remaining damages claim in Whitesell's Count II – payment for Brunner and wireform inventory – does not implicate substitute parts. Indeed, the parties neither mutually identified nor sought transition of any substitute parts as provided for in the Substitute Part Provision. Husqvarna seizes upon this fact to argue that the Substitute Part Provision "has absolutely no relevancy to any of the claims remaining in the lawsuit." (Def. Husq.'s Mot. in Limine, Doc. No. 1526, at 4.)

The obligation to transition Brunner and wireform parts under the Substitute Part Provision underpins one of the most important features of the upcoming trial. This obligation, and the obligation to provide substitute part revenue in lieu thereof, appear in the various letters and emails in the case that the parties will use to present their side of the story to the jury. As a practical matter then, it would be nearly impossible to exclude all reference

5

- "evidence and argument" - pertaining to the Substitute Part Provision. For this reason, the parties will be able to reference and discuss the Substitute Part Provision and its import on the parties' course of conduct with the following paramount proviso: <u>Whitesell will not be permitted to seek damages for any lost revenue from the failure to identify and transition substitute parts regardless of the determination of fault as to the failed transition of Brunner and wireform parts.</u>

Here, the Court emphasizes once again that Whitesell could not seek substitute part revenue solely because the Brunner and wireform parts were not transitioned. The Court made this clear in denying Whitesell's motion for summary judgment as to Husqvarna's counterclaims. (Order of Sept. 10, 2020, Doc. No. 1410 (rejecting Whitesell's contention that Husqvarna was obligated to purchase substitute parts regardless of its conduct in hindering or preventing the transition of Brunner and wireform parts). Thus, if the jury determines that Whitesell is at fault for the failure to transition Brunner and wireform parts, Whitesell is not entitled to substitute part revenue. (See <u>id.</u> at 8 ("The Court concludes that allowing Whitesell to recover under a provision that it may have breached through its own conduct would remove all mutuality from the provision and unjustly excuse Whitesell's obligation to qualify parts and to provide its best efforts to fulfill its requirements.").)

6

But what if the jury determines Husqvarna is at fault for the failed transition? In that event, Whitesell has chosen its claim for damages – the value of unpurchased Brunner and wireform part inventory. As explained earlier, this is the only remaining claim in Whitesell's Count II. Whitesell did not assert a claim for the loss of substitute part revenue. This was reiterated in the parties' *joint* response detailing the remaining claims in the case, which lists only capital investments and payment for inventory under Count II of the Second Amended Complaint.[3] (See Joint Resp. to Court Order, Doc. No. 1415, at 2.)

In conclusion, the Court finds that Husqvarna's attempt to exclude all evidence and argument of the Substitute Part Provision is overly broad and unduly prejudicial because exclusion would unfairly undermine Whitesell's ability to present its side of the story. The Substitute Part Provision is relevant to an understanding of the parties' intent, motive, state of mind, and their interpretation of their respective obligations under the Settlement Memorandum for the jury's consideration of fault. In so concluding, evidence and argument relating to the Substitute Part Provision will be allowed to provide necessary background and

---

[3] To be sure, a claim for the inventory of Brunner and wireform parts is mutually exclusive of a claim for loss of revenue for substitute parts. The Substitute Part Provision gave Husqvarna the choice of transitioning the Brunner and wireform parts or transitioning mutually agreed upon substitute parts.

explanation for the communications and testimony of the parties and for the inferences to be drawn therefrom. The Substitute Part Provision cannot be ignored, as Husqvarna seems to suggest; rather, it should be presented to the jury as useful information in context. But, as forewarned, Whitesell will not be permitted to use the Substitute Part Provision as a basis for any claim of lost revenue damages.

Upon the foregoing, Husqvarna's motion in limine to exclude evidence and argument concerning the Substitute Part Provision (doc. no. 1526) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 7th day of June, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA