IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| WHITESELL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:03-cv-00050-JRH |
| | ) | |
| ELECTROLUX HOME PRODUCTS, INC., | ) | |
| HUSQVARNA A.B. and HUSQVARNA | ) | |
| OUTDOOR PRODUCTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND REPORT AND RECOMMENDATION OF SPECIAL MASTER

Pursuant to the Court's Order of September 17, 2021, the undersigned Special Master herein submits his Second Report and Recommendation:

On June 17, 2022 Defendants submitted their "Motion for Judgment on the Pleadings Regarding Invoices Not Pleaded in Whitesell's Second Amended Complaint." File List Item 40 (the "Motion"). Plaintiff ("Whitesell") responded on July 1, 2022. File List Item 42. These documents are attached hereto as an appendix. I recommend that Defendants' motion be granted in its entirety as explained below.

The motion presents only one question: whether Whitesell is entitled to assert claims based on invoices which were not listed on Exhibits 5, 6 and 7 attached to Whitesell's Second Amended Complaint (Dkt. 578). As a conclusive matter of pleading, the answer is no.

Whitesell's accounts receivable claims, as referred to me, are stated in Count VI of the Second Amended Complaint, to which Exhibits 5, 6, and 7 pertain. I am fully persuaded by Defendants' reasoning in Part II of their Motion. Although Count VI purported to contain a reservation allowing the addition of invoices later, this reservation is of no effect. Although, as

1

Whitesell demonstrates at some length in its opposition to the Motion, the affected invoices or at least some of them have been discussed between the parties at various times, Whitesell has never moved to amend the Second Amended Complaint to include them within this lawsuit.

Defendants' Motion and Whitesell's Response must be judged in light of the unusual circumstances of this long-running case. The Second Amended Complaint (Dkt. 578), including Count VI to which Defendants' Motion is addressed, is the product of a an unusually drawn out and deliberative procedure. It should be expected that the final product of this process would be definitive. The Second Amended Complaint has been the basis on which this case has proceeded since June 6, 2014.

On January 17, 2014 Whitesell, referring to what it considered to be numerous changes effected by court rulings herein over a period of years, sought leave to amend its complaint and submitted a proposed second amended complaint. Dkt. 546; Dkt. 546-2. This proposed second amended complaint contained a Count VII which was captioned "breach of contract (failure to pay invoices) and a Count VIII, captioned "suit on account (failure to pay invoices)." Both these counts referred to unpaid invoices only in general terms, without identifying any specific invoices, and both sought to recover a total of $6,602,354.53 as the principal amount due for unpaid invoices. These counts were apparently simply two different theories of how to recover the stated amount. Defendants objected. Dkt. 550. A hearing on the matter was held before Judge Hall on March 27, 2014, of which a transcript was filed on April 9, 2014. Dkt. 567. The hearing was mostly concerned with other counts of the proposed Second Amended Complaint, but there was discussion of Counts VII and VIII. The result of the hearing was some instructions from the bench as to how a second amended complaint was to be configured and what it was to include. At that time, Whitesell's counsel volunteered that Whitesell would consolidate all of its invoice claims into a singular count

(now Count VI) and specifically identify invoices, particularly those it sought 18% pre-judgment interest on pursuant to Georgia law. Dkt. 567, p. 37, lines 7-25.

After this hearing, and in response to Judge Hall's instructions, Whitesell filed a new version of its proposed Second Amended Complaint on April 10, 2014. Dkt. 568. In this new version, Whitesell's complaints of failure to pay invoices are consolidated into a new Count VI. *See* Dkt. 568, ¶¶ 184-200. This version omits to state a particular amount sought under Count VI and instead substitutes Exhibits 5, 6, and 7, which are stated to contain "lists of invoices" in three categories, specified in Paragraphs 191-193. Paragraph 193, relating to Exhibit 7, states that the invoices listed on Exhibit 7 can be divided into three subcategories and that "[a]s discovery progresses, Whitesell will distinguish among these subcategories and reserves the right to modify the list referred to above."

Once again, Defendants objected. Dkt. 569. On January 17, 2014, the Court entered an order relating to Whitesell's motion for leave to file a second amended complaint. Dkt. 577. The Order rules on a number of objections made by Defendants, none of which materially affect the dispute now before me as to whether invoices not listed on Exhibits 5, 6, and 7 can be the basis for recovery under Count VI. The Court ordered Whitesell to recast its complaint, which resulted in the operative Second Amended Complaint (Dkt. 578), upon Count VI of which Defendants' current Motion for judgment on the pleadings rests.

The operative Second Amended Complaint does not make any material changes in the Count VI of the Second Amended Complaint as it appears in Dkt. 568. In the operative pleading, Dkt. 578, Count VI consists of Paragraphs 166-180. Paragraph 170 alleges that Defendants "have failed and refused to pay Whitesell's valid and undisputed invoices" and further that "[o]n information and belief, [Defendants] refused to pay other invoices based on contrived, unfounded

reasons." *See* Dkt. 578. Just as before, the Second Amended Complaint contains no language that can reasonably be construed to suggest that Exhibits 5, 6, and 7 do not provide an exclusive list of all invoices for which Whitesell seeks payment. The only language by which Whitesell seeks to reserve some flexibility occurs in Paragraph 175 and pertains only to Exhibit 7 and "pricing issues" invoices, as to which Whitesell avers that "[a]s discovery progresses, Whitesell will distinguish among [three] subcategories and reserves the right to modify the list referred to above." This certainly does not imply that additional invoices will be added. The amount of money sought to be recovered for all unpaid invoices remains in the Second Amended Complaint what it was much earlier, $6,602,354.53. There is simply nothing in the Second Amended Complaint that supports Whitesell's argument in this regard.

At Page 11 of its Response, Whitesell argues that the text of the Second Amended Complaint supports the conclusion that its claims for unpaid invoices are not limited to those listed on Exhibits 5, 6, and 7 of Count VI of the Second Amended Complaint. After carefully considering the paragraphs and language invoked by Whitesell, I cannot agree. Whitesell elected to present a very lengthy and diffuse complaint, which contains a number of paragraphs addressing invoices generally, but these paragraphs contain no language that would necessarily or even reasonably modify the express language of Paragraphs 173-175. I cannot read these paragraphs as saying anything other than that the lists contained on Exhibits 5, 6, and 7 are an exclusive list of Whitesell's claims. As I noted above, the attempted reservation by Whitesell in Paragraph 175 to "modify" the Exhibit 7 list, which is stated in the context of specifying subcategories within Exhibit 7, cannot be construed as a reservation of the right to add additional invoices.

Given the foregoing, I find that Exhibits 5, 6, and 7 function in Count VI as an exclusive list of Whitesell's invoice claims. This is consistent with the Court's view in its Order of May 15,

2017, where it declared that Whitesell's Second Amended Complaint was intended to be a "complete statement" and "definitive statement" of Whitesell's case. Dkt. 896, p.10. The question is therefore whether, despite this voluntary restriction of its invoice claims made by Whitesell in a pleading that, it is fair to assume, was carefully considered, can now be overridden for any of the reasons Whitesell asserts.

In opposition to the Motion, and other than its unconvincing argument that the Second Amended Complaint does not restrict Count VI to the invoice claims stated on Exhibits 5, 6, and 7, Whitesell makes arguments based on (1) case law pertaining to the setting up of an affirmative defense, where the element of unfair surprise is prominent, (2) waiver based on alleged tardiness of the present Motion, (3) waiver based on Defendants' voluntary agreement to pay certain of the unpleaded invoices, and (4) failure of Defendants' to raise the matter as an affirmative defense. I find no merit in these arguments.

I am not persuaded by the analogy Whitesell seeks to draw between a failure to include certain claims in a complaint and the failure to assert an affirmative defense prior to a motion for summary judgment or otherwise. A complaint, and particularly an amended complaint required by a court after years of litigation, as is involved in this case, serves a far more important and determinative function in the scheme of litigation provided by Federal Rules of Civil Procedure than does the pleading of an affirmative defense. The responsibility for definitively establishing the contours of an action rests on the plaintiff.

I see nothing in Defendants' agreement, "as a matter of good faith,"[1] to pay some invoices which were not listed on Exhibits 5, 6, and 7 to the Second Amended Complaint, which comes

---

[1] *See, e.g.*, Defendants' Response to Plaintiff's Motion on Accounts Receivable, File List Item 18, p. 9. Rather than attaching this Response as part of the appendix to this Second Report and Recommendation, I will attach it to my forthcoming Third Report and Recommendation.

near to meeting the familiar (and steep) requirements for a waiver to exist. Even if Defendants' agreement to pay these invoices is taken as an admission that they are or were at one time legally due, such an admission cannot fairly be extended to other invoices which Defendants did not include in their concession. I see no obstacle in including judgment on the conceded invoices in this litigation, even though they were not properly pleaded, and Whitesell has pointed to none.

I am also unpersuaded by Plaintiff's analogy to the late assertion of an affirmative defense. Rule 12(c), Federal Rules of Civil Procedure provides that a motion for judgment on the pleadings may be made "[a]fter the pleadings are closed—but early enough not to delay the trial." This clearly implies that Defendants' motion is not improper at the present stage of these proceedings and need not be made at an early stage. Defendants' Motion, filed July 1 where trial is scheduled for September 19, will not delay trial. Whitesell will have 21 calendar days from the filing date of this Report and Recommendation to object to it, which leaves plentiful time for the Court to consider my recommendation and make a final decision. Again, the basic matter of the proper pleading of this case, in light of the Court's expressed desire that the Second Amended Complaint would be definitive (a "good, clean complaint," as the Court phrased it), involves different and more crucial considerations than the late assertion of an affirmative defense.

Whitesell's basic argument, when all has been said, is that it should be relieved from the restriction provided by its own, presumably carefully considered pleading, in the interest of justice and because its desire to seek recovery on the unpleaded invoices should be no surprise to Defendants. Whitesell has eloquently expounded on the preference of the justice system for determination of issues on the merits. I recognize the point.

However, I think these concerns must necessarily become more attenuated, and the importance of procedural rules become greater, as the scope, complexity and length of time in

6

litigation increases for a particular case. Here all parties are represented by highly qualified, well-financed and aggressive counsel. The case for disregarding the pleadings is not particularly compelling in such a situation. I think I must assume that the choices made by the parties along the way, including Whitesell's statement of Count VI in its final Second Amended Complaint, have been carefully selected for strategic purposes. Certainly, the Court, with its greater knowledge of the overall course of this case, is in a better position than I to judge this matter. I note, however, that the Court herein has already made the conclusive nature of the Second Amended Complaint very plain. Order of May 15, 2017, Dkt. 896 at p. 10 (the Second Amended Complaint is to be a "good, clean" complaint and was expected to be "a complete statement of [Whitesell's] case").

This determination disposes fully of the Motion. However, I note that, while I do not understand how Defendants' alternative theory as stated in Part II(B) of the Motion, based on the Federal Rules of Evidence, could by itself justify striking these claims, I do agree that, given my recommendation to strike the claims, evidence of claims or damages pertaining to the stricken invoices should not be admissible at trial unless there is a stated purpose for admission of the evidence outside of Count VI, because such evidence would otherwise be both irrelevant and prejudicial. Such evidence would only confuse and distract the jury in this already complicated case.

My recommendation is not based on the suggested futility of new claims being added at this late stage in this litigation, as Defendants argue, based on the probable application of the statute of limitations. I do, however, agree with Defendants that allowing the addition of the unpleaded invoices at this time without an amendment of the Second Amended Complaint would, so far as I can see on the basis of what has been presented to me, be futile, since they would all be barred by the applicable statute of limitations. The Second Amended Complaint was filed herein more than

six years ago.  Thus, more than six years have intervened, not just since the rendition of the invoices, but even from the time of the Second Amended Complaint.  I am aware that, *if* Whitesell had made a timely motion to amend Count VI, and *if* the Court had granted that motion, the general rule would have allowed the new claims added to relate back to the filing date of the original complaint.  However, that is not the procedural history or posture of this case.

My recommendation is that the Court enter an Order striking any claim based on an invoice which does not appear on Exhibits 5, 6, and 7 attached to Whitesell's Second Amended Complaint and barring from trial any evidence pertaining to such invoices.  Subject to a contrary opinion from the Court, I now direct the parties to cooperate on an agreed list of these invoices remaining in dispute and derived from Exhibits 5-7 of the Second Amended Complaint.

For the general information of the Court looking toward trial in September (though this observation forms no part of the basis for my recommendation as stated above), I note that according to the most recent list of claims submitted to me by Whitesell, it appears that there are approximately 1858 invoices upon which Whitesell bases claims.  It seems that approximately 200 of these will be barred pursuant to my recommendation if accepted.  Another 17 "packets" of invoices are the subject of two motions for summary judgment sought by Whitesell, still pending before me.  Also, there are another approximately 108 invoices as to which Defendants have now conceded liability and the amount of recover, reserving only the question of prejudgment interest, which I intend to address.   As Special Master I am in the process of examining the theories and evidence supporting or opposing the remaining invoice claims (in the case of obsolescence claims, in light of the determinations and principles stated in my First Report and Recommendation), to determine how many of them will be required to be tried to the jury, what issues will be presented,

whether the invoice claims may be grouped for simplification of issues to be presented to a jury, and what stipulations can be reached by the parties to simplify trial.

    Respectfully submitted this 19th day of July, 2022.

                                              /s/ Charles C. Stebbins, III
                                              Charles C. Stebbins, III, Special Master