IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |  |
|---|---|---|
| WHITESELL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:03-cv-00050-JRH |
| | ) | |
| ELECTROLUX HOME PRODUCTS, INC., | ) | |
| HUSQVARNA A.B. and HUSQVARNA | ) | |
| OUTDOOR PRODUCTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FOURTH REPORT AND RECOMMENDATION OF SPECIAL MASTER

Pursuant to the Court's Order of September 17, 2021, the undersigned Special Master herein submits his Fourth Report and Recommendation, addressing the last remaining motion submitted to me, that submitted by Plaintiff ("Whitesell") entitled "Plaintiff's Motion for Special Master to Prepare and Submit a Report and Recommendation to the Court to Enter Judgment Against Defendants on Accounts Receivable Claims for which Defendants Issued Written Approvals" ("Written Approval Claims"). This is similar to Whitesell's motion addressed in my Third Report and Recommendation. Again, I will discuss the issues in terms of the packets created by Whitesell and called in this case "Approval Packets."

Whitesell's motion seeks $80,266.25 plus pre-judgment interest and attorneys' fees and costs. File List 10-12 (including exhibits to the motion). Defendants responded on March 18, 2022 with exhibits and argument. File List 19. Whitesell filed a reply with exhibits. File List 22 and 23. Defendants submitted a sur-reply. File List 24. Whitesell thereafter filed again with me the remaining disputed approvals packets on April 15, 2022 upon my request. File List 27. These documents are submitted as an appendix herewith.

1

In this motion, Whitesell claims entitlement to recover on 27 discrete categories of claims against one or both Defendants. Plaintiff states its ground of recovery on each to be that each is supported by a "written approval," in the form of either a specific authorization from an agent of one of Defendants for the purchase at the claimed price or in the form of a necessary implication from the computerized "DFC" system set up by the parties. *See generally* File List 10, File List 19. Whitesell argues that because these charges were explicitly authorized, Defendants have either ratified the transactions, waived any rejection of them, or are otherwise estopped from arguing that Defendants are not required to pay Whitesell's claimed charge for each of these items. See File List 10, pp. 2-3. Whitesell supports its argument with written documentation, the authenticity of which has not been challenged by Defendants. *See* File List 23, File List 27. I note, as explained in detail below, that Whitesell's documentation shows that in some cases it is actually relying on oral approvals, not written approvals, though it contends that these approvals are established by written memoranda which Whitesell contends memorialize verbal approvals from agents of Defendants.

Defendants' counter-arguments are specific to each invoice set. They argue that, as to eleven of the twenty-seven sets of claims, Whitesell has not met its summary judgment burden. As to the remaining sixteen, Defendants have actually stipulated that they "do not contest" the amounts due and claimed by Plaintiff. As I have done with the Purchase Order Claims addressed in my Third Report and Recommendation, I now set forth each "Approval Packet" with identifying information below. The Packets that are starred are those as to which Defendants continue to contest liability for the principal amounts claimed.

| Special Master's Designation | Customer Part Number | Quantity | Amount Disputed |
|---|---|---|---|
| **Approval Packet 1*** | 156972 | 12 invoices | $3,607 |
| **Approval Packet 2*** | 400243 | 2 invoices | $561 |
| **Approval Packet 3** | 400342 | 12 invoices | $727 |
| **Approval Packet 4*** | 404845 | 23 invoices | $12,095 |
| **Approval Packet 5*** | 17411312 | 19 invoices | $9,697 |
| **Approval Packet 6** | 73900500 | 69 invoices | $6,108 |
| **Approval Packet 7*** | 74940516 | 18 invoices | $810 |
| **Approval Packet 8** | 165857 | 5 invoices | $3,984 |
| **Approval Packet 9** | 72240460 | 2 invoices | $271 |
| **Approval Packet 10** | ii15552 | 1 invoice | $1,800 |
| **Approval Packet 11** | ii13314 | 1 invoice | $258 |
| **Approval Packet 12** | ii14034 | 1 invoice | $3,495 |
| **Approval Packet 13*** | ii14035 | 1 invoice | $3,900 |
| **Approval Packet 14*** | ii14174 | 1 invoice | $2,437 |
| **Approval Packet 15** | ii14229 | 1 invoice | $1,031 |
| **Approval Packet 16** | ii14363 | 1 invoice | $2,550 |
| **Approval Packet 17** | ii14364 | 1 invoice | $2,700 |
| **Approval Packet 18** | ii14366 | 1 invoice | $2,300 |
| **Approval Packet 19** | ii14970 | 1 invoice | $1,600 |
| **Approval Packet 20** | ii14992 | 1 invoice | $3,000 |
| **Approval Packet 21*** | ii15257 | 1 invoice | $2,696 |
| **Approval Packet 22*** | ii15258 | 1 invoice | $1,501 |

| | | | |
|---|---|---|---|
| **Approval Packet 23*** | ii15260 | 1 invoice | $12,433 |
| **Approval Packet 24*** | ii15510 | 1 invoice | $499 |
| **Approval Packet 25** | ii15800 | 1 invoice | $425 |
| **Approval Packet 26** | ii16170 | 1 invoice | $200 |
| **Approval Packet 27** | ii16339 | 1 invoice | $120 |

### A. *Presently undisputed claims – Approval Packets 3, 6, 8-12, 15-20 and 25-27*

In their initial response to Whitesell's motion (File List 19), Defendants indicated that they would not contest liability in the principal amounts claimed in Approval Packets 3, 6, 8, 10, 10-12, 15-20, and 25-27. File List 19, pp. 9-10. Defendants withdrew their contest of Approval Packet 9 in their sur-reply based on communications provided by Whitesell with Ryan Sadler of Defendant Husqvarna. File List 24, p. 2. As to these sixteen claims, I recommend that the Court enter judgment in the total amount of $30,569.00 in principal. For the same reasons stated in my Third Report and Recommendation as to similarly uncontested claims, I conclude that Whitesell, although not entitled to attorneys' fees and expenses of litigation, is entitled to interest at 18% per annum from date of invoice. *See* Special Master's Third Report and Recommendation, Dkt. 1624.

### B. *Still disputed claims*

In each of the eleven remaining disputed claims, the issue is whether the documentation and argument submitted by Whitesell, in light of the documentation and counter-argument submitted by Defendants, is sufficient to show that as a matter of law Defendants must pay the claimed invoice charges. These claims are simple actions for a price stated by Whitesell and purportedly affirmatively agreed to by one or the other of Defendants. In theory, the price of goods under the SPA should have been determined by the pricing mechanisms stated in the SPA,

but Defendants have not attempted (except as explained below as to "two-tier" pricing) to establish any price or any defense by reference to provisions of the SPA. Whitesell has narrowed the present motion to a claim that Defendants approved Whitesell's stated prices and are thus bound to pay them. The present motion therefore does not involve questions of what the price to Defendants should have been under the provisions of the SPA, only whether, regardless of what the price should have been, Defendants actually expressly agreed to pay the price demanded by Whitesell. The answer depends entirely on reading and construction of the documents presented.

In one situation only, Defendants at first appear to appeal to the SPA. Some categories in dispute involve a two-tiered pricing structure set forth by Whitesell, with different prices for domestic and imported parts. Whitesell apparently justified this two-tiered structure on the basis that it could provide a part quicker if it manufactured it domestically, but it asserted that such domestic production would involve a higher price. Defendants seems to have contended, during the life of the contract and now, that such a distinction was not permitted under the SPA. *See* File List 19, pp. 2-4. However, this contention of Defendants, in itself, has no practical significance in resolving the disputes presented on the present motion. In spite of their numerous and acrimonious disputes, which arose very quickly after the SPA began, the parties in this matter chose to continue to remain in relationship with each other for decades, with Whitesell providing products and Defendants accepting them. The claims in Count VI, as referred to me, are all simply invoice claims relating to shipments made by Whitesell and accepted by one or the other of Defendants. The claims on summary judgment stand or fall on whether the price was clearly stated by Whitesell in advance of acceptance of the shipment by Defendants, and whether Defendants, one way or another, agreed to pay that stated price. The reason for a dispute over price (such as that the price

5

quoted was the product of an improper "two-tier" system of pricing) is not material to the summary judgment motion, only the fact of there being a dispute.

Nevertheless, I make the following observations about the "two-tier" argument. In support of their position that the two-tiered pricing system was impermissible under the SPA, Defendants cite to a January 2007 email from Ryan Sadler disputing the two-tiered pricing, as well as an exchange of letters between the parties. *See* File List 19, Exhibits D-I. Having read and considered those provisions of the SPA cited by the parties, I cannot accept that the SPA unambiguously forbids the two-tiered pricing system set forth by Whitesell. On the one hand, Section 5.5 of the SPA does state plainly that "[i]t is Whitesell's intent to maintain and hold firm all pricing for the duration of the Agreement." However, this provision also allows that an "adverse market condition" might affect pricing. Additionally, the very next section, Section 5.6, has a host of conditions governing the pricing of any "new Good(s)." Among them, Whitesell is required to use Exhibit B as a guide for pricing new parts and is required to provide a quote and cost breakdown for any "new Good(s)." Whitesell is explicitly entitled to adjust pricing based on considerations that "include but are not limited to" tooling costs, outside service costs, material costs, packing enhancements, and special inspection costs. I highlight these two sequential provisions in the SPA, but having considered the entire document as a whole, I do not find that the SPA unambiguously allows or disallows the two-tiered pricing approach used by Whitesell as to some of its parts.

Furthermore, considering just the extrinsic evidence presented through the present motion, it is clear that Defendants approved higher domestic pricing both before and after the dispute email sent from David Agee of Defendant HOPI on January 25, 2007 in which he stated that the two-tiered approach was "not provided for in the [SPA]." File List 19, Exhibit E. Just within these briefs, there is evidence that Defendant HOPI explicitly approved domestic pricing for certain

6

shipments both before and after this January 25, 2007 email. For example, in Approval Packet 5, it is clear Ryan Sadler of Defendant HOPI approved domestic pricing for certain shipments of part 171411312. *See* Exhibit L to File List 19, WC002003705. Then, in July 2007, well after the exchange of letters cited by Defendants, Riska Collins of Defendant HOPI approved domestic pricing for part 74940516, well after the email and letter exchanges cited by Defendants and earlier discussed. *See* Exhibit N to File List 19, WC002006475-77.

Neither the language of the SPA nor the actions of the parties support a clear conclusion that two-tier pricing was not permitted. In the summary judgment context of the present motion, the question of the extent and sustained nature of Defendants' protest against a two-tiered system collapses into the same question: whether Defendants ever affirmatively acquiesced in Whitesell's demanded pricing as to a shipment accepted by Defendants. What the SPA implies about whether two-tiered pricing is acceptable is not formally relevant to disposition of Whitesell's present motion. In other words, to prevail on summary judgment on its present motion, Whitesell must go beyond a contention as to what the price should have been and must show that Defendants actually and affirmatively agreed to what Whitesell was demanding.

I now turn to the evidence (all documentary) presented by Whitesell and Defendants, to determine in each case Whitesell communicated a price to Defendants which Defendants affirmatively accepted. In doing so, my judgment must be governed where applicable, as Defendants point out, by the Court's ruling in its Order herein of August 13, 2020, where the Court noted that the fact that a Defendant had loaded a part into the DFC system and paid a lower price "in the face of invoices that charged the higher prices" is not sufficient to meet the requirement (which Whitesell must meet to obtain summary judgment here) of showing that the Defendant accepted the higher price. Dkt. 1408, pp. 13-15. To make matters plain, I note

particularly that in addressing all the claims below I have attempted to follow the approach and conclusions of the Court in the Order of August 13, 2020.

Approval Packet 1

This packet involves a difference totaling $3,607.00 on a total of twelve invoiced deliveries, based on a dispute as to whether Defendants should have paid a higher domestic price for the good rather than a lower import price. This figure is the difference between $0.265900 and $0.285600 on twelve invoiced deliveries of a total of 155,700 units of part number 156972 between July 2007 and March 2008. Defendants point out that the lead time from approval in December 2006 to delivery in July 2007 was in line with the lower import pricing rather than the higher domestic pricing. In reply, Whitesell argues that Defendants' requirements for January – June 2007 were approved in the DFC, in effect suggesting that Defendants had approved the lower lead time (and thus, higher cost) part.

As to this dispute, Whitesell has not met its burden of showing no material dispute of fact. Whitesell's argument is cursory at best. I cannot determine with certainty from the documents Whitesell has supplied whether Defendants actually approved the higher pricing of the part for delivery in July 2007 through March 2008. More evidence would be needed to determine why, if requirements at the higher price were approved for January through June 2007, that the first shipments of the part were made by Whitesell in July 2007. Whitesell may have a good explanation for this, but it has not included it in its briefing or supported it with any evidence. Whitesell's case for summary judgment rests at best on inferences which are not necessary and is not sufficient for summary judgment to be granted.

Approval Packet 2

Whitesell seeks to recover $561 for the pricing difference between the import price of $0.2520 and domestic price of $0.6835 for 1300 units of part number 400243. Defendants counter that Whitesell has not provided any approval for the higher domestic price other than an inference from the DFC, which the Court has already ruled is not sufficient evidence of approval of pricing. *See* Dkt. 1408. I recommend that the Court deny summary judgment as to Approval Packet 2.

Approval Packet 4

Whitesell seeks to recover $12,095[1] for the pricing difference between the $0.290 import price and $0.0409 domestic price charged to Defendant HOPI for twenty-three invoices on part 404845 for over 1,000,000 delivered units. Defendants respond by stating that while the higher domestic pricing was approved, Defendants' emailed approval requested that domestic pricing be "minimized." Whitesell, in reply, states that the EAU for the part was 2,000,000, and the requisition of approximately 1,000,000 units was thus appropriate for peak season. However, based on the information provided by Whitesell, I cannot conclude that there is no material issue of fact as to whether an order of approximately 1,000,000 units was reasonable, particularly when, as Defendants correctly observe, the first units did not deliver until four months later, and the vast majority of the units were not delivered until 9-14 months after the initial approval. *See* Exhibit K to File List 19, WC002006369.

Perhaps Whitesell, with a little more effort, can prove at trial that the peak season was January-May, and that ordering the units of part 404845 nearly one year in advance was necessary. I cannot, however, accept an unsupported representation in a brief to support summary judgment.

---

[1] It is not evident to me what accounts for the difference between the amount Plaintiff claims in its motions filings here and the $12,250.18 amount claimed in its own documents attached as exhibits. *See* Exhibit K to File List 19, WC002006363.

*See* File List 22, pp. 8-9. As it stands, I am constrained to recommend that the Court deny summary judgment on Approval Packet 4.

Approval Packet 5

Plaintiff next claims $9,697 for over 2,800,000 delivered units of part 171411312 over the course of nineteen separate invoices for the difference between the import pricing of $0.0342 and domestic pricing of $0.0457. Defendants counter by arguing that Defendant HOPI actually paid the import quote price of $0.0385 and thus is not responsible for the domestic pricing differential. In support, Defendants attach a document that has not been previously produced in discovery. Whitesell objects to this and asks me to strike Defendants' entire responsive briefings as a result.

I agree that Plaintiff has a legitimate objection to Defendants using a documentary exhibit that has not been produced in discovery. I do not have access to the Joint Discovery Plan document referenced by Defendants, and it may well be that the Joint Discovery Plan did not require production of Whitesell's pricing, but I find it dubious that such a plan would not require production of a document that shows a clear pricing or payment discrepancy between Whitesell's claimed pricing and Defendants' claimed pricing when so many of Whitesell's invoice claims are based on pricing discrepancy issues. I will assume that this failure to disclose evidence that Defendants clearly believe is probative was inadvertent. Thus, while I would deny Whitesell's motion to strike the entire response of Defendants, I will not consider Exhibit M to File List 19.

In any event, I believe this issue of Exhibit M to be largely irrelevant to this claim. Defendants claim Defendant HOPI is not liable to pay the domestic price of $0.0457 because they paid a higher import price ($0.0385) than the import price Whitesell says Defendant HOPI paid ($0.0342). Docket Item 19, pp. 6-7. While, if accepted, Exhibit M might demonstrate that Defendant HOPI owes less than Whitesell claims, it certainly does not absolve Defendant HOPI

of liability on this claim. On the contrary, Whitesell's evidence demonstrates that its agent asked Defendant HOPI's agent to approve domestic pricing on the pertinent quote, which Ryan Sadler of Husqvarna did via email on January 3, 2007. *See* Exhibit L to File List 19, WC002003705. Defendants have not offered any evidence that actually rebuts the approval of domestic pricing on this quote, and as a result, because I do not consider Exhibit M, I would recommend the Court enter summary judgment on this claim in the amount of $9,697.

<u>Approval Packet 7</u>

Whitesell seeks to recover $810 for 18 invoices issued on part number 74940516 for the pricing difference between the import price of $0.0085 per unit and the domestic price of $0.0965 per unit for 101,243 units. Defendants argue that they do not owe the pricing difference because while they approved the quoted prices, they did not confirm the invoiced price. I find this defense to be easily rebutted by Approval Packet 7. Plaintiff obtained written approval for its pricing quote on part 74940516. *See* Exhibit N to File List 19, WC002006475-77. Riska Collins of Defendant HOPI then wrote to Donald Herrington of Whitesell to confirm the pricing to "get it in the system." Herrington wrote back to confirm domestic pricing of $0.0965 per unit. *See* Exhibit N to File List 19, WC002006475-77. There would have been no reason for Defendant HOPI to "confirm" the pricing again by email, as it was HOPI's agent who wrote to Whitesell to obtain pricing information. If HOPI objected to the confirmation on the price, which it specifically requested in writing, then such objection should have been voiced prior to delivery and acceptance. Defendants have not offered any evidence demonstrating or suggesting that they did not actually approve the domestic pricing.

I note there is an issue with one invoice in the claimed invoices from Approval Packet 7. See Exhibit N to File List 19, WC002006479. I have been unable to locate Invoice 97438 in the

11

amount of $19.20 on the list of invoices in Whitesell's Second Amended Complaint, Dkt. 1617. Pursuant to my findings in the Special Master's Second Report and Recommendation, then, I do not believe I have the authority to recommend the Court enter summary judgment as to this invoice.

I recommend that the Court therefore grant summary judgment in Whitesell's favor as to Approval Packet 7, excepting Invoice 97438, which is outside the bounds of Whitesell's Second Amended Complaint.

### Approval Packet 13, 14, 21, 22, 23 and 24

The defect in Whitesell's showing for summary judgment on these claims is essentially the same in each case. Whitesell alleges that Defendant HOPI's agent Mona Edge verbally approved the charges in all but Approval Packet 24, but presents no proof other than a notation in Whitesell's own business records that Ms. Edge did so. Whitesell itself characterizes these consist of communications among "Whitesell employees confirming and memorializing verbal approvals" by Ms. Edge (or perhaps other agents of Defendant). *See, e.g.*, Exhibit T to File List 19, WC002003504. While it is true that hearsay contained in business records may be admissible, that simple fact does not get Whitesell across the finish line of showing unequivocally that Ms. Edge or anybody on behalf of a Defendant approved the charges it seeks to recover. It is one thing to accept a properly authenticated business record emanating from a party, against that party. By raising no issue about the point, Defendants have accepted Whitesell's business records for purposes of the present motion. It is something else entirely, however, to make the inference, from what the party seeking summary judgment says about what the opposing party's representative has said (at an unspecified time), as conclusive on summary judgment, just because the self-serving statement of the moving party is included in the moving party's business records. This may be a permissible inference, but it is not a necessary one by any means.

It is true that in Approval Packet 14, Defendants have included some communications from Ms. Edge, but these do not amount to proof that Ms. Edge approved the charge in question. "So we get 3600 [pieces] for our $2437 or more?" *See* Exhibit Q to File List 19, WC002005045. Again, although the question is closer because Whitesell does provide some correspondence with Defendants' agents here, without an explicit admission from Defendant by way of documentary or testimonial evidence, I cannot find that there is no material issue of fact. This is also true for Approval Packet 21, where although the business records provided by Whitesell do include some written communications with Ms. Edge, these do not amount to a clear approval of Whitesell's demanded price. *See* Exhibit R to File List 19, WC002002657. Regardless of whether Defendants' business records show that Ms. Edge was involved with these charges and knew of them, the records so not require the inference that she approved any of the charges as demanded. On the evidence provided by Whitesell on these packets, there is still a necessity for a jury to weigh the evidence and decide what inferences it considers reasonable.

As to Approval Packet 24, Whitesell cites an email from Ryan Sadler as approval for the freight charges. *See* Exhibit U to File List 19, WC002003647. However, the only emails in Approval Packet 24 seem to emanate from Donald Herrington, Whitesell's agent, rather than from Ryan Herrington. *See* Exhibit U to File List 19, WC002003649. Thus, there is at best a permissible, rather than necessary, inference that an agent of Defendant HOPI approved the charges.

### C. Conclusion

Whitesell should be granted summary judgment on the invoices which are uncontested as to principal by Defendants. Since these are uncontested, there is no need to determine whether they were properly pleaded in Count VI of the Second Amended Complaint. Interest at 18% per annum should be added. As I explained in my Third Report and Recommendation, I have chosen

the date of invoice for interest to begin to run in accord with general Georgia law. If Defendants believe this conflict with Section 4.0 of the SPA, and if the parties believe the difference to be material, they are invited to communicate with me. As explained in my Third Report and Recommendation, entry of judgment and any questions concerning form of the judgment should abide the results on other claims of the trial scheduled to begin September 19.

Further, as to the invoices covered by the present motion and still contested, Whitesell should be granted summary judgment, with 18% interest as above, on those covered by Approval Packets 5 and 7 (except as to Invoice 97438). Summary judgment should be denied as to the remainder. Entry of judgment should abide the results of trial on other claims.

This 26th day of July, 2022.

/s/ Charles C. Stebbins, III
Charles C. Stebbins, III
Special Master

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Special Master's Fourth Report and Recommendation has been filed in to the clerk's electronic filing system and a true copy has been served by electronic mail as follows:

Coleman, Yovanovich & Koester, P.A.
Edmond E. Koester
edservice@cyklawfirm.com
Matthew B. Devisse
mdevisse@cyklawfirm.com
mfoster@cyklawfirm.com
cykservice@cyklawfirm.com

Aloia, Roland, Lubell & Morgan, PLLC
Jack C. Morgan, III
jmorgan@floridalegalrights.com
kturner@floridalegalrights.com

Kilpatrick Townsend & Stockton, LLC
R. Perry Sentell, III
psentell@kilpatricktownsend.com
Laurel Payne Landon
llandon@kilpatricktownsend.com
Joseph H. Huff
jhuff@kilpatricktownsend.com

DLA Piper, LLP
James M. Brogan
James.brogan@dlapiper.com
Matthew A. Goldberg
Matthew.goldberg@dlapiper.com

Alston & Bird LLP
James C. Grant
jim.grant@alston.com
Elizabeth H. Helmer
Elizabeth.helmer@alston.com
Amanda M. Waide
     amanda.waide@alston.com
Jamie S. George
Jamie.george@alston.com

This 26th day of July, 2022.

/s/ Charles C. Stebbins, III
Charles C. Stebbins, III
Special Master