IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| WHITESELL CORPORATION, | * | |
| Plaintiff, | * | |
| v. | * | CV 103-050 |
| ELECTROLUX HOME PRODUCTS, INC., HUSQVARNA, A.B., and HUSQVARNA OUTDOOR PRODUCTS, INC., | * | |
| Defendants. | * | |

**O R D E R**

As the trial of the case is approaching, both Plaintiff and Defendants have filed various motions in limine to exclude evidence concerning a number of substantive topics that Defendants claim are unrelated to any remaining claim in the case, but Plaintiff claims are necessary to fairly present its side of the story. Fairness and "securing a just determination" of matters at issue are the hallmark of the Federal Rules of Evidence. See Fed. R. Evid. 102. Accordingly, in considering whether to exclude evidence, the Court leans heavily on Rules 401, 402, and 403 in expectation that viewing the challenged evidence through the lens of relevance and weighing the probative value against the danger of unfair prejudice, confusion of issues, misleading the jury, and time wasting will result in a fair trial.

Relevance is the first test of admissibility; that is, does the evidence tend to make a fact more or less probable than it would be without the evidence <u>and</u> is the fact of consequence in determining the action? Fed. R. Evid. 401. In considering whether evidence is of consequence to the action, the Court must keep in mind the remaining claims in the case.[1]

From Plaintiff's side, there is Count II for "Breach of Contract (Failure to Pay Costs Associated with Failure to Transition Brunner and Matrix Parts)" as it relates to reimbursement for a third-party contract entered in November 2007 for painting parts and payment for remaining inventory of Brunner and Matrix parts. Also, Plaintiff's Count VI ("Breach of Contract (Failure to Pay Invoices))" remains, subject to the Reports and Recommendations of the Special Master. On the defense side, both the Husqvarna Defendants and Defendant EHP have remaining their counterclaim, Count II ("Plaintiff's Failure to Comply with Phase-Out Inventory Obligations"), which includes their claims for expedite fees. The Husqvarna Defendants also have Count III of its counterclaims remaining – "Breach of Contract (Failure to Transition All Parts Falling with the Four Enforceable Categories as Further Limited by the Parties' Stipulation)" – for failure to

---

[1] The Court draws upon the "Parties' Joint Response to Court Order" filed on October 15, 2020 (doc. no. 1415) to list the remaining claims.

2

receive the 5% discount and 2% annual rebate provided in the Settlement Memorandum of 2003.

Now, in order to understand the scope of these claims, the Court will provide a brief background of the case, particularly as it pertains to the Brunner and Matrix parts.[2] The parties entered into the Supply Partnership Agreement ("SPA") on December 14, 2000. At some point, the parties disputed whether the Brunner and Matrix parts were subject to the SPA; indeed, the first dispute to come before the Court in March 2003 concerned whether certain Brunner parts fell within the scope of the SPA. So, while the Court has held that the obligation to supply Brunner parts did not arise until the parties entered into the Settlement Memorandum in May of 2003, the parties were negotiating and corresponding about the Brunner parts prior thereto.

The Settlement Memorandum includes certain obligations on Whitesell's part to begin the "Q-18 qualification process" and to make "product capability presentations" to Defendants for the Brunner and Matrix parts. Defendants[3] were to transition the

---

[2] The Court will not cite to the record here; a more detailed factual background pertaining to the failed transition of Brunner and Matrix parts may be found in the Order of June 8, 2011 (doc. no. 429).

[3] The Court uses the term Defendants while recognizing that until 2006, there was but one defendant, Electrolux Home Products, Inc. ("EHP"). While the Husqvarna Defendants did not come into the case until they acquired the outdoor division of EHP in 2006, the Court will not entertain any argument from the Husqvarna Defendants

Brunner and Matrix parts (or mutually agreeable substitute parts) to Whitesell by December 31, 2003. This transition did not take place. In fact, in August 2003, Defendants entered into a three-year contract with Brunner, the third-party supplier, rather than transition the parts to Whitesell. The parties of course dispute the reason that occurred.

Beginning in 2007 and into 2008, the parties again began negotiating terms for the transition of the Brunner and Matrix parts to include pricing issues. In fact, the Husqvarna Defendants partially tendered some Brunner parts and the then current Matrix parts to Whitesell in early 2007. In mid-April of 2008, Defendants notified their incumbent suppliers that the Brunner and Matrix parts would be transitioned to Whitesell. Nevertheless, the parts were not transitioned, and the parties became involved in extensive mediation efforts with a court-appointed Mediator and Special Master. The parties' efforts at global resolution failed in August 2009; the parties would then exchange drafts of Memoranda of Understanding pertaining to the transition of Brunner and Matrix parts, but these MOUs were never executed. Ultimately, the transition of Brunner and Matrix parts never occurred, and the jury will now have the duty to assess the "reasonableness of the

---

that unfairly attempts to distance themselves from an event occurring prior to 2006. In the Court's estimation, conduct related to the outdoor division of EHP prior to 2006 is synonymous with conduct of the Husqvarna Defendants.

parties' position[s] vis-à-vis the contracts and the parties' course of performance" related to their transition efforts and obligations. (See Order of June 8, 2011, at 28-29.) Through various motions in limine, the parties seek to limit the evidence that may be offered to support their respective side of the failed transition story.

### A. Plaintiff's Motion in Limine to Exclude Evidence and Argument Concerning the Quality of Brunner Parts

Plaintiff moves to exclude from admission at trial any evidence or argument that the quality of the parts Whitesell was preparing to supply to Defendants was the basis for Defendants' award of said parts to Brunner in August 2003. (Doc. No. 1551; see also Pl.'s Reply Br., Doc. No. 1580, at 1 (stating that Husqvarna "should be precluded from asserting that the reason for its award of the Brunner parts to Brunner in August 2003 was due to alleged quality issues with the parts Whitesell was preparing to supply").) Plaintiff contends that Defendants cannot argue that they entered into the 2003 contract with Brunner based on quality issues with Whitesell's parts because any quality issues were not known to Defendants prior to awarding the contract to Brunner in August 2003.

The award of a three-year contract to Brunner at a time that Defendants were to either transition the parts or agreed-upon

5

substitute parts to Whitesell is undoubtedly part of the failed transition story. Indeed, the Court has previously noted that the attribution of fault for the failed transition is a "hotly contested, fact-intensive inquiry that requires consideration and resolution by a jury." (See Order of Sept. 10, 2020, Doc. No. 1410, at 7 n.3, cited in Order of June 7, 2022, Doc. No. 1579, at 3-4.) Defendants have maintained throughout the case that the failed transition was due to quality and supply capability issues with Whitesell. If Plaintiff's motion in limine is designed to paint a broad brushstroke of exclusion over all evidence pertaining to this defense, then it must clearly be denied. Whitesell's conduct – to include quality and supply issues – is relevant to Defendants' defense to a breach of contract claim for the failure to transition Brunner parts. For instance, evidence of Whitesell's quality or supply issues in 2003, whether known or unknown to Defendants at the time it entered into the 2003 Brunner contract, is relevant to Defendants' insistence that Whitesell make certain production readiness assurances prior to the transition of Brunner parts in 2007 and 2008. To the extent that Plaintiff's motion in limine asks the Court to apply a liner brush of exclusion over words uttered by the defense to the effect that "Defendants entered into the Brunner contract in August 2003 because they had grave concerns over the quality of Whitesell's parts," the Court recognizes that Defendants have not pointed to direct evidence

6

supporting this fact. Nevertheless, the Court will not allow Whitesell to use this liner brush to paint a wall of exclusion.

Without knowing the full extent of the evidence on a chronological basis and without knowing who knew what and when before the case is tried, the Court steps back, as Defendants suggest in brief, to the ultimate issue in the case. Plaintiff's claim for damages for the failed transition of Brunner parts is a breach of contract claim. Whether the complaining party complied with all its contractual obligations is paramount to a recovery of damages on a breach of contract claim. See O.C.G.A. § 13-5-8 (providing a defense based on the failure to comply with a condition precedent or subsequent). Here, Defendants contend that Whitesell did not comply with part-related conditions (i.e., Whitesell had quality and supply issues in providing the Brunner parts) to trigger Defendants' purchase obligations for the Brunner parts. Certainly, then, evidence and related argument pertaining to any alleged quality and supply issues are relevant.

In short, the Court will not exclude any evidence or argument pertaining to the quality of Whitesell's parts or its ability to supply those parts to Defendants. This evidence is part of the failed transition story. Should Plaintiff wish to explore the chronology of what Defendants knew about the quality and supply issues prior to renewing its contract with Brunner in 2003, it may do so, if appropriate, through cross-examination.

Upon the foregoing, Plaintiff's motion in limine to exclude evidence and argument concerning the quality of Brunner parts (doc. no. 1551) is **DENIED**.[4]

**B.   Plaintiff's Motion in Limine Regarding Production Readiness**

Plaintiff moves to exclude any reference to the Defendants' demand for "production readiness" as an obligation of Whitesell. Plaintiff contends that the first time the term appeared in the course of their business relationship and negotiations was in an unexecuted Memorandum of Understanding. Contrary to its understanding of that term, Whitesell claims Defendants thereafter provided a new definition of "production readiness" in an email dated December 8, 2009, which unilaterally added requirements for transition that had not existed before. Plaintiff explains that while it had met with the production part approval process ("PPAP") for the Brunner and Matrix parts such that the fit, form and function of the parts were satisfactory, the "production readiness" requirement was outside of the existing contracts and became a post-hoc justification for Defendants' failure to transition the parts. In short, Plaintiff seeks to exclude mention of "production readiness" as contractually required.

---

[4] Of course the Court will not allow argument from defense counsel that is not supported by evidence at trial.

Defendants respond that "production readiness" equates to the product supply capability presentations required by the Settlement Memorandum, which is separate and apart from PPAP approval. Defendants also represent that this requirement was discussed as early as February 2003 and that the term "production readiness" appears in Whitesell's internal communications prior to the Memorandum of Understanding.

Upon due consideration of the briefs and evidence on the matter, it becomes clear that the definition of "production readiness" as the parties understood it is just another facet of the failed transition story, i.e., another genuine dispute of material fact that plays into the attribution of fault for the failed transition. Certainly, the Court cannot conclude as a matter of law that the term "production readiness" is a "new" contract term unrelated to the existing agreements between the parties, and therefore, Plaintiff's motion to exclude reference to "production readiness" rests upon an unestablished premise. The jury will hear the story told by Whitesell about the so-called post hoc introduction of the term "production readiness" into the parties' negotiations and will be free to accept or reject "production readiness" as a contract requirement as argued by Defendants. In short, "production readiness" is relevant to the failed transition story of Brunner and Matrix parts and is

probative of the parties' positions on the Brunner and Matrix claims.

Upon the foregoing, Plaintiff's motion in limine to exclude reference to "production readiness" (doc. no. 1637) is **DENIED**.

### C. Plaintiff's Motion in Limine to Exclude Evidence and Argument Concerning Quality of Parts as to 2008-2010

Plaintiff seeks to exclude any evidence or argument regarding Defendants' claim that the quality of parts Whitesell was preparing to supply was the basis for Defendants awarding the parts to Brunner Drilling and Manufacturing during the 2008-2010 time period. Plaintiff argues that Brunner parts were PPAP approved and on the shelf ready to be supplied; thus, the quality of the parts is irrelevant to the failed transition of Brunner parts in this time frame.

This motion is a thinly disguised motion for summary judgment on liability for the failed transition of Brunner parts because it seeks to rip out most every page of Defendants' side of the story. As the Court has recognized, the failed transition story is replete with genuine disputes of material fact not the least of which is whether Whitesell was capable of supplying the subject parts. Whitesell's contention that it had complied with its contractual obligations with respect to any capability or quality requirements is simply its side of the story. Defendants do not believe this

to be true and have proffered evidence to support their position. The Court will therefore not limit Defendants as suggested by Plaintiff's present motion in limine because the quality of parts in the 2008 to 2010 time period is relevant to the jury's consideration of the failed transition of Brunner parts. Whether the jury accepts Defendants' argument about the import of the quality of parts to the parties' respective contractual obligations is a matter exclusively within its province.

Upon the foregoing, Plaintiff's motion in limine to exclude evidence and argument concerning quality of parts in the 2008 to 2010 time period (doc. no. 1631) is **DENIED**.

D. **Plaintiff's Motion in Limine to Exclude Evidence and Argument Concerning Threats to Cut Off Supply**

Plaintiff moves to exclude any evidence of Whitesell's alleged threats to cut off supply of parts to Defendants in 2003, 2005, or 2006. Plaintiff states that such threats simply did not exist.[5] It is axiomatic that if evidence does not exist, it will not come in.[6] The more salient question is whether evidence of an

---

[5] Plaintiff spends most of its brief discussing Defendants' safety stock claim, which has now been dismissed. The Court therefore wonders whether the motion in limine is now moot.

[6] The parties point to correspondence from Mr. Bob Weise of Whitesell, disputing whether it contains a threat to cut off supply. The jury will settle this dispute.

11

alleged threat to cut off supply is *relevant* to the issues in the case and therefore admissible.

Whether there were threats to cut off the supply chain during crucial times in the parties' relationship and whether the alleged threats caused Defendants to respond in certain ways are part of the failed transition story. Supply capability and the willingness to supply are directly relevant to the parties' conduct toward one another; alleged threats to cut off supply, if they existed, are also relevant to whether Whitesell put forth its best efforts in supplying parts.

In short, the Court does not know whether there is evidence of alleged threats to cut off supply; the Court cannot possibly know the forthcoming evidence on this point. If none exists, none will come in.[7] If such evidence exists, the Court preliminarily concludes that it is admissible.

Upon the foregoing, Plaintiff's motion to exclude evidence of Whitesell's alleged threats to cut off supply (doc. no. 1628) is **DENIED**.

---

[7] Of course, the Court will not allow argument from defense counsel that is not supported by evidence at trial.

E.  **Defendants' Motion in Limine to Exclude Argument and Evidence Related to Claims of Spoliation Made Against Defendants**

There is no dispute that Defendants failed to produce a single email from EHP's chief executive officer, Mr. Roger Leon, from January 2002 to June 2004. By Order of September 30, 2021, however, the Court concluded that Plaintiff had failed to show any prejudice because the relevant time period, January 2002 to June 2004, does not impact Plaintiff's remaining claims. (Doc. No. 1497.) Thus, the Court did not award sanctions which could have included an instruction to the jury of an adverse inference. (See id. at 8 (citing Fed. R. Civ. P. 37(e) (discussing the remedy for spoliation of electronically stored information).)

In reliance upon the Order of September 21, 2021, Defendants move to exclude any reference to the missing Roger Leon emails or any argument or mention of spoliation. Plaintiff responds that a finding that spoliation does not warrant sanctions does not automatically preclude evidence of spoliation at trial. Plaintiff urges the Court to examine the relevance of the missing Roger Leon emails to the remaining claims in the case. In particular, Plaintiff claims the emails are relevant to its defense theory that Defendants imposed economic duress upon Whitesell and "utilized their size, financial capacity, and sheer negotiating leverage to punish Whitesell and attempt to put Whitesell out of business" throughout their relationship. (Pl.'s Resp., Doc. No.

13

1667, at 2.) Plaintiff contends that the "spoliated emails" are admissible because they are consistent with Whitesell's portrayal of Defendants as the bad actors in their story. (Id. at 3 n.3.)

The problem with Plaintiff's position is that Whitesell attempts to attach independent significance to the "spoliated emails," that is a bad faith inference that the Court has already rejected when it found no bad faith intent on the part of Defendants; accordingly, the "spoliated emails" may not be introduced as evidence of Defendants' bad faith *per se*. Likewise, Plaintiff's argument that the missing emails are relevant bad character evidence erroneously presupposes a finding that the emails were intentionally destroyed.[8]

In considering whether the missing emails from Roger Leon are relevant to existing claims, Plaintiff states that the "spoliated emails" *could have* contained directives not to pay invoices or *could have* demonstrated an intent to breach the SPA. The Court, however, cannot allow such rank speculation to be introduced into the trial of the case, particularly when it has already ruled that the emails are not relevant to any particular claim and are not missing by intentional conduct.[9] Essentially, Plaintiff is asking

---

[8] Plaintiff would be served to remember that there is evidence that Whitesell failed to produce missing emails from five Whitesell employees in the case. (See Order of Sept. 30, 2021, at 5 & n.1.)

[9] Plaintiff states in brief that "[i]ntentionally destroying and spoliating emails during a crucial time in the dispute . . . is

14

to argue to the jury a bad inference that the Court has already held would not be charged to the jury. In fact, referring to the missing Roger Leon emails as the "spoliated emails" is akin to an adverse inference instruction.

In conclusion, Plaintiff has not demonstrated that the missing Roger Leon emails are relevant to any related claim or defense other than an assignment of some bad faith connotation which the Court has already determined does not exist. Again, the time period of the missing emails does not appear relevant to the remaining claims.

Upon the foregoing, Defendants' motion in limine to exclude evidence and argument about the spoliation of the Roger Leon emails (doc. no. 1627) is **GRANTED**.

### F. Plaintiff's Motion in Limine Regarding Expedite Fees After End of Contract Period

Plaintiff seeks to exclude any award of damages in the form of expedite fees on Defendants' counterclaims that accrued or were imposed after the end of the contract period, October 31, 2008. Plaintiff argues that Defendants are responsible for the position they found themselves in by not acting with the urgency necessary under the circumstances. (Pl.'s Mot. in Limine, Doc. No. 1633, at

---

par for the course for the Defendants." (Pl.'s Resp. at 11.) The Court has already held, however, that the emails were not intentionally destroyed or spoliated.

15

2.)  Plaintiff continues: "Whitesell cannot, as a matter of law, be responsible for 'expedite fees' for parts that were to be utilized after the end of the contract period, especially when Defendants' own delay was the reason they found them in the position they did."  (Id.)  Plaintiff relies on a statement made by defense counsel in a letter dated August 29, 2008, in which he states that Defendants will not be required to purchase parts after November 1, 2008.  (Id. at 5.)

The Court can make quick work of this motion in that its supporting premise has been considered and rejected.  (See Order of March 25, 2020, Doc. No. 1401, at 30 (quoting Plaintiff's Reply, which makes the same argument that it cannot be responsible for expedite fees after the end of the contract period because Defendants had an obligation to line up alternative suppliers).)  In its Order of March 25, 2020, the Court noted evidence to suggest that Whitesell's inaccurate inventory positions caused Defendants to incur expediate fees.  For example, Husqvarna's Mr. Sadler testified: "Given the positions Whitesell communicated, Husqvarna had no choice but to continue its efforts to expedite and commit to immediate supply of the terminating parts from other suppliers."  (Id. at 29 n.15.)  The Court therefore concluded that the cause of any expedite fees incurred by Defendants is a genuine dispute of material fact.  (Id. at 32.)  The Court also concluded: "[D]eterminations of what and when expedite fees were incurred by

16

Defendants and for what reason they were incurred, i.e., the damages, if any, resulting from the parties' conduct, are also matters for jury resolution." (Id.)  So, too, is the matter of *when* damages allegedly caused by Whitesell's intentional breaches stopped accruing, whether that is before or after the contract termination date.

Upon the foregoing, Plaintiff's motion in limine to limit recovery of expedite fees to the end of the contract period (doc. no. 1633) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 16th day of August, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA