IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| WHITESELL CORPORATION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 103-050 |
| | * | |
| ELECTROLUX HOME PRODUCTS, INC., | * | |
| HUSQVARNA, A.B., and HUSQVARNA | * | |
| OUTDOOR PRODUCTS, INC., | * | |
| | * | |
| Defendants. | | |

**O R D E R**

On June 10, 2022, the Special Master filed his First Report and Recommendation (doc. no. 1587) addressing two motions: a motion for partial summary judgment submitted by Defendants and a cross motion for partial summary judgment submitted by Plaintiff Whitesell Corporation, both of which involve Section 5.7 of the Supply Partnership Agreement ("SPA") and the remaining inventory of obsolete parts held by Whitesell ("the Obsolescence Claims"). Defendants filed timely objections on July 1, 2022, and Plaintiff responded to and opposed those objections. The Court has now conducted a *de novo* review of the First Report and Recommendation, the objections and response, and the underlying motions for partial summary judgment. The Court will not expound on every aspect of its ruling as the Special Master has done a thorough job of

presenting the issues and coordinating the parties' evidence and arguments thereon. In fact, unless stated otherwise, the parties should assume that the Court is in full agreement with the analysis and conclusions stated by the Special Master. With this proviso, the Court makes the following observations and rulings.

**Formal Written Notification**

Defendants first object to the Special Master's determination that they failed to give prior "formal written notification" of obsolescence as required by Section 5.7 for the Disputed Notice Obsolescence Claims. Defendants contend that the required notice could be communicated through the Demand Flow Center ("DFC"), their computerized vendor management system. The Court **OVERRULES** this objection, concluding that Section 5.7 requires more. The Court is struck by two facts in reaching its conclusion. First, Defendant EHP provided the requisite "formal written notification" in many instances prior to the spinoff of its outdoor division to the Husqvarna Defendants. Second, there is ample evidence that the DFC could not be counted on to be 100% accurate. On this point, the Court makes special note of the Special Master's observation that a part's production forecast requirement could be zero for a time in the DFC and then later increased.

2

**Higher Prong v. Lower Prong**

Defendants next object to the Special Master's application of the higher prong of Section 5.7 to the obsolescence claims. The Special Master based this finding upon his conclusion that the term "transition" as used in Section 5.7 includes the Brunner parts, which did not become part of the Goods to be transitioned to Plaintiff until the execution of the Settlement Memorandum in May 2003. Defendants contend that the "transition" only includes the Goods that were originally part of the SPA, and since all of those Goods were transitioned, the lower prong applies.[1]

The weakness in Defendants' objection to this aspect of the Report and Recommendation is revealed in this statement: "There is nothing in the Settlement Memorandum that in any way modifies Section 5.7 of the SPA." (Defs.' Objs., Doc. No. 1601, at 9.) The Special Master, however, did not conclude that the Settlement Memorandum modified Section 5.7. Rather, the Special Master determined that the Settlement Memorandum modified Section 2.1.1 of the SPA, the definition of Good(s) to be transitioned. More precisely, the Settlement Memorandum – the first enforceable contract between the parties – provided the definition of Goods used in the Section 5.7 phrase "until all Good(s) have been

---

[1] The Court concurs with the Special Master's finding that the term "the transition," as used in Section 5.7 as the triggering mechanism of the lower prong, means "the transition of all Goods to Whitesell."

3

transitioned to Whitesell" to indisputably and as a matter of law include the Brunner parts. Thus, "the transition" of parts that triggers the lower prong includes the Brunner parts as agreed upon by the parties in the Settlement Memorandum and as declared enforceable by the Court in its Order of October 14, 2008.[2]

The Court, however, disagrees with the Special Master that this determination automatically means the higher prong applies. Instead, the Court concludes that the applicability of the higher prong is dependent upon the jury's resolution of the attribution of fault issue respecting the Brunner parts. As aptly put by Defendants: "Whitesell should not be allowed to claim higher obsolescence expense based upon an incomplete transition of Brunner parts caused by its own breaches of contractual supply obligations." (See Defs.' Objs. at 9-10 n.7.) Thus, the Court will await a jury's resolution of the attribution of fault issue before imposing the higher or lower prong to the Disputed Notice Obsolescence Claims. In this way, the Court **SUSTAINS IN PART** Defendants' objection.

---

[2] The Court does not agree with Defendants' statement that the determination that the higher prong should apply is not applicable to Defendant EHP because the Brunner parts are Husqvarna specific. (See Defs.' Objs. at 8.) Defendants were one entity when the contract – the Settlement Memorandum – was formed to define the scope of Goods subject to "the transition" proviso. Defendant EHP cannot distance itself from that fact.

4

**At a Minimum**

Defendants next object to the extent that the Special Master concluded that Plaintiff may be able to recover for quantities of inventory beyond the levels dictated by the higher prong of Section 5.7. Here, the Special Master uses the term "at a minimum" in the prong provision of Section 5.7 to give added import to Defendants' obligation to "work with Whitesell in a fair and cooperative manner for full disposition of any inventory that Whitesell may have in stock" when a Good became obsolete. That is, according to the Special Master, Plaintiff may seek compensation from Defendants for inventory above their liability under the higher prong to the extent that Whitesell can show at trial that Defendants' conduct was not "fair and cooperative."

Defendants object, contending that "at a minimum" simply means that while they are obligated to purchase the specified amount (either the higher or lower prong), they **may** purchase more. This is a reasonable interpretation of the "at a minimum" phrase that the Special Master appears to have rejected out of hand. (See Report and Recommendation at 38-39 ("The language ('at a minimum') also implies that upon proper proof Whitesell would be entitled to recover for more than the minimum specified percentage of its remaining inventory. (Again, **if it does not, the words 'at a minimum' have no meaning**.)" (emphasis added)). More importantly, the Court agrees with Defendants that if Section 5.7 were to be

5

read to allow Plaintiff to recover for 100% of its inventory, then the entire second and third paragraphs of Section 5.7 would be meaningless. That is to say, reading "at a minimum" to mean that Defendants can purchase more obsolete inventory if they choose gives import to every part of Section 5.7.

Accordingly, the Court **SUSTAINS** this objection and concludes that Whitesell is limited to either the higher or lower prong of Section 5.7 as its measure of damages on the Obsolescence Claims.

### Prejudgment Interest

The Special Master denied Defendants' "Motion for Reconsideration and for Summary Judgment Concerning Plaintiff's Prejudgment Claims Relating to Pricing Discrepancy and Obsolescence Invoices." Therein, Defendants seek to preclude Whitesell's recovery of prejudgment interest pursuant to O.C.G.A. § 7-4-16 on any of its Count VI claims. Such a ruling would require the Court to reconsider its Orders of August 13 and 27, 2020. While acknowledging the thorough examination of the issue by both the parties and the Special Master, the Court is confident in its prior rulings and thus will leave the matter to the Eleventh Circuit Court of Appeals. Accordingly, Defendants' objections to the Special Master's conclusions of law on prejudgment interest are **OVERRULED**.

Upon the foregoing, the Court resolves the issues raised in the First Report and Recommendation as follows:

I. With respect to Defendants' motion for partial summary judgment and Plaintiff's cross motion for partial summary judgment involving Section 5.7 of the SPA, the Court will adopt the specific recommendations of the Special Master with modifications as set forth below. All other aspects of these motions for partial summary judgment are denied. Whitesell's motion to strike the Declaration of Ryan Sadler from the record is denied as moot.

A. As to Obsolescence Claims where Whitesell has conceded that the respective Defendant gave proper "formal written notification" of obsolescence, the amount of inventory for which the respective Defendant must pay Whitesell will be calculated either at the higher or lower prong of Section 5.7 depending upon the jury's determination of the attribution of fault for the failed transition of Brunner parts. Moreover, Whitesell must establish as a matter of fact what amount of inventory it has remaining. This cannot be an amount which would yield a payment higher than the amount of Whitesell's relevant invoice or invoices on which its claim is based. This is because the claims of Count VI are based exclusively on invoices, which must govern the maximum extent of recovery. The Special Master shall determine, based upon the parties' June 28th submissions, whether Defendants have evidence to show that the amount of Whitesell's remaining inventory of a

7

particular part reflects an accumulation of inventory in violation of Whitesell's contractual duties, i.e., do Defendants have a valid defense to the amount of inventory claimed in the relevant invoices.

B. As to the Disputed Notice Obsolescence Claims, the respective Defendant breached the Contract each time it failed to give "formal written notification," defined as a specific letter or e-mail directed to the Contract Administrator for Whitesell, that a part was going obsolete. The amount of inventory for which the respective Defendant must pay Whitesell will be calculated either at the higher or lower prong of Section 5.7 depending upon the jury's determination of the attribution of fault for the failed transition of Brunner parts.

Whitesell's duty to reduce its inventory will be considered to become effective upon the date that Whitesell had actual notice of obsolescence. This date will be the date of rendering of Whitesell's invoice calculated at 100% of its remaining inventory, unless Defendants show that Whitesell had actual notice earlier. The quantum of notice necessary to constitute actual notice for this purpose will be for determination after consideration of all relevant evidence as to the part, but it will not be sufficient to show *only* that production requirements as shown in the DFC computer system fell to zero for any particular period. Defendants may attempt to reduce the amount of claimed remaining inventory in two

ways: (1) by showing that Whitesell accumulated excess inventory through "over-ordering" before Whitesell had actual notice of obsolescence; and/or (2) by showing when Whitesell had actual notice of obsolescence yet failed to fulfill its duty to reduce inventory as specified in the second paragraph of Section 5.7.

II. With respect to the issue of Prejudgment Interest, Defendants' "Motion for Reconsideration and for Summary Judgment Concerning Plaintiff's Prejudgment Claims Relating to Pricing Discrepancy and Obsolescence Invoices" is denied. To the extent Plaintiff requests prejudgment interest under O.C.G.A. § 13-6-13, such request is denied.

**ORDER ENTERED** at Augusta, Georgia, this 4th day of October, 2022.

---

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA